**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 1 8 2023

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

| | |
|---|---|
| **HARBOR GRAND HOLDING COMPANY, LLC and TIMBERS HOLDING COMPANY, LLC,** <br> Plaintiffs, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **vs.** | ) Case No. 4:23-cv-768-LPR <br> ) |
| **ADIVO CONSTRUCTION CORP. and ZVI LEVIN,** <br> Defendants. | ) <br> ) This case assigned to District Judge Rudofsky <br> ) and to Magistrate Judge Ray <br> ) |

## COMPLAINT

Harbor Grand Holding Company, LLC and Timbers Holding Company, LLC (together, "Harbor & Timbers" or "Plaintiffs"), by and through their attorneys, Rose Law Firm, a Professional Association, and for their Complaint, state and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Harbor Grand Holding Company, LLC is a Delaware limited liability company. Harbor Grand Holding Company, LLC is registered and authorized to do business in the State of Arkansas. No member of Harbor Grand Holding Company, LLC is a citizen of the State of Florida for purposes of diversity of citizenship jurisdiction.

2. Timbers Holding Company, LLC is a Delaware limited liability company. Timbers Holding Company, LLC is registered and authorized to do business in the State of Arkansas. No member of Timbers Holding Company, LLC is a citizen of the State of Florida for purposes of

diversity of citizenship jurisdiction.

3.     Adivo Construction Corp. ("Adivo") is a Florida for-profit corporation with its principal place of business in the State of Florida.  Adivo does business as "Adivo Construction."

4.     Zvi Levin is an individual resident of the State of Florida. Upon information and belief, Levin owned and controlled Adivo at all times relevant to the claims stated herein.

5.     For the purpose of diversity of citizenship jurisdiction, Harbor & Timbers are not citizens of the State of Florida, and Adivo is a citizen of the State of Florida. Zvi Levin is a citizen of the State of Florida.

6.     The amount in controversy, as described in more detail below, exceeds $75,000.00.

7.     Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

8.     Adivo and Zvi Levin conducted business with Harbor & Timbers as described in more detail below.

9.     Adivo, by and through Levin, entered into a contract with Harbor & Timbers to perform certain construction work in Arkansas. The claims stated herein arise out of and relate to the parties' Arkansas contract and the work performed in Arkansas.

10.     Accordingly, this Court has personal jurisdiction over Adivo and Zvi Levin.

11.     Venue is proper in this Court pursuant 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims stated herein occurred in Pulaski County, Arkansas.

## FACTUAL ALLEGATIONS

### The Contract and Adivo's Breaches

12.     Harbor & Timbers own two apartment complexes in Pulaski County, Arkansas—

the Chenal Lakes Apartments located at 13500 Chenal Parkway, Little Rock, AR 72211 ("Chenal Lakes") and the Brightwaters Apartments located 2420 Riverfront Drive, Little Rock, AR 72202 ("Brightwaters").

13.     In early 2022, Harbor & Timbers hired Adivo to perform certain renovation and construction work at Chenal Lakes and Brightwaters.

14.     On or about February 4, 2022, Adivo and Harbor & Timbers entered into a construction contract pursuant to which Advio agreed to perform certain renovation and construction work at Chenal Lakes and Brightwaters (the "Construction Agreement"). A true and correct copy of the Construction Agreement is attached as **Exhibit 1** and incorporated by reference.

15.     In addition, Adivo and Harbor & Timbers executed a document titled General Conditions of the Contract for Construction (the "General Conditions Agreement") which set forth certain general conditions for the Construction Agreement. A true and correct copy of the General Conditions Agreement is attached as **Exhibit 2** and incorporated by reference. The Construction Agreement and General Conditions Agreement are hereinafter referred to as the "Contract."

16.     The Contract was structured such that the basis of payment was the Cost of the Work Plus a Fee with a Guaranteed Maximum Price.[1]

17.     The Guaranteed Maximum Price for the work at Chenal Lakes was $7,525,440.00, and the Guaranteed Maximum Price for the work at Brightwaters was $2,250,115.00, for a total Guaranteed Maximum Price of $9,775,555.00. *See* Exhibit 1, Section 5.2.

18.     Before commencing work, the Contract required Harbor & Timbers to pay Adivo a Mobilization Deposit, calculated as 15% of the Guaranteed Maximum Price. *See* Exhibit 1, Section 4.1.

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Construction Agreement and the General Conditions Agreement.

19.     Before commencement of the work, Harbor & Timbers paid Adivo the full Mobilization Deposit of $1,466,333.25.

20.     The Contract further provided that the Mobilization Deposit would be credited to Harbor & Timbers as payments for work performed came due. *See* Exhibit 1, Sections 4.1, 12.4.

21.     Specifically, Adivo was to credit 15% of each progress payment by applying the Mobilization Deposit to the amount due. *See* Exhibit 1, Sections 12.4.

22.     The Contract further provided that if it was terminated for any reason Adivo would immediately return any unapplied portion of the Mobilization Deposit to Harbor & Timbers. *See* Exhibit 1, Sections 12.4.

23.     After Harbor & Timbers paid the Mobilization Deposit and after certain other conditions precedent to commencement were met, Adivo commenced construction work at Chenal Lakes and Brightwaters.

24.     As Adivo performed work, Harbor & Timbers made timely progress payments as they came due.

25.     In accordance with the terms of the Contract, upon information and belief, Adivo applied the Mobilization Deposit to pay for 15% of each progress payment, and Harbor & Timbers paid the remaining amount due.

26.     In early July 2023, Zvi Levin, on behalf of Adivo, communicated to Harbor & Timbers that Adivo was insolvent, intended to initiate a state court insolvency proceeding, and did not intend to complete the work at Chenal Lakes and Brightwaters.

27.     Thereafter, Harbor & Timbers sent a letter dated July 10, 2023 to Adivo notifying Adivo that the Contract would be terminated effective 7 days from receipt of the letter, unless Adivo provided adequate assurances that it would fulfill its obligations under the Contract and

4

complete work at Chenal Lakes and Brightwaters.

28.     Adivo did not provide adequate assurances, and the parties' Contract was terminated for cause pursuant to the terms of the Contract. *See* Exhibit 2, Section 14.2.

29.     Based on the terms of the Contract, Adivo was obligated upon termination, and remains obligated, to immediately return the unapplied portion of the Mobilization Deposit to Harbor & Timbers.

30.     Specifically, Section 14.1.1 of the Construction Agreement provides: "In the event that this Agreement is terminated for any reason, any amount of the Mobilization Deposit not used by [Adivo] to pay for the Costs of the Work set forth in this Agreement shall be returned to [Harbor & Timbers] immediately."

31.     As of the date of termination, upon information and belief, the amount of the remaining, unapplied Mobilization Deposit was $985,365.06.

32.     Despite termination of the Contract, Adivo has failed to return the unapplied portion of the Mobilization Deposit to Harbor & Timbers.

33.     In addition, Adivo is liable to Harbor & Timbers for all amounts that Harbor & Timbers incur to complete the project to the extent such amounts exceed the Contract Sum. *See* Exhibit 2, Section 14.2.4.

34.     Harbor & Timbers are also entitled to recover additional compensatory damages that they suffer as the result of Adivo's breach.

**Zvi Levin's Abuse of the Corporate Form**

35.     Upon information and belief, Adivo's breaches were caused, at least in part, by Zvi Levin's siphoning of funds from Adivo, including the Mobilization Deposit.

36.     Upon information and belief, Levin owned and controlled Adivo at all times

relevant to the claims stated herein.

37.     After the Contract was terminated, a representative of Adivo informed Harbor & Timbers that the Mobilization Deposit may have been taken from Adivo by Levin and in any event, was no longer held by Adivo.

38.     Upon information and belief, Levin transferred funds, including the Mobilization Deposit, from Adivo to himself or to other persons or entities for his own personal benefit and to avoid Adivo's obligations under the Contract.

39.     Upon information and belief, Levin knew that by siphoning money from Adivo, Adivo would be unable to return the unapplied Mobilization Deposit to Harbor & Timbers or otherwise meet its obligations under the Contract.

40.     Upon information and belief, Levin intentionally took the unapplied Mobilization Deposit to the detriment of Harbor & Timbers, and Levin's actions left Adivo undercapitalized.

41.     The corporate form of Adivo has been abused by Levin to the detriment of Harbor & Timbers.

### CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT
### ADIVO'S FAILURE TO RETURN MOBILIZATION DEPOSIT

42.     The factual allegations contained in the preceding paragraphs are adopted, realleged, and incorporated by reference as if set forth word for word herein.

43.     The Contract constitutes a valid, enforceable contract.

44.     Under the Contract, Adivo agreed to perform certain renovation and construction work at Chenal Lakes and Brightwaters, and Harbor & Timbers agreed to pay Adivo for the work in accordance with the terms of the Contract.

45.    Before commencing work, the Contract required Harbor & Timbers to pay Adivo a Mobilization Deposit, calculated as 15% of the Guaranteed Maximum Price.

46.    Before commencement of the work, Harbor & Timbers paid Adivo the full Mobilization Deposit of $1,466,333.25.

47.    The Contract further provided that the Mobilization Deposit would be credited to Harbor & Timbers as payments for work performed came due.

48.    Specifically, Adivo was to credit 15% of each progress payment by applying the Mobilization Deposit to such payments.

49.    The Contract further provided that if it was terminated for any reason Adivo would immediately return any unapplied portion of the Mobilization Deposit to Harbor & Timbers. *See* Exhibit 1, Sections 12.4.

50.    After Harbor & Timbers paid the Mobilization Deposit and after certain other conditions precedent to commencement were met, Adivo commenced construction work at Chenal Lakes and Brightwaters.

51.    As Adivo performed work, Harbor & Timbers made timely progress payments as they came due.

52.    In accordance with the terms of the Contract, upon information and belief, Adivo applied the Mobilization Deposit to pay for 15% of each progress payment, and Harbor & Timbers paid the remaining amount due.

53.    In early July 2023, Zvi Levin, on behalf of Adivo, communicated to Harbor & Timbers that Adivo was insolvent, intended to initiate a state court insolvency proceeding, and did not intend to complete the work at Chenal Lakes and Brightwaters.

54.    Thereafter, Harbor & Timbers sent a letter dated July 10, 2023 to Adivo notifying

Adivo that the Contract would be terminated effective 7 days from receipt of the letter, unless Adivo provided adequate assurances that it would fulfill its obligations under the Contract and complete work at Chenal Lakes and Brightwaters.

55.     Adivo did not provide adequate assurances, and the parties' Contract was terminated for cause pursuant to the terms of the Contract.

56.     Based on the terms of the Contract, Adivo was obligated upon termination, and remains obligated, to immediately return the unapplied portion of the Mobilization Deposit to Harbor & Timbers.

57.     Specifically, Section 14.1.1 of the Construction Agreement provides: "In the event that this Agreement is terminated for any reason, any amount of the Mobilization Deposit not used by [Adivo] to pay for the Costs of the Work set forth in this Agreement shall be returned to [Harbor & Timbers] immediately."

58.     Despite termination of the Contract, Adivo has failed to return the unapplied portion of the Mobilization Deposit to Harbor & Timbers.

59.     Accordingly, Adivo has breached the Contract.

60.     As of the date of termination, the amount of the remaining, unapplied Mobilization Deposit was $985,365.06.

61.     Harbor & Timbers at all times met their obligations under the Contract.

62.     Adivo's breach of the Contract caused Harbor & Timbers to suffer damages in an amount of at least $985,365.06.

63.     Judgment should therefore be entered in favor of Harbor & Timbers and against Adivo for all damages incurred as a result of the breach, in an amount to be proved at trial but no less than $985,365.06, plus interest at a rate of 6% per annum pursuant to Ark. Code Ann. § 4-57-

101, and for reasonable attorneys' fees as authorized by Ark. Code Ann. § 16-22-308.

## COUNT II
### BREACH OF CONTRACT
### ADIVO'S REPUDIATION OF THE CONTRACT

64.     The factual allegations contained in the preceding paragraphs are adopted, realleged, and incorporated by reference as if set forth word for word herein.

65.     The Contract constitutes a valid, enforceable contract.

66.     Under the Contract, Adivo agreed to perform certain renovation and construction work at Chenal Lakes and Brightwaters, and Harbor & Timbers agreed to pay Adivo for the work in accordance with the terms of the Contract.

67.     After Harbor & Timbers paid the Mobilization Deposit and after certain other conditions precedent to commencement were met, Adivo commenced construction work at Chenal Lakes and Brightwaters.

68.     As Adivo performed work, Harbor & Timbers made timely progress payments as they came due.

69.     In early July 2023, Zvi Levin, on behalf of Adivo, communicated to Harbor & Timbers that Adivo was insolvent, intended to initiate a state court insolvency proceeding, and did not intend to complete the work at Chenal Lakes and Brightwaters.

70.     Accordingly, Adivo repudiated and breached the Contract.

71.     Adivo's breach of the Contract caused Harbor & Timbers to suffer damages in an amount to be determined at trial.

72.     Harbor & Timbers at all times met their obligations under the Contract.

73.     Adivo is liable to Harbor & Timbers for all such amounts that Harbor & Timbers incurs to complete the project to the extent such amounts exceed the Contract Sum.

74.    Harbor & Timbers is also entitled to recover additional compensatory damages that it suffers as the result of Adivo's breach.

75.    Judgment should therefore be entered in favor of Harbor & Timbers and against Adivo for all damages incurred as a result of the breach, in an amount to be proved at trial, plus interest at a rate of 6% per annum pursuant to Ark. Code Ann. § 4-57-101, and for reasonable attorneys' fees as authorized by Ark. Code Ann. § 16-22-308.

**COUNT III**
**PIERCING THE CORPORATE VEIL**
**ZVI LEVIN'S ABUSE OF THE CORPORATE FORM**

76.    The factual allegations contained in the preceding paragraphs are adopted, realleged, and incorporated by reference as if set forth word for word herein.

77.    Though Adivo's breaches of the Contract were unexpected, later-discovered facts revealed that Adivo's breaches were, upon information and belief, caused in part by Zvi Levin's siphoning of funds from Adivo, including the Mobilization Deposit.

78.    Upon information and belief, Levin owned and controlled Adivo at all times relevant to the claims stated herein.

79.    After the Contract was terminated, a representative of Adivo informed Harbor & Timbers that the Mobilization Deposit may have been taken from Adivo by Levin and in any event, was no longer held by Adivo.

80.    Upon information and belief, Levin transferred funds, including the Mobilization Deposit, from Adivo to himself or to other persons or entities for his own personal benefit and to avoid Adivo's obligations under the Contract.

81.    Upon information and belief, Levin knew that by siphoning money from Adivo, Adivo would be unable to return the unapplied Mobilization Deposit to Harbor & Timbers or

otherwise meet its obligations under the Contract.

82.     Upon information and belief, Levin intentionally took the unapplied Mobilization Deposit to the detriment of Harbor & Timbers, and Levin's actions left Adivo undercapitalized.

83.     The corporate form of Adivo has been abused by Levin to the detriment of Harbor & Timbers.

84.     Accordingly, the corporate veil should be pierced, and Levin should be liable for all damages suffered by Harbor & Timbers as a result of Adivo's breaches of the Contract.

**COUNT IV**
**FRAUDULENT TRANSFER OF MOBILIZATION DEPOSIT**

85.     The factual allegations contained in the preceding paragraphs are adopted, realleged, and incorporated by reference as if set forth word for word herein.

86.     In early July 2023, Zvi Levin, on behalf of Adivo, communicated to Harbor & Timbers that Adivo was insolvent, intended to initiate a state court insolvency proceeding, and did not intend to complete the work at Chenal Lakes and Brightwaters.

87.     Thereafter, Harbor & Timbers sent a letter dated July 10, 2023 to Adivo notifying Adivo that the Contract would be terminated effective 7 days from receipt of the letter, unless Adivo provided adequate assurances that it would fulfill its obligations under the Contract and complete work at Chenal Lakes and Brightwaters.

88.     Adivo did not provide adequate assurances, and the parties' Contract was terminated for cause pursuant to the terms of the Contract. *See* Exhibit 2, Section 14.2.

89.     Adivo was obligated upon termination, and remains obligated, to immediately return the unapplied portion of the Mobilization Deposit to Harbor & Timbers.

90.     Specifically, Section 14.1.1 of the Construction Agreement provides: "In the event that this Agreement is terminated for any reason, any amount of the Mobilization Deposit not used

11

by [Adivo] to pay for the Costs of the Work set forth in this Agreement shall be returned to [Harbor & Timbers] immediately."

91.     Upon information and belief, Zvi Levin caused Adivo to transfer funds, including the unapplied Mobilization Deposit, from Adivo to Levin or to other persons or entities for Levin's own personal benefit with the intent to hinder, delay, or defraud Harbor & Timbers.

92.     Based on the foregoing, Adivo, through Levin, fraudulently transferred funds to Levin, and Harbor & Timbers are therefore entitled to avoidance of the transfer and damages in an amount to be determined at trial pursuant to Ark. Code Ann. § 4-59-207.

## COUNT V
### UNJUST ENRICHMENT
### ZVI LEVIN'S ENRICHMENT AT HARBOR & TIMBERS' EXPENSE

93.     The factual allegations contained in the preceding paragraphs are adopted, realleged, and incorporated by reference as if set forth word for word herein.

94.     Harbor & Timbers paid Adivo the full Mobilization Deposit of $1,466,333.25.

95.     Upon termination of the Contract, Adivo was obligated to immediately return the unapplied portion of the Mobilization Deposit to Harbor & Timbers.

96.     Upon information and belief, Levin transferred funds, including the Mobilization Deposit, from Adivo to benefit Levin personally, leaving Adivo unable to return the Mobilization Deposit.

97.     Accordingly, Levin has been unjustly enriched at Harbor & Timbers' expense.

98.     Judgment should therefore be entered in favor of Harbor & Timbers and against Levin in the amount by which Levin has been unjustly enriched.

### Jury Demand

99.     Harbor & Timbers request a trial by jury.

<u>Reservation of Rights</u>

100.    Harbor & Timbers reserve the right to plead further after additional investigation and discovery.

WHEREFORE, Plaintiffs Harbor Grand Holding Company, LLC and Timbers Holding Company, LLC pray for damages to be awarded against Defendants Adivo Construction Corp. and Zvi Levin in an amount sufficient to compensate it fully; for an award of attorneys' fees, and for all other relief to which it is entitled.

Respectfully submitted,

**ROSE LAW FIRM,**
a Professional Association
120 East Fourth Street
Little Rock, AR 72201-2893
(501) 377-0356

By: _____
David S. Mitchell, Jr.
Arkansas Bar No. 2010271
dmitchell@roselawfirm.com

Austin C. Reed
Arkansas Bar No. 2021159
areed@roselawfirm.com

 **Document A102™ – 2017**

*Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price*

AGREEMENT made as of the 31st day of January in the year 2022
*(In words, indicate day, month and year.)*

BETWEEN the Owner:
*(Name, legal status, address and other information)*

HARBOR GRAND HOLDING COMPANY, LLC, a Delaware limited liability company, and
TIMBERS HOLDING COMPANY, LLC, a Delaware limited liability company, collectively as the "Owner"
6118 Paseo Delicias #1651
Rancho Santa Fe, CA 92067
Telephone Number: 858-756-5565
E-mail: tim@fbrspartners.com

| This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

The parties should complete A102™–2017, Exhibit A, Insurance and Bonds, contemporaneously with this Agreement. AIA Document A201™–2017, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

and the Contractor:
*(Name, legal status, address and other information)*

ADIVO Construction
850 SE 7th Street
Deerfield Beach, FL 33441
Telephone Number: 954-570-0300
E-mail: lv@adivoconstruction.com

for the following Project:
*(Name, location and detailed description)*

Chenal Lakes Apartments
13500 Chenal Parkway
Little Rock, AR 72211

Brightwaters Apartments
2420 Riverfront Drive
Little Rock, AR 72202

The Architect:
*(Name, legal status, address and other information)*

N/A – All references to decisions and actions of Architect herein shall instead mean Owner. To the extent that Owner is not able or willing to perform such Architect functions under this Agreement, that portion of the Agreement shall be considered not applicable unless Owner appoints an architect to handle such matters.

The Owner and Contractor agree as follows.



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:20:22 ET on 02/01/2022 under Order No.2114252166 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1865409034)

1

Exhibit 1

TABLE OF ARTICLES

1    THE CONTRACT DOCUMENTS

2    THE WORK OF THIS CONTRACT

3    RELATIONSHIP OF THE PARTIES

4    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

5    CONTRACT SUM

6    CHANGES IN THE WORK

7    COSTS TO BE REIMBURSED

8    COSTS NOT TO BE REIMBURSED

9    DISCOUNTS, REBATES AND REFUNDS

10    SUBCONTRACTS AND OTHER AGREEMENTS

11    ACCOUNTING RECORDS

12    PAYMENTS

13    DISPUTE RESOLUTION

14    TERMINATION OR SUSPENSION

15    MISCELLANEOUS PROVISIONS

16    ENUMERATION OF CONTRACT DOCUMENTS

17    CONSTRUCTION OF PROJECT

18    REPRESENTATIONS, WARRANTIES AND COVENANTS

19    DEFECTIVE WORK

20    NOTICES

21    ASSIGNMENT

22    INSURANCE

23    RESOLUTION OF CLAIMS

24    MISCELLANEOUS

EXHIBIT A    INSURANCE AND BONDS

ARTICLE 1    THE CONTRACT DOCUMENTS
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary, and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are


AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1685408634)

2

as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern. An enumeration of the Contract Documents, other than a Modification, appears in Article 16.

### ARTICLE 2    THE WORK OF THIS CONTRACT

~~The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.~~ Contractor shall execute the entire Work described in or reasonably inferable from the Contract Documents, including all Work required to complete the Project as depicted in the Schedule of Values listed in Exhibit B.

### ARTICLE 3    RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

### ARTICLE 4    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 4.1 The date of commencement of the Work shall be:
*(Check one of the following boxes.)*

[   ]    The date of this Agreement.

[   ]    A date set forth in a notice to proceed issued by the Owner.

[ X ]    Established as follows:
*(Insert a date or a means to determine the date of commencement of the Work.)*

The date of commencement shall be when all the following condition precedent events have occurred:

~~If a date of commencement of the Work is not selected, then the date of commencement shall be the date~~ .1    Issuance of all governmental permits necessary for the proper execution of the Work which shall be paid by Contractor.

.2    Execution of this Agreement by Contractor and Owner.

.3    Delivery of a written notice to proceed ("NTP") to Contractor issued by the Owner.

.4    A deposit of fifteen percent (15%) of the Guaranteed Maximum Price is paid to Contractor by Owner ("Mobilization Deposit"). The Mobilization Deposit will be credited to Owner as set forth in Section 12.4 of this Agreement.

§ 4.2 The Contract Time shall be measured from the date of commencement of the Work.

§ 4.2.1 Contractor shall execute and record a Notice of Commencement in the form attached hereto as Exhibit C, providing the name and address of Owner and Contractor, the full legal description of the property and all other information required by Arkansas law; provided that Owner has provided Contractor with the statutorily required information (e.g., the name and address of Owner's lender), no later than seven (7) days after the actual commencement of the Work. Owner shall post a certified copy of said Notice on the jobsite no later than fifteen (15) days after the actual date of commencement of the Work, which shall be at all times maintained until the completion of the Project. Contractor shall furnish the Owner with a copy of all written requests Contractor receives from Contractor Parties requesting a copy of the Notice of Commencement.



Init.

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114263159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                        (1885408634)

3

**§ 4.3 Substantial Completion**
**§ 4.3.1** Subject to adjustments of the Contract Time as provided in the Contract Documents, the Contractor shall achieve Substantial Completion of the entire Work:
*(Check one of the following boxes and complete the necessary information.)*

[ ]    Not later than    (  ) calendar days from the date of commencement of the Work.

[ X ]    By the following date: The date that Contractor is required to achieve Substantial Completion of the Work is eighteen (18) months following Commencement of the Work as set forth in Section 4.1 in this Agreement above, and shall be referred to as the "Completion Deadline." The following items will cause the date of Substantial Completion to be extended as follows: (i) any delay in commencement of Work not caused by Contractor, (ii) any requests for information from Contractor to Owner not responded to within two (2) business days, (iii) lack of Owner's vendor response and respective coordination and installation within four (4) business days, (iv) materials specified to be provided by Owner which are not readily available exceeding a two (2) week lead time, and (v) any delays relating to Owner providing Contractor with access to units as set forth in Section 5.2.9 of this Agreement below. Any such delays shall extend the date of Substantial Completion commensurate with the number of calendar days such delay causes; provided Contractor shall immediately notify Owner in writing of any claimed delays.

**§ 4.3.2** Subject to adjustments of the Contract Time as provided in the Contract Documents, if portions of the Work are to be completed prior to Substantial Completion of the entire Work, the Contractor shall achieve Substantial Completion of such portions by the following dates:

| Portion of Work | Substantial Completion Date |
| --- | --- |
| TBD by Owner | TBD by Owner |

**§ 4.3.3** If the Contractor fails to achieve Substantial Completion as provided in this Section 4.3, liquidated damages, if any, shall be assessed as set forth in Section 5.1.6.[INTENTIONALLY OMITTED]

**§ 4.4 [INTENTIONALLY OMITTED]**

**§ 4.5** In addition to any other definition in the Contract Documents, "Substantial Completion" of the Work or "Substantially Complete" shall mean the first to occur of either (1) the date Contractor procures and delivers to Owner all certificates, permits, approvals and consents with respect to Contractor's Work required under applicable law for occupancy and use of the Project; or (2) the date when the Work is sufficiently complete in accordance with the Contract Documents to allow Owner to occupy and utilize the Project for its indicated purpose. For the Work to be considered Substantially Complete, the Project site must be left "broom clean," all boxes, crates, rubbish and debris shall be hauled away from the Project site at Contractor's expense, and Contractor shall thoroughly clean the portions of the Project where Contractor conducted Contractor's Work, including all glass, clean hardware, remove paint stains, spots, smears, marks and dirt from all surfaces, clean fixtures, and wash floors so as to present clean work to Owner for acceptance. It is understood that fine cleaning remains the responsibility of Owner. Warranties required by the Contract Documents shall not commence until the date of Substantial Completion of all of the Work, unless specified otherwise by any affected manufacturer in its warranty, except and only to the extent that any portion of the Work is actually used or occupied by Owner for its indicated purpose on an earlier date (in which case the warranties shall be deemed to have commenced on the date of such use or occupancy). The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically noted.

**§ 4.6** In addition to any other definition in the Contract Documents, "Final Completion" or "Finally Complete" shall mean, and "Final Payment" (constituting the ten percent (10%) retention funds that have been withheld throughout the course of construction of the Project) shall not be due to Contractor until after, the proper and full completion of all of the Work, including but not limited to satisfactory operation of all equipment and systems, completion or correction of all punch-list items, delivery of all maintenance and operations manuals and all warranties and guarantees (and assignments thereof), issuance of all required approvals and certificates by any authorities with jurisdiction over the Project (including final and unconditional certificates of occupancy), delivery of as-built Drawings and Specifications, removal of all Contractor's and its Subcontractors' rubbish, tools, scaffolding and surplus materials from the Project



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                (1685400634)

site, and the correction of all property damage that is the responsibility of Contractor pursuant to the Contract Documents.

## ARTICLE 5    CONTRACT SUM

§ 5.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

§ 5.1.1 The Contractor's Fee:
*(State a lump sum, percentage of Cost of the Work, or other provision for determining the Contractor's Fee.)*

The Contractor's Fee is included in the total budget and is not a separate line item.

§ 5.1.2 The method of adjustment of the Contractor's Fee for changes in the Work:

If a Change Order is processed, Contractor's Fee may be adjusted upward or downward as set forth in the Change Order.

§ 5.1.3 Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

To be specified by Owner in its commercially reasonable discretion.

§ 5.1.4 Rental rates for Contractor-owned equipment shall not exceed   percent (  %) of the standard rental rate paid at the place of the Project. [INTENTIONALLY OMITTED]

§ 5.1.5 Unit prices, if any:
*(Identify the item and state the unit price and quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|------|----------------------|------------------------|
| N/A  |                      |                        |

§ 5.1.6 Liquidated damages, if any:
*(Insert terms and conditions for liquidated damages, if any.)*

N/A

§ 5.1.7 Other:
*(Insert provisions for bonus, cost savings or other incentives, if any, that might result in a change to the Contract Sum.)*

N/A except for cost savings to be shared between Owner and Contractor set forth in Section 12.1.4 below.

## § 5.2 Guaranteed Maximum Price

§ 5.2.1 The Contract Sum is guaranteed by the Contractor not to exceed ($——), Seven Million Five Hundred Twenty-Five Thousand Four Hundred Forty Dollars and No/100 ($7,525,440.00) applicable to the Chenal Lakes location and Two Million Two Hundred Fifty Thousand One Hundred Fifteen Dollars and No/100 ($2,250,115.00) applicable to the Brightwaters location, subject to additions and deductions by Change Order as provided in the Contract Documents. This maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Price and is guaranteed separately for each location. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner. Changes to the Work required by the Owner, Architect, Contractor, or governing authority shall be handled in accordance with AIA Document A201-2017 (as agreed to and modified by Owner and Contractor), and the Guaranteed Maximum Price will be adjusted accordingly either upward or downward. The Guaranteed Maximum Price includes the Contractor's Fee. The Schedule of Values is included in Exhibit B and includes all Costs of the Work that Contractor anticipates for the Project and the Contractor's Fee. Owner may request the Schedule of Values to be updated during the performance of the Work to include reasonable additional detail, including specific costs for materials, Subcontractor charges and allocation of Contractor Fee for each portion of the Work.



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283168 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                         (1885408834)

**§ 5.2.2 Alternates**
§ 5.2.2.1 Alternates, if any, included in the Guaranteed Maximum Price:

| Item | Price |
| --- | --- |
| N/A | |

§ 5.2.2.2 Subject to the conditions noted below, the following alternates may be accepted by the Owner following execution of this Agreement. Upon acceptance, the Owner shall issue a Modification to this Agreement.
*(Insert below each alternate and the conditions that must be met for the Owner to accept the alternate.)*

| Item | Price | Conditions for Acceptance |
| --- | --- | --- |
| N/A | | |

§ 5.2.3 Allowances, if any, included in the Guaranteed Maximum Price:
*(Identify each allowance.)*

| Item | Price |
| --- | --- |
| N/A | |

§ 5.2.4 Assumptions, if any, upon which the Guaranteed Maximum Price is based:
*(Identify each assumption.)*

N/A

§ 5.2.5 To the extent that the Contract Documents are anticipated to require further development, the Guaranteed Maximum Price includes the costs attributable to such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

§ 5.2.6 The Owner shall authorize preparation of revisions to the Contract Documents to the agreed-upon assumptions contained in Section 5.2.4. The Owner shall promptly furnish such revised Contract Documents to the Contractor. The Contractor shall notify the Owner and Architect of any inconsistencies between the agreed-upon assumptions contained in Section 5.2.4 and the revised Contract Documents.

§ 5.2.7 The Guaranteed Maximum Price does not include designer, architect, engineering and permit fees (if applicable).

§ 5.2.8 Does not include subfloor repair/replacement, floor leveling, ceramic tile removal and disposal, smoke/CO2 detectors, wall paper removal, framing modifications, major cabinet repair/replacement or modification, shower door removal, disposal or replacement, tile wainscot removal, disposal or replacement and major drywall repair/replacement (all to be addressed via change order).

§ 5.2.9   The Guaranteed Maximum Price is contingent upon the Owner providing access to Contractor an average of minimum of a combined thirty-four (34) units per month for both Chenal and Brightwaters locations to renovate determined every 90 days during the term of this Agreement, and the Contractor receiving a combined 598 units for both Chenal and Brightwaters locations to renovate within twenty-four (24) months of commencement of the Work after all delays are considered. The Guaranteed Maximum Price shall be adjusted by way of a written Change Order agreed to by the parties to reflect any increases in Costs of the Work Contractor paid by Contractor directly related to the failure of Owner to provide access to Contractor for such units for renovation. Such increase in pricing for the Guaranteed Maximum Price shall only be allowed for the Owner not providing access to the units as specified herein. In addition, the failure to provide the units shall not be considered a default of Owner of this Agreement and the consequences of the same are limited to the price adjustment specified above.

**ARTICLE 6   CHANGES IN THE WORK**
§ 6.1 Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Article 7 of AIA Document A201™–2017, General Conditions of the Contract for Construction.

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                (1685408634)

6



§ 6.2 Adjustments to subcontracts awarded on the basis of a stipulated sum shall be determined in accordance with Article 7 of A201–2017, as they refer to "cost" and "fee," and not by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior written consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ 6.3 In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in Article 7 of AIA Document A201–2017 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the term "fee" shall mean the Contractor's Fee as defined in Section 5.1.1 of this Agreement.

§ 6.4 If no specific provision is made in Article 5 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Article 5 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

**ARTICLE 7    COSTS TO BE REIMBURSED**
**§ 7.1 Cost of the Work**
§ 7.1.1 The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. The Cost of the Work shall include only the items set forth in this Article 7.

§ 7.1.2 Where, pursuant to the Contract Documents, any cost is subject to the Owner's prior approval, the Contractor shall obtain such approval in writing prior to incurring the cost.

§ 7.1.3 Costs shall be at rates not higher than the standard paid at the place of the Project, except with prior approval of the Owner.

**§ 7.2 Labor Costs**
§ 7.2.1 Wages or salaries of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's prior approval, at off-site workshops.

§ 7.2.2 Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site and performing Work, with the Owner's prior approval.

§ 7.2.2.1 Wages or salaries of the Contractor's supervisory and administrative personnel when performing Work and stationed at a location other than the site, but only for that portion of time required for the Work, and limited to the personnel and activities listed below:
*(Identify the personnel, type of activity and, if applicable, any agreed upon percentage of time to be devoted to the Work.)*

N/A

§ 7.2.3 Wages or salaries of the Contractor's supervisory or administrative personnel engaged at factories, workshops or while traveling, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

§ 7.2.4 Costs paid or incurred by the Contractor, as required by law or collective bargaining agreements, for taxes, insurance, contributions, assessments, and benefits and, for personnel not covered by collective bargaining agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

§ 7.2.5 If agreed rates for labor costs, in lieu of actual costs, are provided in this Agreement, the rates shall remain unchanged throughout the duration of this Agreement, unless the parties execute a Modification.

**§ 7.3 Subcontract Costs**
Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts and this Agreement.

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                              (1686408634)

**§ 7.4 Costs of Materials and Equipment Incorporated in the Completed Construction**

**§ 7.4.1** Costs, including transportation and storage at the site, of materials and equipment incorporated, or to be incorporated, in the completed construction.

**§ 7.4.2** ~~Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.~~ **[INTENTIONALLY OMITTED]**

**§ 7.5 Costs of Other Materials and Equipment, Temporary Facilities and Related Items**

**§ 7.5.1** Costs of transportation, storage, installation, dismantling, maintenance, and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment, and tools, that are not fully consumed, shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Contractor shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Contractor at the site, and the costs of transportation, installation, dismantling, minor repairs, and removal of such temporary facilities, machinery, equipment, and hand tools. Rates and quantities of equipment owned by the Contractor, or a related party as defined in Section 7.8, shall be subject to the Owner's prior approval. The total rental cost of any such equipment may not exceed the purchase price of any comparable item.

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of the Contractor's site office, including general office equipment and supplies.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's prior approval.

**§ 7.6 Miscellaneous Costs**

**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract.

**§ 7.6.1.1** ~~Costs for self-insurance, for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.~~ **[INTENTIONALLY OMITTED]**

**§ 7.6.1.2** ~~Costs for insurance through a captive insurer owned or controlled by the Contractor, with the Owner's prior approval.~~ **[INTENTIONALLY OMITTED]**

**§ 7.6.2** Sales, use, or similar taxes, imposed by a governmental authority, that are related to the Work and for which the Contractor is liable.

**§ 7.6.3** ~~Fees and assessments for the building permit, and~~ Except for building permit fees, fees and assessments for other permits, licenses, and inspections, for which the Contractor is required ~~by the Contract Documents~~ to pay.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents; except those related to defective or nonconforming Work for which reimbursement is excluded under Article 13 of AIA Document A201–2017 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**§ 7.6.5** ~~Royalties and license fees paid for the use of a particular design, process, or product, required by the Contract Documents.~~ **[INTENTIONALLY OMITTED]**

**§ 7.6.5.1** ~~The cost of defending suits or claims for infringement of patent rights arising from requirements of the Contract Documents, payments made in accordance with legal judgments against the Contractor resulting from such~~



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                        (1685408634)

~~suits or claims, and payments of settlements made with the Owner's consent, unless the Contractor had reason to believe that the required design, process or product was an infringement of a copyright or a patent, and the Contractor failed to promptly furnish such information to the Architect as required by Article 3 of AIA Document A201–2017. The costs of legal defenses, judgments, and settlements, shall not be included in the Cost of the Work used to calculate the Contractor's Fee or subject to the Guaranteed Maximum Price.~~ [INTENTIONALLY OMITTED]

§ 7.6.6 Costs for communications services, electronic equipment, and software, directly related to the Work and located at the site, with the Owner's prior approval.

§ 7.6.7 Costs of document reproductions and delivery charges.

§ 7.6.8 Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility in the Contract Documents.

§ 7.6.9 Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor after the execution of this Agreement in the performance of the Work and with the Owner's prior approval, which shall not be unreasonably withheld.

§ 7.6.10 Expenses incurred in accordance with the Contractor's standard written personnel policy for relocation and temporary living allowances of the Contractor's personnel required for the Work, with the Owner's prior approval.

§ 7.6.11 That portion of the reasonable expenses of the Contractor's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

§ 7.6.12 The Schedule of Values includes costs for all "Overhead" of Contractor required to perform the Work. As used herein, the term "Overhead" shall mean all costs not specifically designated in the Schedule of Values and shall include the following: (1) site, building, and interior layout, including providing datum bench for the use of all Subcontractors; establishing and maintaining building corner and column line control points, and layout of interior partitions after concrete slab is in place; (2) removal of debris from the Project site, including containers, trucking and disposal; (3) site and street cleaning and final cleanup; (4) field office(s) and related supplies, equipment and furnishings; (5) drinking water, ice and cups for all of Contractor's personnel and all Subcontractors; (6) temporary power, lighting and utilities including hook-ups, distribution and removals to the extent identified as Contractor's responsibility in the Specifications, (costs identified as the responsibility of Subcontractors in the Specifications shall be included in the Cost of the Work other than Overhead); (7) temporary fences, walkways, traffic control and barricades; (8) Project signs; (9) temporary roads and employee parking; (10) protection, security and safety measures; (11) costs of telegrams, and long-distance telephone calls, facsimile, radio/communications systems and equipment, and telephone service at the Project site and reasonable petty cash expenses of the Project site office; (12) temporary hoisting; (13) temporary heat and protection (except for the concrete work and masonry work), temporary roofing, temporary partitions and dust control; (14) temporary toilets for the use of all personnel of Contractor and all Subcontractors; (15) progress photographs, jobsite pickup trucks, etc.; and (16) Project site record survey. Contractor shall not be entitled to additional payment for Overhead.

§ 7.7 Other Costs and Emergencies
§ 7.7.1 Other costs incurred in the performance of the Work, with the Owner's prior approval.

§ 7.7.2 Costs incurred in taking action to prevent threatened damage, injury, or loss, in case of an emergency affecting the safety of persons and property, as provided in Article 10 of AIA Document A201–2017.

§ 7.7.3 Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors, or suppliers, provided that such damaged or nonconforming Work was not caused by the negligence of, or failure to fulfill a specific responsibility by, the Contractor, and only to the extent that the cost of repair or correction is not recovered by the Contractor from insurance, sureties, Subcontractors, suppliers, or others.

§ 7.8 Related Party Transactions
§ 7.8.1 For purposes of this Section 7.8, the term "related party" shall mean (1) a parent, subsidiary, affiliate, or other entity having common ownership of, or sharing common management with, the Contractor; (2) any entity in which any stockholder in, or management employee of, the Contractor holds an equity interest in excess of ten percent (10%)

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                        (1685408834)

.9

in the aggregate; (3) any entity which has the right to control the business or affairs of the Contractor; or (4) any person, or any member of the immediate family of any person, who has the right to control the business or affairs of the Contractor.

§ 7.8.2 If any of the costs to be reimbursed arise from a transaction between the Contractor and a related party, the Contractor shall notify the Owner of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction in writing, then the cost incurred shall be included as a cost to be reimbursed, and the Contractor shall procure the Work, equipment, goods, or service, from the related party, as a Subcontractor, according to the terms of Article 10. If the Owner fails to authorize the transaction in writing, the Contractor shall procure the Work, equipment, goods, or service from some person or entity other than a related party according to the terms of Article 10.

## ARTICLE 8    COSTS NOT TO BE REIMBURSED
§ 8.1 The Cost of the Work shall not include the items listed below:

 .1     Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Section 7.2, or as may be provided in Article 15;

 .2     Bonuses, profit sharing, incentive compensation, and any other discretionary ~~payments,~~ payments paid to anyone hired by the Contractor or paid to any Subcontractor or vendor, unless the Owner has provided prior approval;

 .3     Expenses of the Contractor's principal office and offices other than the site office;

 .4     Overhead and general expenses, except as may be expressly included in Article 7;

 .5     The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work;

 .6     Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence of, or failure to fulfill a specific responsibility of the Contract by, the Contractor, Subcontractors, and suppliers, or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable;

 .7     Any cost not specifically and expressly described in Article 7; and

 .8     Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

## ARTICLE 9    DISCOUNTS, REBATES AND REFUNDS
§ 9.1 Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included the amount to be paid, less such discount, in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds, and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be obtained.

§ 9.2 Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 10    SUBCONTRACTS AND OTHER AGREEMENTS
§ 10.1 Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or other appropriate agreements with the Contractor. The Owner may designate specific persons from whom, or entities from which, the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors, and from suppliers of materials or equipment fabricated especially for the Work, who are qualified to perform that portion of the Work in accordance with the requirements of the Contract Documents. The Contractor shall deliver such bids to the Architect and Owner with an indication as to which bids the Contractor intends to accept. The Owner then has the right to review the Contractor's list of proposed subcontractors and suppliers in consultation with the Architect and, subject to Section 10.1.1, to object to any subcontractor or supplier. Any advice of the Architect, or approval or objection by the Owner, shall not relieve the Contractor of its responsibility to perform the Work in accordance with the Contract Documents. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                    (1685406634)

10

§ 10.1.1 When a specific subcontractor or supplier (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

§ 10.2 Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the Owner's prior written approval. If a subcontract is awarded on the basis of cost plus a fee, the Contractor shall provide in the subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Contractor in Article 11.

ARTICLE 11   ACCOUNTING RECORDS
The Contractor shall keep full and detailed records and accounts related to the Cost of the Work, and exercise such controls, as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Contractor's records and ~~accounts~~, accounts relating to the Project, including complete documentation supporting accounting entries, books, job cost reports, ~~correspondence~~, correspondence (but not including privileged communications), instructions, drawings, receipts, subcontracts, Subcontractor's proposals, Subcontractor's invoices, purchase orders, vouchers, memoranda, and other data relating to this Contract. The Contractor shall preserve these records for a period of ~~three~~ six (6) years after final payment, or for such longer period as may be required by law.

ARTICLE 12   PAYMENTS
§ 12.1 Progress Payments
§ 12.1.1 Based upon Applications for Payment submitted ~~to the Architect~~ by the Contractor, and Certificates for Payment issued by the ~~Architect,~~ Owner in response thereto, the Owner shall make progress payments on account of the Contract Sum, to the Contractor, as provided below and elsewhere in the Contract Documents.

§ 12.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

N/A

§ 12.1.3 Provided that an Application for Payment is received by the Architect ~~not later than the    day of a month, the Owner shall make payment of the amount certified to the Contractor not later than the    day of the    month. If an Application for Payment is received by the Architect after the application date fixed above, payment of the amount certified shall be made by the Owner not later than    (  ) days after the Architect receives the Application for Payment. (Federal, state or local laws may require payment within a certain period of time,)~~ and Owner not later than the 25th day of the month, projecting items to be completed through the 30th day of the month, and provided further that a certification of the Contractor is received by the Architect and Owner not later than the 30th day of the month, certifying items completed as of the 30th day of the month, the Owner shall make payment to the Contractor not later than the 25th day of the following month, subject to Article 9 of AIA Document A201-2017.

§ 12.1.4 With each Application for Payment, the Contractor shall ~~submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that payments already made by the Contractor on account of the Cost of the Work equal or exceed progress payments already received by the Contractor plus payrolls for the period covered by the present Application for Payment, less that portion of the progress payments attributable to the Contractor's Fee.~~ (i) execute Conditional Waivers of Liens through the date of Application for Payment and Unconditional Waivers of Liens for the previous month in addition to all reasonable items requested by Owner, each in the forms collectively attached hereto as Exhibit D; (ii) deliver to Owner copies of all subcontracts and Subcontractor draw requests in connection with subcontracts for which funds are being requested in the Application for Payment; (iii) comply with all payment conditions provided for in AIA Document A201-2017 (as agreed to and modified by Owner and Contractor); and (iv) deliver to Owner copies of all contracts and invoices from all Subcontractors and/or vendors in connection with any Subcontractor work performed or materials provided for which payment or reimbursement is being requested in the



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114263159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                            (1885408834)

<u>Application for Payment. Progress payments will be made to Contractor under the following conditions and subject to the following requirements:</u>

.1      <u>Owner must see (a) to the extent not previously provided each subcontract to establish the true value of each line item in the Schedule of Values and (b) each monthly draw request from each Subcontractor;</u>

.2      <u>Owner will pay each line item based on actual costs incurred but not to exceed the percentage of completion of the portion of the Work it represents;</u>

.3      <u>The Owner and Contractor shall each be entitled to fifty percent (50%) of any final cost savings for each location (Chenal Lakes and Brightwaters) achieved by Contractor for the Work that is set forth in Exhibit B; such cost savings shall be determined by the parties upon Final Completion of the Work and prior to the final payment. Notwithstanding the above, Owner shall be entitled to one hundred percent (100%) of any savings for each location (Chenal Lakes and Brightwaters) achieved by any value engineering or any other changes directed by Owner that occur during the construction of the Project in which the Scope of Work is reduced and the Contract Sum is reduced by Change Order or otherwise; and</u>

.4      <u>Contractor will fully comply with any Arkansas Construction Lien Laws, including obtaining the proper releases and waivers of lien, in the forms collectively attached hereto as Exhibit D, from Subcontractors, Sub-subcontractors and material suppliers.</u>

**§ 12.1.5** Each Application for Payment shall be based on the most recent ~~schedule of values~~ Schedule of Values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among: (1) the various portions of the Work; (2) any contingency for costs that are included in the Guaranteed Maximum Price but not otherwise allocated to another line item or included in a Change Order; and (3) the Contractor's Fee.

**§ 12.1.5.1** The ~~schedule of values~~ Schedule of Values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. The ~~schedule of values~~ Schedule of Values shall be used as a basis for reviewing the Contractor's Applications for Payment.

**§ 12.1.5.2** The allocation of the Guaranteed Maximum Price under this Section 12.1.5 shall not constitute a separate guaranteed maximum price for the Cost of the Work of each individual line item in the ~~schedule of values~~ Schedule of Values but it shall be a guaranteed price for each location of the work for Chenal Lakes and Brightwaters.

**§ 12.1.5.3** When the Contractor allocates costs from a contingency to another line item in the ~~schedule of values,~~ Schedule of Values, the Contractor shall submit supporting documentation to the Architect.

**§ 12.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work and for which the Contractor has made payment or intends to make payment prior to the next Application for Payment, by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the ~~schedule of values.~~Schedule of Values.

**§ 12.1.7** In accordance with AIA Document A201–2017 and subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

**§ 12.1.7.1** The amount of each progress payment shall first include:

.1      That portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the most recent schedule of values;

.2      That portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction or, if approved in writing in advance by the Owner, suitably stored off the site at a location agreed upon in writing;



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                                                    (1685408634)

.3　　That portion of Construction Change Directives that the Architect determines, in the Architect's professional judgment, to be reasonably justified; and

.4　　The Contractor's Fee, computed upon the Cost of the Work described in the preceding Sections 12.1.7.1.1 and 12.1.7.1.2 at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work included in Sections 12.1.7.1.1 and 12.1.7.1.2 bears to a reasonable estimate of the probable Cost of the Work upon its completion.

**§ 12.1.7.2** The amount of each progress payment shall then be reduced by:

.1　　The aggregate of any amounts previously paid by the Owner;

.2　　The amount, if any, for Work that remains uncorrected and for which the Architect has previously withheld a Certificate for Payment as provided in Article 9 of AIA Document A201–2017;

.3　　Any amount for which the Contractor does not intend to pay a Subcontractor or material supplier, unless the Work has been performed by others the Contractor intends to pay;

.4　　For Work performed or defects discovered since the last payment application, any amount for which the Architect or Owner may withhold payment, or nullify a Certificate of Payment in whole or in part, as provided in Article 9 of AIA Document A201–2017;

.5　　The shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.6　　Retainage withheld pursuant to Section 12.1.8.

**§ 12.1.8 Retainage**
**§ 12.1.8.1** For each progress payment made prior to Substantial Completion of the Work, the Owner may withhold the following amount, as retainage, from the payment otherwise due:
*(Insert a percentage or amount to be withheld as retainage from each Application for Payment. The amount of retainage may be limited by governing law.)*

Ten percent (10%).

**§ 12.1.8.1.1** The following items are not subject to retainage:
*(Insert any items not subject to the withholding of retainage, such as general conditions, insurance, etc.)*

N/A

**§ 12.1.8.2** Reduction or limitation of retainage, if any, shall be as follows:
*(If the retainage established in Section 12.1.8.1 is to be modified prior to Substantial Completion of the entire Work, insert provisions for such modification.)*

N/A

**§ 12.1.8.3** Except as set forth in this Section 12.1.8.3, upon Substantial Completion of the Work, the Contractor may submit an Application for Payment that includes the retainage withheld from prior Applications for Payment pursuant to this Section 12.1.8. The Application for Payment submitted at Substantial Completion shall not include retainage as follows:
*(Insert any other conditions for release of retainage, such as upon completion of the Owner's audit and reconciliation, upon Substantial Completion.)*

N/A

**§ 12.1.9** If ~~final completion~~ Final Completion of the Work is materially delayed through no fault of the Contractor, the Owner shall pay the Contractor any additional amounts in accordance with Article 9 of AIA Document A201–2017.

**§ 12.1.10** Except with the Owner's prior written approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and suitably stored at the site.



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(1685406634)

13

§ 12.1.11 ~~The Owner and the Contractor shall agree upon a mutually acceptable procedure for review and approval of payments to Subcontractors, and the percentage of retainage held on Subcontracts, and the Contractor shall execute subcontracts in accordance with these agreements.~~ All payments for the Contractor's Fee and Subcontractor work shall be subject to a retainage of ten percent (10%).

§ 12.1.12 In taking action on the Contractor's Applications for Payment the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor, and such action shall not be deemed to be a representation that (1) the Architect has made a detailed examination, audit, or arithmetic verification, of the documentation submitted in accordance with Section 12.1.4 or other supporting data; (2) that the Architect has made exhaustive or continuous on-site inspections; or (3) that the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits, and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

§ 12.2 Final Payment
§ 12.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

    .1   ~~the Contractor has fully performed the Contract, except for the Contractor's responsibility to correct Work as provided in Article 12 of AIA Document A201–2017, and to satisfy other requirements, if any, which extend beyond final payment;~~

    .2   ~~the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment; and~~

    .3   ~~a final Certificate for Payment has been issued by the Architect in accordance with Section 12.2.2.~~ (1) the Contractor has achieved Final Completion; (2) final building inspections have been completed and a certificate of occupancy or completion has been issued by the appropriate governmental agency or agencies having jurisdiction; (3) a final Certificate for Payment, if any, has been issued by the Architect; (4) Contractor provides Owner an executed copy of AIA Document G706A Affidavit of Release of Liens; (5) Contractor has provided Owner a list of all of Contractor's Subcontractors and material suppliers as of the date of Substantial Completion who have any contracts with Contractor to furnish any materials, provide labor, or perform any services for improvement of the Property; (6) all Subcontractors and material suppliers who have been listed by Contractor as set forth in Subsection (5) herein, and have not already supplied final releases of lien, have either a) responded to a request for Sworn Statement of Account, or b) have failed to timely provide a Sworn Statement of Account; and (7) upon the foregoing requirements having been substantially satisfied, Owner shall disburse Contractor's final payment directly to Contractor within fifteen (15) calendar days following receipt of statutory releases of liens and claims from Contractor, Subcontractors and material suppliers and any other lienors giving timely notice, in addition to Contractor's executed AIA Document G706 Affidavit of Payment of Debts and Claims. However, in the event a dispute exists between Contractor and a particular Subcontractor, Sub-subcontractor or material supplier wherein a statutory release is not obtained, then a final payment shall be made by Owner to Contractor when the following additional requirements are satisfied: (i) Contractor supplies a bond removing any claim of lien recorded against the property on which the Project is located to security; and if necessary, (ii) within ten (10) days after receipt of written notification and demand from Owner (said notification shall identify the claimant and shall include all documentation provided to Owner by the claimant), Contractor shall issue a letter and agree to defend and hold Owner harmless from any claims made by the claimant, and shall provide a transfer bond if any lien is recorded after final payment is made. In the event Contractor fails to issue a letter to defend and hold owner harmless, or if Contractor fails to bond off any liens of its Subcontractors, Sub-subcontractors and material suppliers, then Contractor will be in violation of the aforementioned indemnification provisions and Owner shall be provided its reasonable attorneys' fees and costs in enforcing the provisions contained herein.

§ 12.2.2 Within ~~30~~ thirty (30) days of the Owner's receipt of the Contractor's final accounting for the Cost of the Work, the Owner shall conduct an audit of the Cost of the Work or notify the ~~Architect~~ Contractor that it will not conduct an audit.

§ 12.2.2.1 If the Owner conducts an audit of the Cost of the Work, the Owner shall, within ~~10~~ ten (10) days after completion of the audit, ~~submit~~ prepare a written report based upon the auditors' ~~findings to the Architect.~~ findings.

§ 12.2.2.2 Within seven (7) days after ~~receipt~~ preparation of the written report described in Section 12.2.2.1, or Contractor's receipt of notice that the Owner will not conduct an audit, and provided that the other conditions of


AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.3114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:    (1685408634)

Section 12.2.1 have been met, the ~~Architect~~ Owner will either issue ~~to the Owner~~ a final Certificate for Payment with a copy to the Contractor, or notify the Contractor ~~and Owner~~ in writing of the ~~Architect's~~ Owner's reasons for withholding a certificate as provided in Article 9 of AIA Document A201–2017. The time periods stated in this Section 12.2.2 supersede those stated in Article 9 of AIA Document A201–2017. ~~The~~ Neither the Owner nor the Architect is not responsible for verifying the accuracy of the Contractor's final accounting.

**§ 12.2.2.3** If the Owner's auditors' report concludes that the Cost of the Work, as substantiated by the Contractor's final accounting, is less than claimed by the Contractor, the Contractor shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Article 15 of AIA Document A201–2017. A request for mediation shall be made by the Contractor within ~~30~~ thirty (30) days after the Contractor's receipt of a copy of the ~~Architect's~~ final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Contractor. Pending a final resolution of the disputed amount, the Owner shall pay the Contractor the amount certified in the ~~Architect's~~ final Certificate for Payment,

**§ 12.2.3** The Owner's final payment to the Contractor shall be made no later than ~~30~~ thirty (30) days after the issuance of the ~~Architect's~~ final Certificate for Payment, or as follows:

Except as set forth above.

**§ 12.2.4** If, subsequent to final payment, and at the Owner's request, the Contractor incurs costs, described in Article 7 and not excluded by Article 8, to correct defective or nonconforming Work, the Owner shall reimburse the Contractor for such costs, and the Contractor's Fee applicable thereto, on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If adjustments to the Contract Sum are provided for in Section 5.1.7, the amount of those adjustments shall be recalculated, taking into account any reimbursements made pursuant to this Section 12.2.4 in determining the net amount to be paid by the Owner to the Contractor.

**§ 12.3 Interest**
Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

~~%~~ Six percent (6%) per annum. Contractor is not required to provide Owner notice of interest on late payments as may be required under Arkansas law rather, payments due and unpaid under the Agreement shall bear interest from the date payment is due.

**§ 12.4 Mobilization Deposit Credit**
On each Application for Payment, as a result of the Mobilization Deposit set forth in Section 4.1 of this Agreement, Contractor will set forth a credit to the amount due in the amount of fifteen percent (15%) of the progress payment due. In the event that this Agreement is terminated for any reason, any amount of the Mobilization Deposit not used by Contractor to pay for the Costs of Work set forth in this Agreement shall be returned to Owner immediately by Contractor.

**ARTICLE 13    DISPUTE RESOLUTION**
**§ 13.1** ~~Initial Decision Maker~~
~~The Architect will serve as Initial Decision Maker pursuant to Article 15 of AIA Document A201–2017, unless the parties appoint below another individual, not a party to the Agreement, to serve as Initial Decision Maker.~~
~~(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)~~

[INTENTIONALLY OMITTED]



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                          (1885408634)

**§ 13.2 Binding Dispute Resolution**
For any Claim subject to, but not resolved by mediation pursuant to Article 15 of AIA Document A201–2017, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box.)*

[ ]    Arbitration pursuant to Section 15 of AIA Document A201–2017

[ ]    ~~Litigation in a~~ X  ]    Litigation in The United States District Court for the Eastern District of Arkansas; however, if jurisdictional requirements for the latter cannot be met for the Claim(s) at issue, then any other Arkansas court of competent jurisdiction

[ ]    Other *(Specify)*

If the Owner and Contractor do not select a method of binding dispute resolution, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.

**ARTICLE 14   TERMINATION OR SUSPENSION**
**§ 14.1 Termination**
**§ 14.1.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201–2017. In the event that this Agreement is terminated for any reason, any amount of the Mobilization Deposit not used by Contractor to pay for the Costs of the Work set forth in this Agreement shall be returned to Owner immediately.

**§ 14.1.2 Termination by the Owner for Cause**
**§ 14.1.2.1** If the Owner terminates the Contract for cause as provided in Article 14 of AIA Document A201–2017, the amount, if any, to be paid to the Contractor under Article 14 of AIA Document A201–2017 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

.1    Take the Cost of the Work incurred by the Contractor to the date of termination;

.2    Add the Contractor's Fee, computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion;

.3    Subtract the aggregate of previous payments made by the Owner; and

.4    Subtract the costs and damages incurred, or to be incurred, by the Owner under Article 14 of AIA Document A201–2017.

**§ 14.1.2.2** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 14.1.2.1.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**§ 14.1.3 Termination by the Owner for Convenience**
If the Owner terminates the Contract for convenience in accordance with Article 14 of AIA Document A201–2017, then the Owner shall pay the Contractor a termination fee as follows:
*(Insert the amount of or method for determining the fee, if any, payable to the Contractor following a termination for the Owner's convenience.)*

None. See AIA Document A201–2017 (as agreed to and modified by Owner and Contractor) for terms and conditions regarding Termination by the Owner for Convenience.

 Init.

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                      (1685408634)

16

**§ 14.2 Suspension**
The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2017; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Article 14 of AIA Document A201–2017, except that the term "profit" shall be understood to mean the Contractor's Fee as described in Article 5 and Section 6.4 of this Agreement.

**ARTICLE 15     MISCELLANEOUS PROVISIONS**
**§ 15.1** Where reference is made in this Agreement to a provision of AIA Document A201–2017 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 15.2 The Owner's representative:**
*(Name, address, email address and other information)*

Tim Williams
P.O. Box 1651
Rancho Santa Fe, CA 92067
Telephone:  858-756-5754
E-mail: tim@forgepartners.com

**§ 15.3 The Contractor's representative:**
*(Name, address, email address and other information)*

Jeffrey Verchow
850 SE 7th Street
Deerfield Beach, FL 33441
Telephone: 954-570-0300
E-mail: jv@adivoconstruction.com

**§ 15.4** Neither the Owner's nor the Contractor's representative shall be changed without ten (10) days' prior notice to the other party.

**§ 15.5 Insurance and Bonds**
**§ 15.5.1** The Owner and the Contractor shall purchase and maintain insurance as set forth in AIA Document A102™–2017, Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, A102™–2017 Exhibit A, Insurance and Bonds, and elsewhere in the Contract Documents.

**§ 15.5.2** The Contractor shall provide bonds as set forth in AIA Document A102™-2017 Exhibit A, and elsewhere in the Contract Documents. Contractor is not required to provide performance or payment bonds for the Work on the Project.

**§ 15.6** Notice in electronic format, pursuant to Article 1 of AIA Document A201–2017, may be given in accordance with AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, if completed, or as otherwise set forth below:
*(If other than in accordance with AIA Document E203–2013, insert requirements for delivering notice in electronic format such as name, title, and email address of the recipient and whether and how the system will be required to generate a read receipt for the transmission.)*

**§ 15.7 Other provisions:**

**§ 15.7.1** The Guaranteed Maximum Price as described in Section 5.2 includes the Costs to be reimbursed as described in Article 7 and Contractor's Fee as described in Section 5.1. This price is to perform the Work and is guaranteed by the Contractor. There is only one Guaranteed Maximum Price provided by Contractor.



Init.

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                      (1685408634)

17

**§ 15.7.2** The Contract Time includes an allotment of days sufficient to account for delays caused by abnormal or unanticipated weather conditions that would otherwise adversely impact the Contractor's performance of the Work of the Project in accordance with the Completion Deadline established herein in Section 4.3.1. As a result, neither the Contract Time nor the Completion Deadline shall be extended as result of or due to any Claim alleging bad or abnormal weather conditions affecting the Project or the Contractor's ability to perform the Work. Similarly, the Contract Sum shall not be increased, and Contractor shall not be entitled to additional funds or compensation of any kind, as a result of, arising from, or allegedly caused by adverse weather impacts or delays affecting the Contractor's schedule or the performance of the Work itself.

**§ 15.7.3** Contractor shall hold progress meetings at the Project as may be requested from time to time upon reasonable notice by representatives of Owner. The Architect will be available by telephone during the progress meetings and will meet at the Project approximately once a month during the construction. If requested by Owner accurate minutes of each meeting will be taken by Contractor and distributed by Contractor to Owner, and Architect.

**§ 15.7.4 [INTENTIONALLY OMITTED]**

**§ 15.7.5** Notwithstanding anything in this Agreement or the Contract Documents to the contrary, if Contractor is delayed at any time in the commencement or progress of the Work by any of the following, Contractor shall be entitled to an equitable extension of the date of the Contract Time and the Completion Deadline: (a) changes in the Work or the sequencing of the Work ordered by Owner, or arising from decisions of Owner that impact the time of performance of the Work; (b) encountering Hazardous Materials, or concealed or unknown conditions; provided, the Hazardous Materials were not brought to the Project by Contractor or its Subcontractors; (c) delays authorized by Owner pending dispute resolution or suspension by Owner under this Agreement; (d) labor disputes not involving Contractor; (e) fire; and (f) adverse governmental actions (collectively, "Permitted Delays").

## ARTICLE 16    ENUMERATION OF CONTRACT DOCUMENTS

**§ 16.1** This Agreement is comprised of the following documents:

.1      AIA Document A102™–2017, Standard Form of Agreement Between Owner and ~~Contractor~~ Contractor, as modified herein

.2      AIA Document A102™–2017, Exhibit A, Insurance and Bonds

.3      AIA Document A201™–2017, General Conditions of the Contract for ~~Construction~~Construction, as modified by the Parties

.4      AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, dated as indicated below:

*(Insert the date of the E203-2013 incorporated into this Agreement.)*

.5      Drawings

| Number | Title | Date |
|--------|-------|------|

.6      Specifications

| Section | Title | Date | Pages |
|---------|-------|------|-------|

.7      Addenda, if any:

| Number | Date | Pages |
|--------|------|-------|

Portions of Addenda relating to bidding or proposal requirements are not part of the Contract Documents unless the bidding or proposal requirements are also enumerated in this Article 16.



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:20:02 ET on 02/01/2022 under Order No.2114263159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                          (1685408634)

.8    Other Exhibits:
      *(Check all boxes that apply.)*

      [  ]    AIA Document E204™–2017, Sustainable Projects Exhibit, dated as indicated below:
              *(Insert the date of the E204-2017 incorporated into this Agreement.)*

      [  ]    The Sustainability Plan:

      | Title | Date | Pages |
      |-------|------|-------|

      [  ]    Supplementary and other Conditions of the Contract:

      | Document | Title | Date | Pages |
      |----------|-------|------|-------|

.9    Other documents, if any, listed below:
      *(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2017 provides that the advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or proposal, portions of Addenda relating to bidding or proposal requirements, and other information furnished by the Owner in anticipation of receiving bids or proposals, are not part of the Contract Documents unless enumerated in this Agreement. Any such documents should be listed here only if intended to be part of the Contract Documents.)*

      Exhibit B    Contractor's Schedule of Values (01.13.22)
      Exhibit C    Notice of Commencement
      Exhibit D    Lien Waivers/Releases (D.1 and D.2)
      Exhibit E    Contractor's AIA G706/G706A (Affidavits of Release of Liens and of Payment of Debts and Claims)
      Exhibit F    Contractor's Scope of Work (01.13.22)

**§ 16.2** Contractor may be required to secure payment and performance bonding for the Project with a bonding company approved in writing by Owner. The cost of the payment and performance bonding shall be approved in writing by Owner and shall be paid by Owner. The requirements for Insurance are set forth elsewhere in the Contract Documents.

**ARTICLE 17    CONSTRUCTION OF PROJECT**

**§ 17.1** Prior to commencement of construction of any portion of the Project, Contractor shall deliver:

**§ 17.1.1** To Owner, copies of the building permits and such other licenses, permits and approvals as may be necessary to construct the Project.

**§ 17.2** Upon Substantial Completion of construction of the Project, Contractor shall provide to Owner:

**§ 17.2.1** The Contractor's certification that, to the best of Contractor's knowledge, information, and belief, (i) Contractor's Work on the Project has been built in substantial conformity with Drawings and Specifications therefor, and (ii) any known deviations from the Drawings and Specifications have been identified by the Contractor and stated on or attached to the aforesaid certification.

**§ 17.2.2** A detailed and itemized schedule of expenditures with respect to the Project.

**§ 17.2.3** A Bill of Sale and assignment of any warranties covering any and all personal property installed on the Project as part of Contractor's Work.

**§ 17.2.4** An Assignment of Warranties relating to Contractor's Work in a form reasonably acceptable to Owner.



Init.

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114263159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                              (1885408634)

**19**

**§ 17.2.5** Such Documentation as may be reasonably necessary to enable Owner to obtain a date of the title insurance commitment showing no mechanic's liens have been filed with respect to the Project. In addition, Contractor shall take such other action as may be reasonably required by the title company to ensure deletion of the mechanic's lien exception. Title insurance shall be paid by Owner.

**§ 17.2.6** As-built Drawings and Specifications for the Project.

**§ 17.2.7** Final Contractor's Affidavits of Payment and Releases of Lien (Exhibit E).

**§ 17.3** Promptly after the applicable governmental agency issuance of a final certificate of occupancy with respect to the entire Project, Owner and Contractor or their authorized representatives shall conduct a joint walk-through inspection of the substantially completed Project. Within three (3) business days after the completion of the walk-through inspection, Owner shall prepare and submit to Contractor a written punch list (Punch List) of all items that Owner contends are incomplete, defective or do not comply with the final Drawings and Specifications.

**§ 17.4** If Contractor does not agree with any of the items listed on the Punch List, Contractor shall within ten (10) business days after receipt of the Punch List furnish to Owner a written statement indicating which items on the Punch List Contractor disputes and setting forth Contractor's reasons for disputing such items. As to any such items, the parties shall promptly meet in an attempt to resolve such dispute. Contractor shall, at Contractor's sole expense, undertake to expeditiously and diligently correct or complete any items on the Punch List which are not disputed by Contractor, and shall deliver a letter to Owner to that effect. If Owner contends that incomplete, defective or non-complying items set forth in the Punch List have not been corrected or completed, Owner may withhold from amounts payable to Contractor an amount equal to one hundred and fifty percent (150%) of the amount which Owner and Architect estimate is the cost to repair or complete such items. However, any such amounts withheld will be subject to the provisions of applicable law.

**ARTICLE 18    REPRESENTATIONS, WARRANTIES AND COVENANTS**
**§ 18.1** As of the effective date of this agreement and as of the Project Completion Deadline, Contractor represents and warrants to Owner and covenants with Owner and acknowledges that Owner is relying upon such representations, warranties and covenants in pursuing the Project, that:

**§ 18.2** To the best of Contractor's actual knowledge, there is no violation of an applicable federal, state or local land use, zoning, environmental or other governmental law or regulation with respect to the Project or construction thereon other than those that Contractor or its Subcontractors has notified Owner of prior to the Project Completion Deadline.

**§ 18.3** Contractor will substantially complete all work shown on the Schedule of Values set forth in Exhibit B in a good and workmanship manner and in conformity with all applicable governmental requirements or as otherwise specified in the Construction Documents and, if there are any minor variations based on prudent building practices, all such variations are equal to or better than the work shown on such Drawings and Specifications. Contractor further represents and warrants to Owner that all Work performed and materials and equipment used in the construction of the Project have been or will be of good quality, free from material faults and defects except for those inherent in the quality of the Work the Contract Documents require or permit and substantially in conformity with the Drawings and Specifications. Where faults and defects are discovered, or where any portion of the Work is not in conformity with Drawings and Specifications, whether or not material or substantial, Contractor shall nevertheless remedy the same. Contractor hereby warrants the Work to be free from defects in material and workmanship except for those inherent in the quality of the Work the Contract Documents require or permit, and shall assign all manufacturers' warranties to Owner. Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage.

**§ 18.4** Contractor represents and warrants to Owner, that (a) Contractor is duly licensed and/or registered to perform general contracting in the State of Arkansas and any other applicable jurisdictions, (b) Contractor is duly registered with the State of Arkansas as a foreign corporation (if applicable) prior to the execution of this Agreement, (c) Contractor will ensure that Subcontractors in the following trades will be properly licensed by the State of Arkansas under the applicable statutes governing licensing requirements: Electrical, Plumbing, HVAC, Fire Sprinkler, Low Voltage Electrical and Utility; and (d) Contractor is otherwise authorized to carry out the Work in accordance with this



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:20:02 ET on 02/01/2022 under Order No.2114263159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                          (1685408634)

20

## ARTICLE 23    RESOLUTION OF CLAIMS

§ 23.1 Owner and Contractor intend to attempt to resolve all disputes without resorting to legal proceedings. Upon notification of a dispute by Contractor or Owner to the other occurring before Substantial Completion, Contractor and Owner shall meet promptly to attempt to resolve the dispute. If unsuccessful, then prior to the initiation of any action or proceeding under the Contract Documents, Owner and Contractor shall make a good faith effort to resolve the dispute by an early neutral evaluation process, to be conducted as follows. The parties shall select a disinterested third party (Evaluator) with expertise in the designing and construction of similar projects. In all disputes concerning performance claims, the Evaluator will render a non-binding assessment of the dispute, which the parties shall use to structure a framework for settlement, or, at a minimum, to streamline the issues that will ultimately be settled or litigated as set forth below. To facilitate resolution, each party shall prepare a "position paper" setting forth the material basis for their respective position. Each party shall also prepare a short presentation before the Evaluator. Upon completion of the presentation, the Evaluator will identify areas of agreement, forecast liabilities, and establish, if applicable, a range for liability. Nothing disclosed by any party or evaluation made by the Evaluator may be admitted in any subsequent arbitration or litigation. If the dispute is not so settled, the parties shall proceed as otherwise allowed under the Contract. Notwithstanding the above, Owner shall have the right to initiate litigation at any time it deems necessary to avoid potential damages in excess of Fifty Thousand and 00/100 Dollars ($50,000.00) or to remove Contractor from the Project as set forth in Section 14.2 of AIA Document A201 (as modified and agreed to by the Parties). The parties hereby confirm their agreement to this provision by their initials below.

_____    _____

Contractor's Initials                                                    Owner's Initials

## ARTICLE 24    MISCELLANEOUS

§ 24.1 The section titles, headings and captions contained in this Contract are used for convenience and reference only and are not intended to and shall not in any way enlarge, define, limit or extend the rights or obligations of the parties or affect the meaning or construction of this Contract or any provision of this Contract.

§ 24.2 The non-enforcement of any provisions of the Contract Documents by Owner shall in no event be construed as a waiver of such provision or any other provision. Any waiver by Owner of any failure by Contractor to comply with the Contract Documents must be in writing and shall be limited to the specific matter waived and shall not be construed as a waiver of continued or future failures or defaults.

§ 24.3 If any term or provision of the Contract Documents shall be held to any extent to be invalid or unenforceable, the remaining terms and provisions of the Contract Documents shall nevertheless be valid and shall be enforced to the fullest extent permitted by law.

§ 24.4 The terms of this Contract are intended by the parties to be a final expression of their understanding with respect to such terms as are included in this Contract and may not be contradicted by evidence of any prior or contemporaneous statements, representations, agreements or understanding. Additionally, the parties hereby expressly agree that no such statements, representations, agreements or understandings exist. No addition to, deletion from or modification of any term or provision of this Contract shall not be effective unless it is made in a writing signed by the parties hereto.

§ 24.5 If either party commences an action against the other based upon a Claim for any reason as it relates to the Work being performed and the Contract Documents, including any action to enforce any of the terms hereof or because of the breach by either party of any of the terms of the Contract Documents, the losing or defaulting party shall pay to the prevailing party the costs and expenses incurred in connection with the prosecution or defense of such action, including reasonable attorneys' fees and all costs and expenses of pursuing or defending the action.

§ 24.6 Contractor represents and warrants that it is or will be qualified to do business in the state of Arkansas and has or will have all requisite government licenses and authorizations to perform the Work in Arkansas. Contractor agrees to indemnify Owner for any failure to secure and maintain such licenses and authorizations in accordance with Section 3.18 of AIA Document A201.

§ 24.7 All approvals, consents, authorizations, directions and requests (except as otherwise provided to the contrary herein) provided for in the Contract to be given by Contractor or Owner must be in writing.



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                            (1885408634)

Agreement, the Contract Documents and the AIA Document A201–2017 General Conditions.

## ARTICLE 19    DEFECTIVE WORK
§ 19.1 If any Work is found to be defective within the warranty periods provided in the Contract, Contractor shall correct it promptly after receipt of a written notice from Owner to do so. If Contractor does not repair or replace such defective Work within a reasonable time after Contractor's receipt of such notice, Owner may but shall not be obligated to repair or replace such defective Work after Contractor's refusal to repair or replace such defective Work within a reasonable time. If Owner does repair or replace such defective Work, Contractor will be liable for all costs incurred by Owner to repair or replace such defective Work.

## ARTICLE 20    NOTICES
§ 20.1 All notices, requests, demands and other communications under this offer shall be in writing and shall be deemed to have been given on the date of service if served personally on the party to whom notice is to be given, by overnight courier on the day delivered, via electronic mail delivery, or on the second day after mailing if mailed to the party to whom notice is to be given, by first class mail, postage prepaid and properly addressed as set forth in this Agreement. Any party may change its address for purposes of this Section by giving the other parties written notice of the new address in the manner set forth above.

## ARTICLE 21    ASSIGNMENT
§ 21.1 Contractor shall not assign any interest under the Contract or any payments due or to become due Contractor without first obtaining each instance the prior written consent of Owner. No assignment, whether voluntary or involuntary, by operation of law, under legal process or proceedings, by receivership, in bankruptcy or otherwise, shall be valid or effective without such prior written consent of Owner. Should Contractor attempt to make or suffer to be made any such assignment, except as stated above, Owner may, at its option, terminate the agreements contained within the Contract Documents upon written notice to Contractor. Should Owner consent to any such assignment, such consent shall not constitute a waiver of any of the restrictions of this Section. Owner may assign its interest in the Contract Documents at any time, and upon such assignment, Owner shall automatically be released from its obligations under the Contract Documents, except for any obligations or liabilities accruing or arising prior to the date of assignment. Notwithstanding the above, Contractor shall enter into any assignment reasonably required by Owner's lender.

## ARTICLE 22    INSURANCE
§ 22.1 In addition to the insurance requirements set forth elsewhere in this Contract, in no event shall Contractor commence Work without having provided proper insurance certificates to Owner. Contractor shall procure and maintain in force for the duration of the Work, at its sole cost and expense, Comprehensive General Liability Insurance in the minimum amount of Two Million and 00/100 Dollars ($2,000,000.00) combined single limit, providing coverage for bodily injury, property damage, and such insurance shall include: (1) premises/operations; (2) independent contractors; (3) products/completed operations; (4) contractual liability, including protection for Contractor from claims arising out of liability in connection with this Contract; (5) personal injury liability; and (6) explosion, collapse and underground hazards, as applicable; Automobile Liability (owned, non-owned and hired) combined single limit, bodily injury and property damage of One Million and 00/100 Dollars ($1,000,000.00) each occurrence and aggregate; Worker's Compensation Insurance and Employer's Liability Insurance in amounts as required by law; and (7) Excess Liability Insurance of Twenty Million and 00/100 Dollars ($20,000,000.00). Such insurance policies shall name Owner as additional insured by endorsement. Each certificate of insurance shall state that no coverage will be cancelled or reduced in coverage until after thirty (30) days' written notice has been given to Owner. All policies shall be occurrence based policies. Deductibles on any insurance shall not exceed Twenty-Five Thousand and 00/100 Dollars ($25,000.00). Subcontractors' insurance requirements shall be the same as the Contractor's except the Comprehensive General Liability Insurance shall be in the minimum amount of One Million and 00/100 Dollars ($1,000,000.00) and Automobile Liability of One Million and 00/100 Dollars ($1,000,000.00). No Subcontractor shall be allowed on site without first providing evidence of required insurance. Owner shall have the right to withhold payment to Subcontractors who have not complied with this requirement. Contractor may reduce a particular Subcontractor's insurance limits if the Subcontractor's total contract amount is less than One Hundred Thousand and 00/100 Dollars ($100,000.00) and the Owner provides prior approval of the limit reduction in writing. Notwithstanding the above, the various insurance coverages and minimum limits provided therefor in this Section 22 are intended to serve as minimum requirements, and in the event of any inconsistency between Exhibit A and the specific information contained in this Section 22, Exhibit A and the specific requirements stated therein shall control.



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                         (1885408634)

21

§ 24.8 The Owner shall provide the Contractor and their agents with onsite housing for the duration of the performance of the Work at the Project as reasonably agreed by the parties.

§ 24.9 The Owner is responsible for the removal and proper disposal of all old appliances in the units.

This Agreement entered into as of the day and year first written above.

OWNER:                                      CONTRACTOR:
HARBOR GRAND HOLDING COMPANY,                ADIVO CONSTRUCTION CORP., a Florida
LLC, a Delaware limited liability company    corporation

By: Harbor Grand Equity Fund, LLC, a
    California limited liability company
Its: Sole Member

    By: Forge Partners II, LLC a California
        limited liability company
    Its: Managing Member

By: _____               By: _____
OWNER (Signature)                          CONTRACTOR (Signature)

Tim Williams, Chief Financial Officer of Managing    Jeffrey Verchow
Member                                     President
(Printed name and title)                   (Printed name and title)



OWNER (Signature)                          CONTRACTOR (Signature)


(Printed name and title)                   (Printed name and title)

OWNER:
TIMBERS HOLDING COMPANY, LLC, a
Delaware limited liability company

By: The Timbers Equity Fund, LLC, a
    California limited liability company
Its: Sole Member

    By: Forge Partners II, LLC a California
        limited liability company
    Its: Managing Member

By: _____
OWNER (Signature)

Tim Williams, Chief Financial Officer of Managing
Member
(Printed name and title)

Init.



AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                          (1685406634)

23

# Certification of Document's Authenticity
## AIA® Document D401™ – 2003

I,  , hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with this certification at 18:20:02 ET on 02/01/2022 under Order No. 2114283159 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A102™ – 2017, Standard Form of Agreement Between Owner and Contractor  where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, as published by the AIA in its software, other than changes shown in the attached final document by underscoring added text and striking over deleted text.

_____
(Signed)

Attorney for Owner
_____
(Title)

2/4/22
_____
(Dated)

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:20:02 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                              (1885408634)

1



# ▲AIA˚ Document A102™ – 2017 Exhibit A

## *Insurance and Bonds*

This Insurance and Bonds Exhibit is part of the Agreement, between the Owner and the
Contractor, dated the 31ˢᵗ day of January in the year 2022
*(In words, indicate day, month and year.)*

for the following PROJECT:
*(Name and location or address)*

<u>Chenal Lakes Apartments</u>
<u>13500 Chenal Parkway</u>
<u>Little Rock, AR 72211</u>

<u>and</u>

<u>Brightwaters Apartments</u>
<u>2420 Riverfront Drive</u>
<u>Little Rock, AR 72202</u>

**THE OWNER:**
*(Name, legal status and address)*

<u>Harbor Grand Holding Company, LLC, a Delaware limited liability company</u>
<u>and</u>
<u>Timbers Holding Company, LLC, a Delaware limited liability company</u>
<u>6118 Paseo Delicias, #1651</u>
<u>Rancho Santa Fe, CA 92067</u>
<u>Telephone Number: 858-756-5565</u>
<u>Fax Number: 858-756-5855</u>
<u>E-mail:</u> ▮▮▮▮▮▮▮

**THE CONTRACTOR:**
*(Name, legal status and address)*

<u>ADIVO Construction Corp., a Florida corporation</u>
<u>850 SE 7ᵗʰ Street</u>
<u>Deerfield Beach, FL 33441</u>
<u>Telephone Number: 954-570-0300</u>
<u>E-mail: jv@adivoconstruction.com</u>

**TABLE OF ARTICLES**

A.1    GENERAL

A.2    OWNER'S INSURANCE

A.3    CONTRACTOR'S INSURANCE AND BONDS

A.4    SPECIAL TERMS AND CONDITIONS

This document has important
legal consequences. Consultation
with an attorney
is encouraged with respect to
its completion or modification.

This document is intended to be
used in conjunction with AIA
Document A201™–2017,
General Conditions of the
Contract for Construction. Article
11 of A201™–2017 contains
additional insurance provisions.

AIA Document A102™ – 2017 Exhibit A. Copyright © 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA,"
the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at
18:23:29 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in
accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                                (1332101466)

Init.



1

**ARTICLE A.1    GENERAL**
The Owner and Contractor shall purchase and maintain insurance, and provide bonds, as set forth in this Exhibit. As used in this Exhibit, the term General Conditions refers to AIA Document A201™–2017, General Conditions of the Contract for Construction.

**ARTICLE A.2    OWNER'S INSURANCE**
**§ A.2.1 General**
Prior to commencement of the Work, the Owner shall secure the insurance, and provide evidence of the coverage, required under this Article A.2 and, upon the Contractor's request, provide a copy of the property insurance policy or policies required by Section A.2.3. The copy of the policy or policies provided shall contain all applicable conditions, definitions, exclusions, and endorsements.

**§ A.2.2 Liability Insurance**
The Owner shall be responsible for purchasing and maintaining the Owner's usual general liability insurance.

**§ A.2.3 Required Property Insurance**
**§ A.2.3.1** Unless this obligation is placed on the Contractor pursuant to Section A.3.3.2.1, the Owner shall purchase and maintain, from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located, property insurance written on a builder's risk "all-risks" completed value or equivalent policy form and sufficient to cover the total value of the entire Project on a replacement cost basis. The Owner's property insurance coverage shall be no less than the amount of the initial Contract Sum, plus the value of subsequent Modifications and labor performed and materials or equipment supplied by others. The property insurance shall be maintained until Substantial Completion and thereafter as provided in Section A.2.3.1.3, unless otherwise provided in the Contract Documents or otherwise agreed in writing by the parties to this Agreement. This insurance shall include the interests of the Owner, Contractor, Subcontractors, and Sub-subcontractors in the Project as insureds. This insurance shall include the interests of mortgagees as loss payees.

**§ A.2.3.1.1 Causes of Loss.** The insurance required by this Section A.2.3.1 shall provide coverage for direct physical loss or damage, and shall not exclude the risks of fire, explosion, theft, vandalism, malicious mischief, collapse, earthquake, flood, or windstorm. The insurance shall also provide coverage for ensuing loss or resulting damage from error, omission, or deficiency in construction methods, design, specifications, workmanship, or materials. Sub-limits, if any, are as follows:
*(Indicate below the cause of loss and any applicable sub-limit.)*

|  Causes of Loss  |  Sub-Limit  |
|---|---|

**§ A.2.3.1.2 Specific Required Coverages.** The insurance required by this Section A.2.3.1 shall provide coverage for loss or damage to falsework and other temporary structures, and to building systems from testing and startup. The insurance shall also cover debris removal, including demolition occasioned by enforcement of any applicable legal requirements, and reasonable compensation for the Architect's and Contractor's services and expenses required as a result of such insured loss, including claim preparation expenses. Sub-limits, if any, are as follows:
*(Indicate below type of coverage and any applicable sub-limit for specific required coverages.)*

|  Coverage  |  Sub-Limit  |
|---|---|

**§ A.2.3.1.3** Unless the parties agree otherwise, upon Substantial Completion, the Owner shall continue the insurance required by Section A.2.3.1 or, if necessary, replace the insurance policy required under Section A.2.3.1 with property insurance written for the total value of the Project that shall remain in effect until expiration of the period for correction of the Work set forth in Section 12.2.2 of the General Conditions.

**§ A.2.3.1.4 Deductibles and Self-Insured Retentions.** If the insurance required by this Section A.2.3 is subject to deductibles or self-insured retentions, the Owner shall be responsible for all loss not covered because of such deductibles or retentions.



AIA Document A102™ – 2017 Exhibit A. Copyright © 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:23:29 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                                                (1332101466)

2

**§ A.2.3.2 Occupancy or Use Prior to Substantial Completion.** The Owner's occupancy or use of any completed or partially completed portion of the Work prior to Substantial Completion shall not commence until the insurance company or companies providing the insurance under Section A.2.3.1 have consented in writing to the continuance of coverage. The Owner and the Contractor shall take no action with respect to partial occupancy or use that would cause cancellation, lapse, or reduction of insurance, unless they agree otherwise in writing.

**§ A.2.3.3 Insurance for Existing Structures**
If the Work involves remodeling an existing structure or constructing an addition to an existing structure, the Owner shall purchase and maintain, until the expiration of the period for correction of Work as set forth in Section 12.2.2 of the General Conditions, "all-risks" property insurance, on a replacement cost basis, protecting the existing structure against direct physical loss or damage from the causes of loss identified in Section A.2.3.1, notwithstanding the undertaking of the Work. The Owner shall be responsible for all co-insurance penalties.

**§ A.2.4 Optional Extended Property Insurance.**
The Owner shall purchase and maintain the insurance selected and described below.
*(Select the types of insurance the Owner is required to purchase and maintain by placing an X in the box(es) next to the description(s) of selected insurance. For each type of insurance selected, indicate applicable limits of coverage or other conditions in the fill point below the selected item.)*

[ ]    **§ A.2.4.1 Loss of Use, Business Interruption, and Delay in Completion Insurance,** to reimburse the Owner for loss of use of the Owner's property, or the inability to conduct normal operations due to a covered cause of loss.

[ ]    **§ A.2.4.2 Ordinance or Law Insurance,** for the reasonable and necessary costs to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of the Project.

[ ]    **§ A.2.4.3 Expediting Cost Insurance,** for the reasonable and necessary costs for the temporary repair of damage to insured property, and to expedite the permanent repair or replacement of the damaged property.

[ ]    **§ A.2.4.4 Extra Expense Insurance,** to provide reimbursement of the reasonable and necessary excess costs incurred during the period of restoration or repair of the damaged property that are over and above the total costs that would normally have been incurred during the same period of time had no loss or damage occurred.

[ ]    **§ A.2.4.5 Civil Authority Insurance,** for losses or costs arising from an order of a civil authority prohibiting access to the Project, provided such order is the direct result of physical damage covered under the required property insurance.

[ ]    **§ A.2.4.6 Ingress/Egress Insurance,** for loss due to the necessary interruption of the insured's business due to physical prevention of ingress to, or egress from, the Project as a direct result of physical damage.


AIA Document A102™ – 2017 Exhibit A. Copyright © 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:23:29 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1332101466)

[  ]    § A.2.4.7 Soft Costs Insurance, to reimburse the Owner for costs due to the delay of completion of the Work, arising out of physical loss or damage covered by the required property insurance: including construction loan fees; leasing and marketing expenses; additional fees, including those of architects, engineers, consultants, attorneys and accountants, needed for the completion of the construction, repairs, or reconstruction; and carrying costs such as property taxes, building permits, additional interest on loans, realty taxes, and insurance premiums over and above normal expenses.

§ A.2.5 Other Optional Insurance.
The Owner shall purchase and maintain the insurance selected below.
*(Select the types of insurance the Owner is required to purchase and maintain by placing an X in the box(es) next to the description(s) of selected insurance.)*

[  ]    § A.2.5.1 Cyber Security Insurance for loss to the Owner due to data security and privacy breach, including costs of investigating a potential or actual breach of confidential or private information.
        *(Indicate applicable limits of coverage or other conditions in the fill point below.)*

[  ]    § A.2.5.2 Other Insurance
        *(List below any other insurance coverage to be provided by the Owner and any applicable limits.)*

Coverage                                   Limits

ARTICLE A.3    CONTRACTOR'S INSURANCE AND BONDS
§ A.3.1 General
§ A.3.1.1 Certificates of Insurance. The Contractor shall provide certificates of insurance acceptable to the Owner evidencing compliance with the requirements in this Article A.3 at the following times: (1) prior to commencement of the Work; (2) upon renewal or replacement of each required policy of insurance; and (3) upon the Owner's written request. An additional certificate evidencing continuation of commercial liability coverage, including coverage for completed operations, shall be submitted with the final Application for Payment and thereafter upon renewal or replacement of such coverage until the expiration of the periods required by Section A.3.2.1 and Section A.3.3.1. The certificates will show the Owner as an additional insured on the Contractor's Commercial General Liability and excess or umbrella liability policy or policies.

§ A.3.1.2 Deductibles and Self-Insured Retentions. The Contractor shall disclose to the Owner any deductible or self-insured retentions applicable to any insurance required to be provided by the Contractor.

§ A.3.1.3 Additional Insured Obligations. To the fullest extent permitted by law, the Contractor shall cause the commercial general liability coverage to include (1) the Owner, the Architect, and the Architect's consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions for which loss occurs during completed operations. The additional insured coverage shall be primary and non-contributory to any of the Owner's general liability insurance policies and shall apply to both ongoing and completed operations. To the extent commercially available, the additional insured coverage shall be no less than that provided by Insurance Services Office, Inc. (ISO) forms CG 20 10 07 04, CG 20 37 07 04, and, with respect to the Architect and the Architect's consultants, CG 20 32 07 04.

§ A.3.2 Contractor's Required Insurance Coverage
§ A.3.2.1 The Contractor shall purchase and maintain the following types and limits of insurance from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located. The Contractor shall maintain the required insurance until the expiration of the period for correction of Work as set forth in Section 12.2.2 of the General Conditions, unless a different duration is stated below:



Init.

AIA Document A102™ – 2017 Exhibit A. Copyright © 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:23:29 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                (1332101486)

4

*(If the Contractor is required to maintain insurance for a duration other than the expiration of the period for correction of Work, state the duration.)*

**§ A.3.2.2 Commercial General Liability**
**§ A.3.2.2.1** Commercial General Liability insurance for the Project written on an occurrence form with policy limits of not less than (~~$    ) each occurrence, ($    ) general aggregate, and    ($    )~~ Two Million Dollars and No/100 ($2,000,000.00) each occurrence, Two Million Dollars and No/100 ($2,000,000.00) general aggregate, and One Million Dollars and No/100 ($1,000,000.00) aggregate for products-completed operations hazard, providing coverage for claims including

.1    damages because of bodily injury, sickness or disease, including occupational sickness or disease, and death of any person;

.2    personal injury and advertising injury;

.3    damages because of physical damage to or destruction of tangible property, including the loss of use of such property;

.4    bodily injury or property damage arising out of completed operations; and

.5    the Contractor's indemnity obligations under Section 3.18 of the General Conditions.

**§ A.3.2.2.2** The Contractor's Commercial General Liability policy under this Section A.3.2.2 shall not contain an exclusion or restriction of coverage for the following:

.1    Claims by one insured against another insured, if the exclusion or restriction is based solely on the fact that the claimant is an insured, and there would otherwise be coverage for the claim.

.2    Claims for property damage to the Contractor's Work arising out of the products-completed operations hazard where the damaged Work or the Work out of which the damage arises was performed by a Subcontractor.

.3    Claims for bodily injury other than to employees of the insured.

.4    Claims for indemnity under Section 3.18 of the General Conditions arising out of injury to employees of the insured.

.5    Claims or loss excluded under a prior work endorsement or other similar exclusionary language.

.6    Claims or loss due to physical damage under a prior injury endorsement or similar exclusionary language.

.7    Claims related to residential, multi-family, or other habitational projects, if the Work is to be performed on such a project.

.8    Claims related to roofing, if the Work involves roofing.

.9    Claims related to exterior insulation finish systems (EIFS), synthetic stucco or similar exterior coatings or surfaces, if the Work involves such coatings or surfaces.

.10    Claims related to earth subsidence or movement, where the Work involves such hazards.

.11    Claims related to explosion, collapse and underground hazards, where the Work involves such hazards.

**§ A.3.2.3** Automobile Liability covering vehicles owned, and non-owned vehicles used, by the Contractor, with policy limits of not less than (~~$    )~~ One Million Dollars and No/100 ($1,000,000.00) per accident, for bodily injury, death of any person, and property damage arising out of the ownership, maintenance and use of those motor vehicles along with any other statutorily required automobile coverage.

**§ A.3.2.4** The Contractor may achieve the required limits and coverage for Commercial General Liability and Automobile Liability through a combination of primary and excess or umbrella liability insurance, provided such primary and excess or umbrella insurance policies result in the same or greater coverage as the coverages required under Section A.3.2.2 and A.3.2.3, and in no event shall any excess or umbrella liability insurance provide narrower coverage than the primary policy. The excess policy shall not require the exhaustion of the underlying limits only through the actual payment by the underlying insurers. Contractor shall obtain and provide excess liability coverage as set forth in Section 22.1 of the Agreement.

**§ A.3.2.5** Workers' Compensation at statutory limits.



AIA Document A102™ – 2017 Exhibit A. Copyright © 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:23:29 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:

5

(1332101466)

**§ A.3.2.6** Employers' Liability with policy limits not less than ($   ) each accident, ($   ) each employee, and ($   ) Two Million Dollars and No/100 ($2,000,000.00) each accident, Two Million Dollars and No/100 ($2,000,000.00) each employee, and Two Million Dollars and No/100 ($2,000,000.00) policy limit.

**§ A.3.2.7** Jones Act, and the Longshore & Harbor Workers' Compensation Act, as required, if the Work involves hazards arising from work on or near navigable waterways, including vessels and docks

**§ A.3.2.8** If the Contractor is required to furnish professional services as part of the Work, the Contractor shall procure Professional Liability insurance covering performance of the professional services, with policy limits of not less than ($   ) per claim and ($   ) One Million Dollars and No/100 ($1,000,000.00) per claim and One Million Dollars and No/100 ($1,000,000.00) in the aggregate.

**§ A.3.2.9** If the Work involves the transport, dissemination, use, or release of pollutants, the Contractor shall procure Pollution Liability insurance, with policy limits of not less than ($   ) per claim and ($   ) in the aggregate.

**§ A.3.2.10** Coverage under Sections A.3.2.8 and A.3.2.9 may be procured through a Combined Professional Liability and Pollution Liability insurance policy, with combined policy limits of not less than ($   ) per claim and ($   ) in the aggregate.

**§ A.3.2.11** Insurance for maritime liability risks associated with the operation of a vessel, if the Work requires such activities, with policy limits of not less than ($   ) per claim and ($   ) in the aggregate.

**§ A.3.2.12** Insurance for the use or operation of manned or unmanned aircraft, if the Work requires such activities, with policy limits of not less than ($   ) per claim and ($   ) in the aggregate.

**§ A.3.3 Contractor's Other Insurance Coverage**
**§ A.3.3.1** Insurance selected and described in this Section A.3.3 shall be purchased from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located. The Contractor shall maintain the required insurance until the expiration of the period for correction of Work as set forth in Section 12.2.2 of the General Conditions, unless a different duration is stated below:
*(If the Contractor is required to maintain any of the types of insurance selected below for a duration other than the expiration of the period for correction of Work, state the duration.)*

**§ A.3.3.2** The Contractor shall purchase and maintain the following types and limits of insurance in accordance with Section A.3.3.1.
*(Select the types of insurance the Contractor is required to purchase and maintain by placing an X in the box(es) next to the description(s) of selected insurance. Where policy limits are provided, include the policy limit in the appropriate fill point.)*

[   ]  **§ A.3.3.2.1** Property insurance of the same type and scope satisfying the requirements identified in Section A.2.3, which, if selected in this section A.3.3.2.1, relieves the Owner of the responsibility to purchase and maintain such insurance except insurance required by Section A.2.3.1.3 and Section A.2.3.3. The Contractor shall comply with all obligations of the Owner under Section A.2.3 except to the extent provided below. The Contractor shall disclose to the Owner the amount of any deductible, and the Owner shall be responsible for losses within the deductible. Upon request, the Contractor shall provide the Owner with a copy of the property insurance policy or policies required. The Owner shall adjust and settle the loss with the insurer and be the trustee of the proceeds of the property insurance in accordance with Article 11 of the General Conditions unless otherwise set forth below:
*(Where the Contractor's obligation to provide property insurance differs from the Owner's obligations as described under Section A.2.3, indicate such differences in the space below. Additionally, if a party other than the Owner will be responsible for adjusting and settling a loss with the insurer and acting as the trustee of the proceeds of property insurance in accordance with Article 11 of the General Conditions, indicate the responsible party below.)*

AIA Document A102™ – 2017 Exhibit A. Copyright © 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:23:29 ET on 02/01/2022 under Order No.2114283159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:     (1332101466)

Init.

8

[  ]    **§ A.3.3.2.2 Railroad Protective Liability Insurance**, with policy limits of not less than    ($   ) per claim and    ($   ) in the aggregate, for Work within fifty (50) feet of railroad property.

[  ]    **§ A.3.3.2.3 Asbestos Abatement Liability Insurance**, with policy limits of not less than    ($   ) per claim and    ($   ) in the aggregate, for liability arising from the encapsulation, removal, handling, storage, transportation, and disposal of asbestos-containing materials.

[  ]    **§ A.3.3.2.4** Insurance for physical damage to property while it is in storage and in transit to the construction site on an "all-risks" completed value form.

[  ]    **§ A.3.3.2.5** Property insurance on an "all-risks" completed value form, covering property owned by the Contractor and used on the Project, including scaffolding and other equipment.

[  ]    **§ A.3.3.2.6 Other Insurance**
*(List below any other insurance coverage to be provided by the Contractor and any applicable limits.)*

Coverage                                             Limits


**§ A.3.4 Performance Bond and Payment Bond**
The Contractor shall provide surety bonds, from a company or companies lawfully authorized to issue surety bonds in the jurisdiction where the Project is located, as follows:
*(Specify type and penal sum of bonds.)*

| Type | Penal Sum ($0.00) |
|---|---|
| Payment Bond | TBD by Owner |
| Performance Bond | TBD by Owner |

Payment and Performance Bonds shall be AIA Document A312™, Payment Bond and Performance Bond, or contain provisions identical to AIA Document A312™, current as of the date of this Agreement.

**ARTICLE A.4    SPECIAL TERMS AND CONDITIONS**
Special terms and conditions that modify this Insurance and Bonds Exhibit, if any, are as follows:

No endorsements, exceptions, exclusions, riders, or other ancillary terms of any policy of insurance provided hereunder ("Endorsements") shall be allowed to the extent the application of such Endorsements to a required policy causes or results in the diminution of coverage(s) provided in such policy, whether pertaining to the limits, breadth, amount, duration, deductible, or other material terms or condition of the policy. Owner reserves the right, upon ten (10) days' written notice, to require Contractor to provide full copies of all policies of insurance required hereunder, including all Endorsements thereto, in addition to any certificates of insurance provided in accordance with Contractor's obligations under the Contract. Contractor's failure to provide such evidence of insurance coverage as required hereunder within thirty (30) days of the aforesaid notice to Contractor shall constitute a material breach of Contractor's obligations under the Contract, for which Owner may terminate the Agreement for cause pursuant to Article 14 thereof.


Init.

AIA Document A102™ – 2017 Exhibit A. Copyright © 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:23:29 ET on 02/01/2022 under Order No.2114263159 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                             (1332101486)

7

EXHIBIT B-1
CHENAL LAKES
SCHEDULE OF VALUES



**ADIVO**
**CONSTRUCTION**

850 SE 7ᵗʰ Street
Deerfield Beach, FL 33441

O 954.570.0300
F 954.570.0301

# Proposal

| Date | Proposal # |
|------|-----------|
| 1/13/2022 | 539 |

| Name / Address |
|---|
| Chenal Lakes<br>13500 Chenal Parkway<br>Little Rock, AR 72211 |

| Description | Total |
|---|---|
| >Renovate (188) 1x1 \| 600 SF avg. apartments (@ $14,025.00 per) | 2,636,700.00 |
| >Renovate (48) 2x1 \| 975 SF avg. apartments (@ $16,460.00 per) | 790,080.00 |
| >Renovate (172) 2x2 \| 1,118 SF avg. apartments (@ $19,290.00 per) | 3,317,880.00 |
| >Renovate (36) 3x2 \| 1,340 SF apartments (@ $20,855.00 per) | 750,780.00 |
| >Refresh (6) Fire Units at a cost not to exceed $5,000 per unit (scope of work to be determined) | 30,000.00 |

| The above prices, specifications, and conditions are satisfactory and are hereby accepted.<br><br>Signature | **Total** $7,525,440.00 |
|---|---|



**ADIVO CONSTRUCTION**

850 SE 7th Street
Deerfield Beach, FL 33441
O 954.570.0300
F 954.570.0301

**EXHIBIT B-2**
**BRIGHTWATERS**
**SCHEDULE OF VALUES**

# Proposal

| Date | Proposal # |
|------|-----------|
| 1/13/2022 | 538 |

| Name / Address |
|----------------|
| Brightwater<br>2420 Riverfront Drive<br>Little Rock, AR 72202 |

| Description | Total |
|-------------|-------|
| >Renovate (105) 1x1 \| 583 SF avg. apartments (@ $14,075.00 per) | 1,477,875.00 |
| >Renovate (49) 2x1 \| 765 SF apartments (@ $15,760.00 per) | 772,240.00 |

| The above prices, specifications, and conditions are satisfactory and are hereby accepted.<br>Signature | **Total** | $2,250,115.00 |

## EXHIBIT C

Upon recording, please return to:

_____
_____
_____

### <u>NOTICE OF COMMENCEMENT</u>

**TO: CLERK OF THE PULASKI COUNTY DISTRICT COURT**

Pursuant to Arkansas Code § _____ , the owner, agent of the owner, or contractor named below gives Notice of Commencement of improvements to property not later than fifteen (15) days after the physical commencement of work on the property by providing the following information:

1.    Name, address, and telephone number of the contractor: Adivo Construction Corp., 850 SE 7ᵗʰ Street, Deerfield Beach, Florida 33441; 954-570-0300.

2.    Name and location of the project being constructed and the legal description of the Property (defined below) upon which the improvements are being made (legal descriptions attached hereto as <u>Exhibits "A-1" and "A-2"</u>): Chenal Lakes Apartments, located at 13500 Chenal Parkway, Little Rock, Arkansas 72211 ("Chenal Lakes") see <u>Exhibit "A-1"</u>, and Brightwaters Apartments, located at 2420 Riverfront Drive, Little Rock, Arkansas 72202 ("Brightwaters") see <u>Exhibit "A-2"</u> attached hereto. Chenal Lakes and Brightwaters are collectively referred to herein as the "Property".

3.    Name and address of the true owner of the Property: Harbor Grand Holding Company, LLC, a Delaware limited liability company, and Timbers Holding Company, LLC, a Delaware limited liability company; 6118 Paseo Delicias, #1651, Rancho Santa Fe, California 92067.

4.    Name and address of the person other than the owner at whose instance the improvements are being made, if not the true owner of the Property: N/A

5.    Name and address of the surety for the performance and payment bonds, if any:

6.    Name and address of the construction lender, if any:

_____
(Owner, Agent of Owner or Contractor)

_____
(Designation as Owner, Agent of Owner or Contractor)

Date: _____

Exhibit "A-1"

**LEGAL DESCRIPTION**
(Chenal Lakes)
[TO BE ATTACHED]

Exhibit "A-1"

Exhibit A-2

**LEGAL DESCRIPTION**
(Brightwaters)
[TO BE ATTACHED]

Exhibit D.1

### WAIVER AND RELEASE OF LIEN
### AND PAYMENT BOND RIGHTS UPON INTERIM PAYMENT

STATE OF ARKANSAS    )
                     )
COUNTY OF PULASKI    )

THE UNDERSIGNED MECHANIC AND/OR MATERIALMAN HAS BEEN EMPLOYED BY _____ (NAME OF CONTRACTOR) TO FURNISH _____ (DESCRIBE MATERIALS AND/OR LABOR) FOR THE CONSTRUCTION OF IMPROVEMENTS KNOWN AS _____ (TITLE OF THE PROJECT OR BUILDING) WHICH IS LOCATED IN THE CITY OF _____, COUNTY OF _____, AND IS OWNED BY _____ (NAME OF OWNER) AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

_____
_____

(DESCRIBE THE PROPERTY UPON WHICH THE IMPROVEMENTS WERE MADE BY USING EITHER A METES AND BOUNDS DESCRIPTION, THE LAND LOT DISTRICT, BLOCK AND LOT NUMBER, OR STREET ADDRESS OF THE PROJECT.)

UPON THE RECEIPT OF THE SUM OF $_____, THE MECHANIC AND/OR MATERIALMAN WAIVES AND RELEASES ANY AND ALL LIENS OR CLAIMS OF LIENS IT HAS UPON THE FOREGOING DESCRIBED PROPERTY OR ANY RIGHTS AGAINST ANY LABOR AND/OR MATERIAL BOND THROUGH THE DATE OF _____ (DATE) AND EXCEPTING THOSE RIGHTS AND LIENS THAT THE MECHANIC AND/OR MATERIALMAN MIGHT HAVE IN ANY RETAINED AMOUNTS, ON ACCOUNT OF LABOR OR MATERIALS, OR BOTH, FURNISHED BY THE UNDERSIGNED TO OR ON ACCOUNT OF SAID CONTRACTOR FOR SAID BUILDING OR PREMISES.

GIVEN UNDER HAND AND SEAL THIS _____ DAY OF _____, 20___.

                                   _____ (SEAL)
                                   _____

_____
(WITNESS)

_____
(ADDRESS)

Exhibit D.2

### WAIVER AND RELEASE OF LIEN
### AND PAYMENT BOND RIGHTS UPON FINAL PAYMENT

STATE OF ARKANSAS   )
                             )
COUNTY OF PULASKI   )

THE UNDERSIGNED MECHANIC AND/OR MATERIALMAN HAS BEEN EMPLOYED BY
_____ (NAME OF CONTRACTOR) TO FURNISH
_____ (DESCRIBE MATERIALS AND/OR LABOR) FOR THE
CONSTRUCTION OF IMPROVEMENTS KNOWN AS _____ (TITLE
OF THE PROJECT OR BUILDING) WHICH IS LOCATED IN THE CITY OF _____,
COUNTY OF _____, AND IS OWNED BY _____.
(NAME OF OWNER) AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

_____
_____
_____

(DESCRIBE THE PROPERTY UPON WHICH THE IMPROVEMENTS WERE MADE BY
USING EITHER A METES AND BOUNDS DESCRIPTION, THE LAND LOT DISTRICT,
BLOCK AND LOT NUMBER, OR STREET ADDRESS OF THE PROJECT.)

UPON THE RECEIPT OF THE SUM OF $_____, THE MECHANIC AND/OR
MATERIALMAN WAIVES AND RELEASES ANY AND ALL LIENS OR CLAIMS OF LIENS
IT HAS UPON THE FOREGOING DESCRIBED PROPERTY OR ANY RIGHTS AGAINST
ANY LABOR AND/OR MATERIAL BOND ON ACCOUNT OF LABOR OR MATERIALS,
OR BOTH, FURNISHED BY THE UNDERSIGNED TO OR ON ACCOUNT OF SAID
CONTRACTOR FOR SAID PROPERTY.

GIVEN UNDER HAND AND SEAL THIS _____ DAY OF _____, ____.

                                              _____ (SEAL)

_____

(WITNESS)
_____

(ADDRESS)

EXHIBIT E
[SEE G706A ATTACHED]

# DRAFT AIA˙ Document G706˙ – 1994

## *Contractor's Affidavit of Payment of Debts and Claims*

| PROJECT: *(Name and address)* | ARCHITECT'S PROJECT NUMBER: | | OWNER: ☐ |
|---|---|---|---|
| | | | ARCHITECT: ☐ |
| | CONTRACT FOR: | | CONTRACTOR: ☐ |
| TO OWNER: *(Name and address)* | CONTRACT DATED: | | SURETY: ☐ |
| | | | OTHER: ☐ |

STATE OF:
COUNTY OF:

The undersigned hereby certifies that, except as listed below, payment has been made in full and all obligations have otherwise been satisfied for all materials and equipment furnished, for all work, labor, and services performed, and for all known indebtedness and claims against the Contractor for damages arising in any manner in connection with the performance of the Contract referenced above for which the Owner or Owner's property might in any way be held responsible or encumbered.

EXCEPTIONS:

SUPPORTING DOCUMENTS ATTACHED HERETO:

1.  Consent of Surety to Final Payment. Whenever Surety is involved, Consent of Surety is required. AIA Document G707, Consent of Surety, may be used for this purpose

Indicate Attachment          ☐ Yes   ☒ No

*The following supporting documents should be attached hereto if required by the Owner:*

1.  Contractor's Release or Waiver of Liens, conditional upon receipt of final payment.

2.  Separate Releases or Waivers of Liens from Subcontractors and material and equipment suppliers, to the extent required by the Owner, accompanied by a list thereof.

3.  Contractor's Affidavit of Release of Liens (AIA Document G706A).

CONTRACTOR: *(Name and address)*

BY:

*(Signature of authorized representative)*

*(Printed name and title)*

Subscribed and sworn to before me on this date:

Notary Public:
My Commission Expires:

AIA Document G706™ – 1994. Copyright © 1970 and 1994 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 14:43:03 ET on 02/13/2021 under Order No.9497743961 which expires on 07/16/2021, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                    (3B9ADA3E)

1

# DRAFT AIA Document G706A - 1994

## *Contractor's Affidavit of Release of Liens*

| PROJECT: *(Name and address)* | ARCHITECT'S PROJECT NUMBER: | | OWNER: ☐ |
|---|---|---|---|
| | | | ARCHITECT: ☐ |
| | CONTRACT FOR: | | CONTRACTOR: ☐ |
| TO OWNER: *(Name and address)* | CONTRACT DATED: | | SURETY: ☐ |
| | | | OTHER: ☐ |

STATE OF:
COUNTY OF:

The undersigned hereby certifies that to the best of the undersigned's knowledge, information and belief, except as listed below, the Releases or Waivers of Lien attached hereto include the Contractor, all Subcontractors, all suppliers of materials and equipment, and all performers of Work, labor or services who have or may have liens or encumbrances or the right to assert liens or encumbrances against any property of the Owner arising in any manner out of the performance of the Contract referenced above.

EXCEPTIONS:

SUPPORTING DOCUMENTS ATTACHED HERETO:

1.  Contractor's Release or Waiver of Liens, conditional upon receipt of final payment.

2.  Separate Releases or Waivers of Liens from Subcontractors and material and equipment suppliers, to the extent required by the Owner, accompanied by a list thereof.

CONTRACTOR: *(Name and address)*

BY:

*(Signature of authorized representative)*

*(Printed name and title)*

Subscribed and sworn to before me on this date:

Notary Public:
My Commission Expires:

AIA Document G706A™ – 1994. Copyright © 1982 and 1994 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 14:43:32 ET on 02/19/2021 under Order No.3407743861 which expires on 07/16/2021, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                    (1283ADA71)

1

EXHIBIT F-1
CHENAL LAKES
SCOPE OF WORK



**850 SE 7ᵗʰ Street**
**Deerfield Beach, FL 33441**
T O 954.570.0300
F 954.570.0301

# Proposal

| Date | Proposal # |
|------|-----------|
| 1/13/2022 | 539 |

**Name / Address**

Chenal Lakes
13500 Chenal Parkway
Little Rock, AR 72211

| Description | Total |
|-------------|-------|
| Job Description: Interior property improvements<br><br>SCOPE OF WORK – Unit interior renovation (444 units)<br>Demolition<br>Trash removal<br>Paint walls, ceiling, trim and doors<br>Provide and install new vinyl flooring throughout and carpet in the bedrooms Provide and install new stainless steel appliances (refrigerator, dishwasher, range & microwave)<br>Paint cabinet boxes in kitchen and bathroom<br>Provide and install new flat panel cabinet doors and drawer faces in kitchen and bathroom<br>Provide and install new cabinet door pulls in kitchen and bathroom<br>Provide and install new 2CM granite "Valle Nevado" countertops in kitchen and bathroom<br>Provide and install new 3x6 subway tile backsplash in kitchen<br>Provide and install new stainless steel undermount sink in kitchen<br>Provide and install new rectangle undermount sink in bathroom<br>Replace shut off valves and angle stops in kitchen and bathroom<br>Provide and install new faucet in kitchen<br>Provide and install new faucet in bathroom<br>Provide and install new light fixture in kitchen<br>Provide and install new light fixture in dining area (where existing)<br>Provide and install new vanity light in bathroom<br>Provide and install new ceiling fan in bedroom<br>Provide and install new light fixture in hallway and closet (where existing) Provide and install new mirror in bathroom<br>Provide and install new shower head in bathroom<br>Provide and install new shower rod, toilet paper holder and towel bar in bathroom Provide and install new digital non-programmable thermostat<br>Provide and install new Taymac switch and outlet covers (incl. new USB outlet in kitchen)<br>Provide and install new 2" faux wood blinds on windows<br>Provide and install new interior door levers (incl. door stops)<br>Final clean | |
| The above prices, specifications, and conditions are satisfactory and are hereby accepted.<br><br>Signature | **Total** |

Page 1



**ADIVO CONSTRUCTION**

850 SE 7th Street
Deerfield Beach, FL 33441
O 954.570.0300
F 954.570.0301

# Proposal

| Date | Proposal # |
|------|-----------|
| 1/13/2022 | 539 |

| Name / Address |
|----------------|
| Chenal Lakes<br>13500 Chenal Parkway<br>Little Rock, AR 72211 |

| Description | Total |
|-------------|-------|
| **Terms & Conditions**<br>1. 20% deposit due upon execution of contract, a condition precedent to commencement of construction work. Deposit will be credited to Owner as described: On each Application for Payment in the amount of 20% of the Progress Payment.<br>2. Monthly invoicing for work completed, net 30-days.<br>3. The Owner shall provide the Contractor and their agents with onsite housing for the duration of the project.<br>4. Does not include designer, architect, engineering and permit fees (if applicable).<br>5. The pricing included in this Proposal is contingent upon the Contractor receiving a minimum of 25 units per month to renovate.<br>6. The pricing included in this Proposal is contingent upon the Contractor receiving all 444 units to renovate within 18 months of work commencement.<br>7. Failure to supply a minimum of 25 units per month will result in a $500.00 per unit per month change for every unit that falls below 20 units every month.<br>9. The Owner is responsible for the removal and proper disposal of all old appliances.<br>10. All prices quoted are valid for 10-days from the date of this Proposal.<br>11. Does not include subfloor repair/replacement, floor leveling, ceramic tile removal and disposal, smoke/CO2 detectors, wall paper removal, framing modifications, major cabinet repair/replacement or modification, shower door removal, disposal or replacement, tile wainscot removal, disposal or replacement and major drywall repair/replacement (all to be addressed via change order). | |

| The above prices, specifications, and conditions are satisfactory and are hereby accepted.<br><br>Signature | **Total** | $7,525,440.00 |

EXHIBIT F-2
BRIGHTWATERS
SCOPE OF WORK



850 SE 7th Street
Deerfield Beach, FL 33441

☎ O 954.570.0300
🖨 F 954.570.0301

# Proposal

| Date | Proposal # |
|------|-----------|
| 1/13/2022 | 538 |

| Name / Address |
|----------------|
| Brightwater<br>2420 Riverfront Drive<br>Little Rock, AR 72202 |

| Description | Total |
|-------------|-------|
| Job Description: Interior property improvements<br><br>SCOPE OF WORK – Unit interior renovation (154 units)<br>Demolition<br>Trash removal<br>Paint walls, ceiling, trim and doors<br>Provide and install new vinyl flooring throughout and carpet in the bedrooms Provide and install new stainless steel appliances (refrigerator, dishwasher, range & microwave)<br>Paint cabinet boxes in kitchen and bathroom<br>Provide and install new flat panel cabinet doors and drawer faces in kitchen and bathroom<br>Provide and install new cabinet door pulls in kitchen and bathroom<br>Provide and install new 2CM granite "Valle Nevado" countertops in kitchen and bathroom<br>Provide and install new 3x6 subway tile backsplash in kitchen<br>Provide and install new stainless steel undermount sink in kitchen<br>Provide and install new rectangle undermount sink in bathroom<br>Replace shut off valves and angle stops in kitchen and bathroom<br>Provide and install new faucet in kitchen<br>Provide and install new faucet in bathroom<br>Provide and install new light fixture in kitchen<br>Provide and install new light fixture in dining area (where existing)<br>Provide and install new vanity light in bathroom<br>Provide and install new ceiling fan in bedroom<br>Provide and install new light fixture in hallway and closet (where existing) Provide and install new mirror in bathroom<br>Provide and install new shower head in bathroom<br>Provide and install new shower rod, toilet paper holder and towel bar in bathroom Provide and install new digital non-programmable thermostat<br>Provide and install new Taymac switch and outlet covers (incl. new USB outlet in kitchen)<br>Provide and install new 2" faux wood blinds on windows<br>Provide and install new interior door levers (incl. door stops)<br>Final clean | |
| The above prices, specifications, and conditions are satisfactory and are hereby accepted.<br><br>Signature | **Total** |



850 SE 7ᵗʰ Street
Deerfield Beach, FL 33441
O 954.570.0300
F 954.570.0301

# Proposal

| Date | Proposal # |
|------|-----------|
| 1/13/2022 | 538 |

| Name / Address |
|----------------|
| Brightwater<br>2420 Riverfront Drive<br>Little Rock, AR 72202 |

| Description | Total |
|-------------|-------|
| **Terms & Conditions**<br>1. 20% deposit due upon execution of contract, a condition precedent to commencement of construction work. Deposit will be credited to Owner as described: On each Application for Payment in the amount of 20% of the Progress Payment.<br>2. Monthly invoicing for work completed, net 30-days.<br>3. The Owner shall provide the Contractor and their agents with onsite housing for the duration of the project.<br>4. Does not include designer, architect, engineering and permit fees (if applicable).<br>5. The pricing included in this Proposal is contingent upon the Contractor receiving a minimum of 10 units per month to renovate.<br>6. The pricing included in this Proposal is contingent upon the Contractor receiving all 154 units to renovate within 18 months of work commencement.<br>7. Failure to supply a minimum of 10 units per month will result in a $500.00 per unit per month change for every unit that falls below 10 units every month.<br>9. The Owner is responsible for the removal and proper disposal of all old appliances.<br>10. All prices quoted are valid for 10-days from the date of this Proposal.<br>11. Does not include subfloor repair/replacement, floor leveling, ceramic tile removal and disposal, smoke/CO2 detectors, wall paper removal, framing modifications, major cabinet repair/replacement or modification, shower door removal, disposal or replacement, tile wainscot removal, disposal or replacement and major drywall repair/replacement (all to be addressed via change order). | |

| The above prices, specifications, and conditions are satisfactory and are hereby accepted.<br><br>**Signature** _____ | |



# AIA Document A201 – 2017

## General Conditions of the Contract for Construction

for the following PROJECT:
*(Name and location or address)*

Chenal Lakes Apartments
13500 Chenal Parkway
Little Rock, AR 72211

Brightwaters Apartments
2420 Riverfront Drive
Little Rock, AR 72202

THE OWNER:
*(Name, legal status and address)*

Harbor Grand Holding Company, LLC, a Delaware limited liability company
and
Timbers Holding Company, LLC, a Delaware limited liability company
6118 Paseo Delicias, #1651
Rancho Santa Fe, CA 92067

THE ARCHITECT:
*(Name, legal status and address)*

N/A – All references to decisions and actions of Architect herein shall instead mean Owner.
To the extent that Owner is not able or willing to perform such Architect functions under
this Agreement, that portion of the Agreement shall be considered not applicable unless
Owner appoints an architect to handle such matters.

This document has important
legal consequences. Consultation
with an attorney
is encouraged with respect to
its completion or modification.

For guidance in modifying this
document to include
supplementary conditions, see
AIA Document A503™, Guide for
Supplementary Conditions.

TABLE OF ARTICLES

1       GENERAL PROVISIONS

2       OWNER

3       CONTRACTOR

4       ARCHITECT

5       SUBCONTRACTORS

6       CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7       CHANGES IN THE WORK

8       TIME

9       PAYMENTS AND COMPLETION

10      PROTECTION OF PERSONS AND PROPERTY


AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The
American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are
registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:36 ET on 02/01/2022 under Order
No.2114363166 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract
Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                        (1232096965)

1

Exhibit 2

11      INSURANCE AND BONDS

12      UNCOVERING AND CORRECTION OF WORK

13      MISCELLANEOUS PROVISIONS

14      TERMINATION OR SUSPENSION OF THE CONTRACT

15      CLAIMS AND DISPUTES



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1232098585)

2

## INDEX
(Topics and numbers in bold are Section headings.)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, 12.3
**Acceptance of Work**
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
3.16, 6.2.1, 12.1
**Accident Prevention**
10
**Acts and Omissions**
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5,
10.2.8, 13.3.2, 14.1, 15.1.2, 15.2
**Addenda**
1.1.1
**Additional Costs, Claims for**
3.7.4, 3.7.5, 10.3.2, 15.1.5
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, 13.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, 15.1.6
**Administration of the Contract**
3.1.3, 4.2, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
3.8
**Applications for Payment**
4.2.5, 7.3.9, 9.2, 9.3, 9.4, 9.5.1, 9.5.4, 9.6.3, 9.7, 9.10
Approvals
2.1.1, 2.3.1, 2.5, 3.1.3, 3.10.2, 3.12.8, 3.12.9,
3.12.10.1, 4.2.7, 9.3.2, 13.4.1
**Arbitration**
8.3.1, 15.3.2, 15.4
**ARCHITECT**
4
Architect, Definition of
4.1.1
Architect, Extent of Authority
2.5, 3.12.7, 4.1.2, 4.2, 5.2, 6.3, 7.1.2, 7.3.4, 7.4, 9.2,
9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1,
13.4.1, 13.4.2, 14.2.2, 14.2.4, 15.1.4, 15.2.1
Architect, Limitations of Authority and Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3,
4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4, 9.4.2,
9.5.4, 9.6.4, 15.1.4, 15.2
Architect's Additional Services and Expenses
2.5, 12.2.1, 13.4.2, 13.4.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.5, 3.1.3, 3.5, 3.10.2, 4.2.7

Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3,
7.3.4, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1,
13.4.2, 15.2
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.4
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.4.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 2.3.3, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2,
3.5, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16,
3.18, 4.1.2, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5,
9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 12, 13.3.2, 13.4, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.4
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.6.8, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for
Portions of the Work**
5.2
**Basic Definitions**
1.1
Bidding Requirements
1.1.1
Binding Dispute Resolution
8.3.1, 9.7, 11.5, 13.1, 15.1.2, 15.1.3, 15.2.1, 15.2.5,
15.2.6.1, 15.3.1, 15.3.2, 15.3.3, 15.4.1
Bonds, Lien
7.3.4.4, 9.6.8, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.4.4, 9.6.7, 9.10.3, 11.1.2, 11.1.3, 11.5
**Building Information Models Use and Reliance**
1.8
Building Permit
3.7.1
**Capitalization**
1.3
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5


Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The
American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are
registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order
No.2114253156 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract
Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                              (1232096565)

3

Certificates for Payment
4.2.1, 4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.4
Certificates of Inspection, Testing or Approval
13.4.4
Certificates of Insurance
9.10.2
Change Orders
1.1.1, 3.4.2, 3.7.4, 3.8.2.3, 3.11, 3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, 7.2, 7.3.2, 7.3.7, 7.3.9, 7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.2, 11.5, 12.1.2
Change Orders, Definition of
7.2.1
CHANGES IN THE WORK
2.2.2, 3.11, 4.2.8, 7, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1, 11.5
Claims, Definition of
15.1.1
Claims, Notice of
1.6.2, 15.1.3
CLAIMS AND DISPUTES
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, 15, 15.4
Claims and Timely Assertion of Claims
15.4.1
Claims for Additional Cost
3.2.4, 3.3.1, 3.7.4, 7.3.9, 9.5.2, 10.2.5, 10.3.2, 15.1.5
Claims for Additional Time
3.2.4, 3.3.1, 3.7.4, 6.1.1, 8.3.2, 9.5.2, 10.3.2, 15.1.6
Concealed or Unknown Conditions, Claims for
3.7.4
Claims for Damages
3.2.4, 3.18, 8.3.3, 9.5.1, 9.6.7, 10.2.5, 10.3.3, 11.3, 11.3.2, 14.2.4, 15.1.7
Claims Subject to Arbitration
15.4.1
Cleaning Up
3.15, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.2, 15.1.5
Commencement of the Work, Definition of
8.1.2
Communications
3.9.1, 4.2.4
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 14.1.2, 15.1.2
COMPLETION, PAYMENTS AND
9
Completion, Substantial
3.10.1, 4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2, 15.1.2
Compliance with Laws
2.3.2, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 9.6.4, 10.2.2, 13.1, 13.3, 13.4.1, 13.4.2, 13.5, 14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3

Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.14.2, 4.1.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 13.2, 15.4.4.2
Consolidation or Joinder
15.4.4
CONSTRUCTION BY OWNER OR BY
SEPARATE CONTRACTORS
1.1.4, 6
Construction Change Directive, Definition of
7.3.1
Construction Change Directives
1.1.1, 3.4.2, 3.11, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, 7.3, 9.3.1.1
Construction Schedules, Contractor's
3.10, 3.11, 3.12.1, 3.12.2, 6.1.3, 15.1.6.2
Contingent Assignment of Subcontracts
5.4, 14.2.2.2
Continuing Contract Performance
15.1.4
Contract, Definition of
1.1.2
CONTRACT, TERMINATION OR
SUSPENSION OF THE
5.4.1.1, 5.4.2, 11.5, 14
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.3.6, 5.3
Contract Documents, Definition of
1.1.1
Contract Sum
2.2.2, 2.2.4, 3.7.4, 3.7.5, 3.8, 3.10.2, 5.2.3, 7.3, 7.4, 9.1, 9.2, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.5, 12.1.2, 12.3, 14.2.4, 14.3.2, 15.1.4.2, 15.1.5, 15.2.5
Contract Sum, Definition of
9.1
Contract Time
1.1.4, 2.2.1, 2.2.2, 3.7.4, 3.7.5, 3.10.2, 5.2.3, 6.1.5, 7.2.1.3, 7.3.1, 7.3.5, 7.3.6, 7, 7.7.3.10, 7.4, 8.1.1, 8.2.1, 8.2.3, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 12.1.2, 14.3.2, 15.1.4.2, 15.1.6.1, 15.2.5
Contract Time, Definition of
8.1.1
CONTRACTOR
3
Contractor, Definition of
3.1, 6.1.2
Contractor's Construction and Submittal
Schedules
3.10, 3.12.1, 3.12.2, 4.2.3, 6.1.3, 15.1.6.2


Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                          (1232096565)

4

Contractor's Employees
2.2.4, 3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.3, 14.1, 14.2.1.1
Contractor's Liability Insurance
11.1
Contractor's Relationship with Separate Contractors and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 2.2.4, 3.3.2, 3.18.1, 3.18.2, 4.2.4, 5, 9.6.2, 9.6.7, 9.10.2, 11.2, 11.3, 11.4
Contractor's Relationship with the Architect
1.1.2, 1.5, 2.3.3, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5.1, 3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 12, 13.4, 15.1.3, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the Work
3.3.2, 3.18, 5.3, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
2.2.2, 9.7
Contractor's Right to Terminate the Contract
14.1
Contractor's Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.4, 7.3.6, 8.2, 10, 12, 14, 15.1.4
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.3.6, 3.11
Copyrights
1.5, 3.17
Correction of Work
2.5, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, 12.2, 12.3, 13.1.3.1, 13.1.3.2, 15.2.1
Correlation and Intent of the Contract Documents
1.2
Cost, Definition of
7.3.4
Costs
2.5, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3, 7.3.4, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.2, 12.1.2, 12.2.1, 12.2.4, 13.4, 14
Cutting and Patching
3.14, 6.2.5

Damage to Construction of Owner or Separate Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.3.2, 11.3, 14.2.4, 15.1.7
Damages for Delay
6.2.3, 8.3.3, 9.5.1.6, 9.7, 10.3.2, 14.3.2
Date of Commencement of the Work, Definition of
8.1.2
Date of Substantial Completion, Definition of
8.1.3
Day, Definition of
8.1.4
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 6.3, 7.3.4, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.4.2, 14.2.2, 14.2.4, 15.1, 15.2
Decisions to Withhold Certification
9.4.1, 9.5, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance, Rejection and Correction of
2.5, 3.5, 4.2.6, 6.2.3, 9.5.1, 9.5.3, 9.6.6, 9.8.2, 9.9.3, 9.10.4, 12.2.1
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1, 15.1.1
Delays and Extensions of Time
3.2, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, 8.3, 9.5.1, 9.7, 10.3.2, 10.4, 14.3.2, 15.1.6, 15.2.5
Digital Data Use and Transmission
1.7
Disputes
6.3, 7.3.9, 15.1, 15.2
Documents and Samples at the Site
3.11
Drawings, Definition of
1.1.5
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2
Emergencies
10.4, 14.1.1.2, 15.1.5
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3.3, 11.3, 14.1, 14.2.1.1
Equipment, Labor, or Materials
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.4, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.3.4, 2.3.6, 3.1, 3.3.1, 3.4.1, 3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.6, 8.2, 9.5.1, 9.9.1, 10.2, 10.3, 12.1, 12.2, 14.2, 14.3.1, 15.1.4



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                                    (1232096565)



Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2,
10.4, 14.3, 15.1.6, 15.2.5
**Failure of Payment**
9.5.1.3, 9.7, 9.10.2, 13.5, 14.1.1.3, 14.2.1.2
**Faulty Work**
(See Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, 9.10, 12.3, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
**GENERAL PROVISIONS**
**1**
**Governing Law**
13.1
**Guarantees (See Warranty)**
**Hazardous Materials and Substances**
10.2.4, 10.3
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
3.17, 3.18, 9.6.8, 9.10.2, 10.3.3, 11.3
**Information and Services Required of the Owner**
2.1.2, 2.2, 2.3, 3.2.2, 3.12.10.1, 6.1.3, 6.1.4, 6.2.5,
9.6.1, 9.9.2, 9.10.3, 10.3.3, 11.2, 13.4.1, 13.4.2,
14.1.1.4, 14.1.4, 15.1.4
**Initial Decision**
15.2
**Initial Decision Maker, Definition of**
1.1.8
**Initial Decision Maker, Decisions**
14.2.4, 15.1.4.2, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
**Initial Decision Maker, Extent of Authority**
14.2.4, 15.1.4.2, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
**Injury or Damage to Person or Property**
10.2.8, 10.4
**Inspections**
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 12.2.1, 13.4
**Instructions to Bidders**
1.1.1
**Instructions to the Contractor**
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.4.2
**Instruments of Service, Definition of**
1.1.7
**Insurance**
6.1.1, 7.3.4, 8.2.2, 9.3.2, 9.8.4, 9.9.1, 9.10.2, 10.2.5, 11
Insurance, Notice of Cancellation or Expiration
11.1.4, 11.2.3
**Insurance, Contractor's Liability**
11.1
Insurance, Effective Date of
8.2.2, 14.4.2
**Insurance, Owner's Liability**
11.2
**Insurance, Property**
10.2.5, 11.2, 11.4, 11.5

Insurance, Stored Materials
9.3.2
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
9.9.1
Insured loss, Adjustment and Settlement of
11.5
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13
**Interest**
13.5
**Interpretation**
1.1.8, 1.2.3, 1.4, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
5.2.1, 6.2.1, 7.3.4, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1,
10.2.4, 14.2.1.1, 14.2.1.2
**Labor Disputes**
8.3.1
**Laws and Regulations**
1.5, 2.3.2, 3.2.3, 3.2.4, 3.6, 3.7, 3.12.10, 3.13, 9.6.4,
9.9.1, 10.2.2, 13.1, 13.3.1, 13.4.2, 13.5, 14, 15.2.8,
15.4
**Liens**
2.1.2, 9.3.1, 9.3.3, 9.6.8, 9.10.2, 9.10.4, 15.2.8
**Limitations, Statutes of**
12.2.5, 15.1.2, 15.4.1.1
**Limitations of Liability**
3.2.2, 3.5, 3.12.10, 3.12.10.1, 3.17, 3.18.1, 4.2.6,
4.2.7, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 9.6.8, 10.2.5, 10.3.3,
11.3, 12.2.5, 13.3.1
**Limitations of Time**
2.1.2, 2.2, 2.5, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7,
5.2, 5.3, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3,
9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 12.2, 13.4, 14, 15,
15.1.2, 15.1.3, 15.1.5
**Materials, Hazardous**
10.2.4, 10.3
Materials, Labor, Equipment and
1.1.3, 1.1.6, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
5.2.1, 6.2.1, 7.3.4, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2,
10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
**Mechanic's Lien**
2.1.2, 9.3.1, 9.3.3, 9.6.8, 9.10.2, 9.10.4, 15.2.8
**Mediation**
8.3.1, 15.1.3.2, 15.2.1, 15.2.5, 15.2.6, 15.3, 15.4.1,
15.4.1.1
**Minor Changes in the Work**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1, 7.4

AIA Document A201™ – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The
American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are
registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order
No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract
Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                       (1232096565)

**MISCELLANEOUS PROVISIONS**
13
**Modifications, Definition of**
1.1.1
**Modifications to the Contract**
1.1.1, 1.1.2, 2.5, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7, 10.3.2
**Mutual Responsibility**
6.2
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, 12.3
**Nonconforming Work, Rejection and Correction of**
2.4, 2.5, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2
**Notice**
1.6, 1.6.1, 1.6.2, 2.1.2, 2.2.2., 2.2.3, 2.2.4, 2.5, 3.2.4, 3.3.1, 3.7.4, 3.7.5, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 7.4, 8.2.2 9.6.8, 9.7, 9.10.1, 10.2.8, 10.3.2, 11.5, 12.2.2.1, 13.4.1, 13.4.2, 14.1, 14.2.2, 14.4.2, 15.1.3, 15.1.5, 15.1.6, 15.4.1
**Notice of Cancellation or Expiration of Insurance**
11.1.4, 11.2.3
**Notice of Claims**
1.6.2, 2.1.2, 3.7.4, 9.6.8, 10.2.8, 15.1.3, 15.1.5, 15.1.6, 15.2.8, 15.3.2, 15.4.1
**Notice of Testing and Inspections**
13.4.1, 13.4.2
**Observations, Contractor's**
3.2, 3.7.4
**Occupancy**
2.3.1, 9.6.6, 9.8
**Orders, Written**
1.1.1, 2.4, 3.9.2, 7, 8.2.2, 11.5, 12.1, 12.2.2.1, 13.4.2, 14.3.1
**OWNER**
2
**Owner, Definition of**
2.1.1
**Owner, Evidence of Financial Arrangements**
2.2, 13.2.2, 14.1.1.4
**Owner, Information and Services Required of the**
2.1.2, 2.2, 2.3, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 13.4.1, 13.4.2, 14.1.1.4, 14.1.4, 15.1.4
**Owner's Authority**
1.5, 2.1.1, 2.3.32.4, 2.5, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1, 9.10.2, 10.3.2, 11.4, 11.5, 12.2.2, 12.3, 13.2.2, 14.3, 14.4, 15.2.7
**Owner's Insurance**
11.2
**Owner's Relationship with Subcontractors**
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
**Owner's Right to Carry Out the Work**
2.5, 14.2.2

**Owner's Right to Clean Up**
6.3
**Owner's Right to Perform Construction and to Award Separate Contracts**
6.1
**Owner's Right to Stop the Work**
2.4
**Owner's Right to Suspend the Work**
14.3
**Owner's Right to Terminate the Contract**
14.2, 14.4
**Ownership and Use of Drawings, Specifications and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, 1.5, 2.3.6, 3.2.2, 3.11, 3.17, 4.2.12, 5.3
**Partial Occupancy or Use**
9.6.6, 9.9
**Patching, Cutting and**
3.14, 6.2.5
**Patents**
3.17
**Payment, Applications for**
4.2.5, 7.3.9, 9.2, 9.3, 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1, 14.2.3, 14.2.4, 14.4.3
**Payment, Certificates for**
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4
**Payment, Failure of**
9.5.1.3, 9.7, 9.10.2, 13.5, 14.1.1.3, 14.2.1.2
**Payment, Final**
4.2.1, 4.2.9, 9.10, 12.3, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.4.4, 9.6.7, 9.10.3, 11.1.2
**Payments, Progress**
9.3, 9.6, 9.8.5, 9.10.3, 14.2.3, 15.1.4
**PAYMENTS AND COMPLETION**
9
**Payments to Subcontractors**
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
**PCB**
10.3.1
**Performance Bond and Payment Bond**
7.3.4.4, 9.6.7, 9.10.3, 11.1.2
**Permits, Fees, Notices and Compliance with Laws**
2.3.1, 3.7, 3.13, 7.3.4.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
10
**Polychlorinated Biphenyl**
10.3.1
**Product Data, Definition of**
3.12.2
**Product Data and Samples, Shop Drawings**
3.11, 3.12, 4.2.7
**Progress and Completion**
4.2.2, 8.2, 9.8, 9.9.1, 14.1.4, 15.1.4
**Progress Payments**
9.3, 9.6, 9.8.5, 9.10.3, 14.2.3, 15.1.4



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                                  (1232096565)

Project, Definition of
1.1.4
Project Representatives
4.2.10
Property Insurance
10.2.5, 11.2
Proposal Requirements
1.1.1
PROTECTION OF PERSONS AND PROPERTY
10
Regulations and Laws
1.5, 2.3.2, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 9.6.4, 9.9.1,
10.2.2, 13.1, 13.3, 13.4.1, 13.4.2, 13.5, 14, 15.2.8, 15.4
Rejection of Work
4.2.6, 12.2.1
Releases and Waivers of Liens
9.3.1, 9.10.2
Representations
3.2.1, 3.5, 3.12.6, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.10, 13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.2, 4.2.3, 5.3, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
Review of Contract Documents and Field
Conditions by Contractor
3.2, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples
by Contractor
3.12
Rights and Remedies
1.1.2, 2.4, 2.5, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1,
6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.1, 12.2.2,
12.2.4, 13.3, 14, 15.4
Royalties, Patents and Copyrights
3.17
Rules and Notices for Arbitration
15.4.1
Safety of Persons and Property
10.2, 10.4
Safety Precautions and Programs
3.3.1, 4.2.2, 4.2.7, 5.3, 10.1, 10.2, 10.4
Samples, Definition of
3.12.3
Samples, Shop Drawings, Product Data and
3.11, 3.12, 4.2.7
Samples at the Site, Documents and
3.11
Schedule of Values
9.2, 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.6.2

Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
Separate Contractors, Definition of
6.1.1
Shop Drawings, Definition of
3.12.1
Shop Drawings, Product Data and Samples
3.11, 3.12, 4.2.7
Site, Use of
3.13, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.9.2, 9.4.2, 10.1, 13.4
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.4
Special Inspections and Testing
4.2.6, 12.2.1, 13.4
Specifications, Definition of
1.1.6
Specifications
1.1.1, 1.1.6, 1.2.2, 1.5, 3.12.10, 3.17, 4.2.14
Statute of Limitations
15.1.2, 15.4.1.1
Stopping the Work
2.2.2, 2.4, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
Subcontractor, Definition of
5.1.1
SUBCONTRACTORS
5
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 3.18, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2,
9.6.7
Subcontractual Relations
5.3, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1
Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.4, 9.2, 9.3, 9.8,
9.9.1, 9.10.2, 9.10.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
Subrogation, Waivers of
6.1.1, 11.3
Substances, Hazardous
10.3
Substantial Completion
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2,
15.1.2
Substantial Completion, Definition of
9.8.1
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
2.3.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
Sub-subcontractor, Definition of
5.1.2


AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114263155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                    (1232096565)

Init.

8

Subsurface Conditions
3.7.4
Successors and Assigns
13.2
Superintendent
3.9, 10.2.6
Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3,
7.3.4, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.4
Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.5.4, 9.6,
9.10.5, 14.2.1
Surety
5.4.1.2, 9.6.8, 9.8.5, 9.10.2, 9.10.3, 11.1.2, 14.2.2,
15.2.7
Surety, Consent of
9.8.5, 9.10.2, 9.10.3
Surveys
1.1.7, 2.3.4
Suspension by the Owner for Convenience
14.3
Suspension of the Work
3.7.5, 5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
Taxes
3.6, 3.8.2.1, 7.3.4.4
Termination by the Contractor
14.1, 15.1.7
Termination by the Owner for Cause
5.4.1.1, 14.2, 15.1.7
Termination by the Owner for Convenience
14.4
Termination of the Architect
2.3.3
Termination of the Contractor Employment
14.2.2

TERMINATION OR SUSPENSION OF THE
CONTRACT
14
Tests and Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 10.3.2, 12.2.1, 13.4
TIME
8
Time, Delays and Extensions of
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, 8.3, 9.5.1, 9.7,
10.3.2, 10.4, 14.3.2, 15.1.6, 15.2.5

Time Limits
2.1.2, 2.2, 2.5, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2,
5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1,
9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 12.2, 13.4, 14, 15.1.2,
15.1.3, 15.4
Time Limits on Claims
3.7.4, 10.2.8, 15.1.2, 15.1.3
Title to Work
9.3.2, 9.3.3
UNCOVERING AND CORRECTION OF WORK
12
Uncovering of Work
12.1
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 9.1.2
Use of Documents
1.1.1, 1.5, 2.3.6, 3.12.6, 5.3
Use of Site
3.13, 6.1.1, 6.2.1
Values, Schedule of
9.2, 9.3.1
Waiver of Claims by the Architect
13.3.2
Waiver of Claims by the Contractor
9.10.5, 13.3.2, 15.1.7
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.3.2, 14.2.4, 15.1.7
Waiver of Consequential Damages
14.2.4, 15.1.7
Waiver of Liens
9.3, 9.10.2, 9.10.4
Waivers of Subrogation
6.1.1, 11.3
Warranty
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.2, 9.10.4, 12.2.2,
15.1.2
Weather Delays
8.3, 15.1.6.2
Work, Definition of
1.1.3
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.10.3,
13.2, 13.3.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12
Written Orders
1.1.1, 2.4, 3.9, 7, 8.2.2, 12.1, 12.2, 13.4.2, 14.3.1


Init.

AIA Document A201® – 2817. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The
American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are
registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:38 ET on 02/01/2022 under Order
No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract
Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1232096565)

**ARTICLE 1    GENERAL PROVISIONS**
**§ 1.1 Basic Definitions**
**§ 1.1.1 The Contract Documents**
The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement, and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive, or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding or proposal requirements.

**§ 1.1.2 The Contract**
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants, or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

**§ 1.1.3 The Work**
The term "Work" means the ~~construction~~ building and services required by the Contract ~~Documents,~~ Documents whether completed or partially ~~completed,~~ completed and includes all other labor, materials, equipment, and services provided or to be provided by ~~the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.~~Contractor to fulfill Contractor's obligations under this Contract, as well as any and all additional items of work that are reasonably inferable from the Contract Documents as necessary to complete the Work in accordance with the Contract Documents.

**§ 1.1.4 The Project**
The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by Separate Contractors.

**§ 1.1.5 The Drawings**
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules, and diagrams.

**§ 1.1.6 The Specifications**
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

**§ 1.1.7 Instruments of Service**
Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

**§ 1.1.8 Initial Decision Maker**
~~The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2. The Initial Decision Maker shall not show partiality to the Owner or Contractor and shall not be liable for results of interpretations or decisions rendered in good faith.~~[INTENTIONALLY OMITTED]

**§ 1.2 Correlation and Intent of the Contract Documents**
**§ 1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as


AIA Document A201™ – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                    (1232096565)

binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

§ 1.2.1.1 The invalidity of any provision of the Contract Documents shall not invalidate the Contract or its remaining provisions. If it is determined that any provision of the Contract Documents violates any law, or is otherwise invalid or unenforceable, then that provision shall be revised to the extent necessary to make that provision legal and enforceable. In such case the Contract Documents shall be construed, to the fullest extent permitted by law, to give effect to the parties' intentions and purposes in executing the Contract.

§ 1.2.2 Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ 1.2.3 Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

§ 1.3 Capitalization
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles, or (3) the titles of other documents published by the American Institute of Architects.

§ 1.4 Interpretation
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ 1.5 Ownership and Use of Drawings, Specifications, and Other Instruments of Service
§ 1.5.1 The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and retain all common law, statutory, and other reserved rights in their Instruments of Service, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with the Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

§ 1.5.2 The Contractor, Subcontractors, Sub-subcontractors, and suppliers are authorized to use and reproduce the Instruments of Service provided to them, subject to any protocols established pursuant to Sections 1.7 and 1.8, solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and suppliers may not use the Instruments of Service on other projects or for additions to the Project outside the scope of the Work without the specific written consent of the Owner, Architect, and the Architect's consultants.

§ 1.6 Notice
§ 1.6.1 Except as otherwise provided in Section 1.6.2, where the Contract Documents require one party to notify or give notice to the other party, such notice shall be provided in writing to the designated representative of the party to whom the notice is addressed and shall be deemed to have been duly served if delivered in person, by mail, by courier, or by electronic transmission if a method for electronic transmission is set forth in the Agreement.

§ 1.6.2 Notice of Claims as provided in Section 15.1.3 shall be provided in writing and shall be deemed to have been duly served only if delivered to the designated representative of the party to whom the notice is addressed by certified or registered mail, or by courier providing proof of delivery.

§ 1.7 Digital Data Use and Transmission
The parties shall agree upon protocols governing the transmission and use of Instruments of Service or any other information or documentation in digital form. The parties will use AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, to establish the protocols for the development, use, transmission, and exchange of digital data.



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                                   (1232098565)

11

§ 1.8 Building Information Models Use and Reliance
Any use of, or reliance on, all or a portion of a building information model without agreement to protocols governing the use of, and reliance on, the information contained in the model and without having those protocols set forth in AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, and the requisite AIA Document G202™–2013, Project Building Information Modeling Protocol Form, shall be at the using or relying party's sole risk and without liability to the other party and its contractors or consultants, the authors of, or contributors to, the building information model, and each of their agents and employees.

**ARTICLE 2    OWNER**
§ 2.1 General
§ 2.1.1 The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

§ 2.1.2 The Owner shall furnish to the Contractor, within fifteen (15) days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of, or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

§ 2.2 Evidence of the Owner's Financial Arrangements

**[INTENTIONALLY OMITTED]**

§ 2.2.1 Prior to commencement of the Work and upon written request by the Contractor, the Owner shall furnish to the Contractor reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. The Contractor shall have no obligation to commence the Work until the Owner provides such evidence. If commencement of the Work is delayed under this Section 2.2.1, the Contract Time shall be extended appropriately.

§ 2.2.2 Following commencement of the Work and upon written request by the Contractor, the Owner shall furnish to the Contractor reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract only if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due; or (3) a change in the Work materially changes the Contract Sum. If the Owner fails to provide such evidence, as required, within fourteen days of the Contractor's request, the Contractor may immediately stop the Work and, in that event, shall notify the Owner that the Work has stopped. However, if the request is made because a change in the Work materially changes the Contract Sum under (3) above, the Contractor may immediately stop only that portion of the Work affected by the change until reasonable evidence is provided. If the Work is stopped under this Section 2.2.2, the Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shutdown, delay and start-up, plus interest as provided in the Contract Documents.

§ 2.2.3 After the Owner furnishes evidence of financial arrangements under this Section 2.2, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ 2.2.4 Where the Owner has designated information furnished under this Section 2.2 as "confidential," the Contractor shall keep the information confidential and shall not disclose it to any other person. However, the Contractor may disclose "confidential" information, after seven (7) days' notice to the Owner, where disclosure is required by law, including a subpoena or other form of compulsory legal process issued by a court or governmental entity, or by court or arbitrator(s) order. The Contractor may also disclose "confidential" information to its employees, consultants, sureties, Subcontractors and their employees, Sub-subcontractors, and others who need to know the content of such information solely and exclusively for the Project and who agree to maintain the confidentiality of such information.

§ 2.3 Information and Services Required of the Owner
§ 2.3.1 Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the The Owner shall secure and pay for necessary permits, approvals,

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                              (1232096565)

Init.



**12**

easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

§ 2.3.2 ~~The Owner shall retain an architect lawfully licensed to practice architecture, or an entity lawfully practicing architecture, in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.~~ [INTENTIONALLY OMITTED]

§ 2.3.3 ~~If the employment of the Architect terminates, the Owner shall employ a successor to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.~~ [INTENTIONALLY OMITTED]

§ 2.3.4 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 2.3.5 The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

§ 2.3.6 Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

§ 2.4 Owner's Right to Stop the Work
If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

§ 2.5 Owner's Right to Carry Out the Work
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ~~ten-day~~ ten (10) day period after receipt of notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such default or neglect. ~~Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect and the Architect~~ The Owner may, pursuant to Section 9.5.1, withhold or nullify a Certificate for Payment in whole or in part, to the extent reasonably necessary to reimburse the Owner for the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the ~~Architect's~~ additional services of any professional consultants made necessary by such default, neglect, or failure. If current and future payments are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner. If the Contractor disagrees with the actions of the ~~Owner or the Architect,~~ Owner, or the amounts claimed as costs to the Owner, the Contractor may file a Claim pursuant to Article 15.

ARTICLE 3   CONTRACTOR
§ 3.1 General
§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

§ 3.1.3 The Contractor shall not be relieved of its obligations to perform the Work in accordance with the Contract Documents ~~either~~ (i) by activities or duties of the Architect in the Architect's administration of the Contract, ~~or~~ (ii) by


Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283185 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                   (1232006565)

13

tests, inspections or approvals required or performed by persons or entities other than the Contractor, or (iii) by approvals, inspections, evaluations of the Work, periodic observations of the Work and status thereof as set forth in written monthly reports or other written evaluations, of the status of the Work and Contractor's performance thereof, made or prepared, required, or performed by Owner, Owner's consultants, Architect, Lender's consultants, other third-party inspection or evaluation consultants, Owner's geotechnical or other engineer, or any other persons or entities other than the Contractor. Contractor shall be solely liable for any damages resulting from or arising out of defects or deficiencies in the Work (except for those inherent in the quality of the Work the Contract Documents require or permit), unless Owner expressly directs Contractor to perform such defective or deficient Work and Contractor files a written objection thereto with the Owner prior to the performance of the Work in question.

**§ 3.2.2 Review of Contract Documents and Field Conditions by Contractor**
**§ 3.2.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed, and correlated personal observations with requirements of the Contract Documents.

**§ 3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.3.4, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect Owner any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect Owner may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents.

**§ 3.2.3** ~~The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.~~ If Contractor or any member of its organization, or any of its Subcontractors subsequently discovers any error, inconsistency or omission in the Contract Documents that could materially and adversely impact either the cost or timing of construction or the quality of the Work, Contractor shall at once report to Owner and Architect such error, inconsistency or omission before proceeding with the Work. Architect will take such notice under consideration and within a reasonable time advise Owner and Contractor of any correction required as a result of such error, inconsistency, or omission. Any correction recommended by Architect shall be subject to Owner's prior approval. Contractor agrees that if it performs any construction activity that is materially and adversely affected by any error, inconsistency, or omission in the Contract Documents, which error, inconsistency, or omission Contractor either recognized in advance or reasonably should have recognized in advance without notifying in advance Owner and Architect as required by this Section 3.2.3, Contractor shall be responsible for, and bear the cost of, the correction of such construction activity.

**§ 3.2.4** ~~If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall submit Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner, subject to Section 15.1.7, as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the~~ Contractor shall take field measurements and verify field conditions and shall carefully compare such field measurements and conditions and other information known to Contractor with the Contract Documents and other information provided it by Owner and Architect before commencing the Work. Any errors, inconsistencies, or omissions it discovers shall be reported to Owner and Architect before proceeding with the Work. Architect will take such notice under consideration and within a reasonable time advise Owner and Contractor of any modification to the Contract Documents recommended as a result of such error, inconsistency, or omission. Any modification recommended by Architect shall be subject to Owner's prior written approval. Contractor agrees that if it performs any construction activity that is materially and adversely affected by any error, inconsistency or omission in the field conditions, which error, inconsistency or omission Contractor either recognized in advance or reasonably should have recognized in advance without notifying in advance Owner and Architect as required by this Section 3.2.4. Contractor shall be responsible for, and bear the cost of, the correction of such construction activity. If Contractor follows

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                      (1232098585)



**14**

Owner's direction relating to any error, inconsistency, or omission. Contractor shall not be liable to ~~the Owner or Architect~~ for damages resulting from such errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

**§ 3.3 Supervision and Construction Procedures**
**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences, and procedures, and for coordinating all portions of the Work under the Contract. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences, or procedures, the Contractor shall evaluate the jobsite safety thereof and shall be solely responsible for the jobsite safety of such means, methods, techniques, sequences, or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely notice to the Owner and Architect, and shall propose alternative means, methods, techniques, sequences, or procedures. The Architect shall evaluate the proposed alternative solely for conformance with the design intent for the completed construction. Unless the Architect objects to the Contractor's proposed alternative, the Contractor shall perform the Work using its alternative means, methods, techniques, sequences, or procedures.

**§ 3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

**§ 3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

**§ 3.3.4** Contractor shall be obligated to undertake and perform proper due diligence with respect to the identification, marking and location of existing Utilities, including compliance in all applicable respects with any and all laws or requirements of any authorities having jurisdiction over the location of the Project, including the "call before you dig" GA811 procedures found at www.ga811.org. Assuming compliance with the foregoing, any unmarked or unidentified utility, water, gas or sewer line, conduit, duct bank, fiber optic cable, telephone, telegraph or electric wire or cable ("Utilities") broken, damaged or cut by the Contractor, Subcontractors or any of their respective agents, employees or anyone for whose acts/omissions they are or may be liable, excluding work performed by utility company or city contractors, shall be replaced by the Contractor and the cost of performing such work shall be reimbursed as a Cost of the Work within thirty (30) days after Contractor provides Owner with invoices for the cost of performing such work. In the event such damage occurs, Contractor shall notify Owner in writing promptly but in all cases within twenty-four (24) hours after it occurs. Damage to marked and identified Utilities caused by Contractor, Subcontractors or any of their respective agents, employees or anyone for whose acts/omissions they are or may be liable shall be repaired at Contractor's sole cost. Any damage caused by work performed by a utility company or city contractors shall, upon Owner's prior approval, be repaired or replaced by Contractor, and, if such repair or replacement is performed by Contractor, shall be included in a Change Order as an increase to the Cost of the Work. Repairs shall be made immediately and no other affected work shall be performed until all breaks or damage has been repaired and service to the affected Utility restored.

**§ 3.4 Labor and Materials**
**§ 3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**§ 3.4.2** Except in the case of minor changes in the Work approved by the Architect in accordance with Section 3.12.8 or ordered by the Architect in accordance with Section 7.4, the Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order or Construction Change Directive.

 AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                              (1232006565)

**§ 3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

**§ 3.5 Warranty**
**§ 3.5.1** The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**§ 3.5.2** All material, equipment, or other special warranties required by the Contract Documents shall be issued in the name of the Owner, or shall be transferable to the Owner, and shall commence in accordance with Section 9.8.4.

**§ 3.6 Taxes**
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

**§ 3.7 Permits, Fees, Notices and Compliance with Laws**
**§ 3.7.1** ~~Unless otherwise provided in the Contract Documents, the Contractor~~ The Owner shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded.

**§ 3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work.

**§ 3.7.3** ~~If the Contractor performs Work knowing it~~ Except as otherwise provided in this Agreement or if instructed by Owner, if Contractor, or any of its Subcontractors or Sub-subcontractors, performs Work that Contractor knows to be contrary to applicable laws, statutes, ordinances, ~~codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.~~ building codes, rules, and regulations, or covenants, conditions, or restrictions, Contractor shall bear the costs attributable to the correction thereof or related thereto, including but not limited to attorney fees incurred in connection with such correction and all fines and penalties assessed as a result thereof.

**§ 3.7.4 Concealed or Unknown Conditions**
If the Contractor knowingly encounters and recognizes conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the ~~Architect~~ Owner's geotechnical engineer before conditions are disturbed and in no event later than ~~14~~ fourteen (14) days after first observance of the conditions. The ~~Architect~~ Owner's geotechnical engineer will promptly investigate such conditions and, if ~~the Architect~~ he/she determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend that an equitable adjustment be made in the Contract Sum or Contract Time, or both. If the ~~Architect~~ Owner's geotechnical engineer determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the ~~Architect~~ he/she shall promptly notify the Owner and Contractor, stating the reasons. If either party disputes the ~~Architect's~~ Owner's geotechnical engineer's determination or recommendation, that party may submit a Claim as provided in Article 15.

**§ 3.7.5** If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:36 ET on 02/01/2022 under Order No.2114263155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                                (1232096585)

suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.

### § 3.8 Allowances
§ 3.8.1 The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

§ 3.8.2 Unless otherwise provided in the Contract Documents,
.1      allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;
.2      Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit, and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and
.3      whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

§ 3.8.3 Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

### § 3.9 Superintendent
§ 3.9.1 The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

§ 3.9.2 The Contractor, as soon as practicable after award of the Contract, shall notify the Owner and Architect of the name and qualifications of a proposed superintendent. Within 14 fourteen (14) days of receipt of the information, the Architect may notify the Contractor, stating whether the Owner or the Architect (1) has reasonable objection to the proposed superintendent or (2) requires additional time for review. Failure of the Architect to provide notice within the 14-day period shall constitute notice of no reasonable objection.

§ 3.9.3 The Contractor shall not employ a proposed superintendent to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent without the ~~Owner's consent, which shall not unreasonably be withheld or delayed~~ notification to Owner.

### § 3.10 Contractor's Construction and Submittal Schedules
§ 3.10.1 ~~The Contractor, promptly after being awarded the Contract, shall submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall contain detail appropriate for the Project, including (1) the date of commencement of the Work, interim schedule milestone dates, and the date of Substantial Completion, (2) an apportionment of the Work by construction activity, and (3) the time required for completion of each portion of the Work. The schedule shall provide for the orderly progression of the Work to completion and shall not exceed time limits current under the Contract Documents. The schedule shall be revised at appropriate intervals as required by the conditions of the Work and Project.~~ As part of the Contract Documents is a Schedule of Construction (or will be later provided and agreed upon by the parties). Except as provided in this Agreement to the contrary, the construction schedule shall not exceed time limits current under the Contract Documents, shall be revised as required herein and at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, shall provide for expeditious and practicable execution of the Work, and shall not be modified or extended without the prior written approval of Owner and Architect. The schedule shall be updated every thirty (30) days and submitted to Architect with Contractor's Applications for Payment. Each schedule shall contain a comparison of actual progress with the estimated progress for such point in time stated in the original schedule. If any schedule submitted sets forth a date for Substantial Completion of the Work or any phase of the Work beyond the Date(s) of Substantial Completion established in the Contract (as the same may be extended as provided in the Contract Documents), then Contractor shall submit to Architect and Owner for their review and approval a narrative description of the basis for necessary



Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                (1232096585)

17

extension of such Date(s) of Substantial Completion together with a statement of the means and methods that Contractor intends to employ to expedite the progress of the Work to ensure timely completion of the various phases of the Work as well as the totality of the Work. To ensure such timely completion, Contractor shall take all necessary action including, without limitation, increasing the number of personnel and labor on the Project and implementing overtime and double shifts. In that event, Contractor shall not be entitled to an adjustment in the Contract Sum or the schedule, unless such delays are as a result of circumstances beyond the control of Contractor.

§ 3.10.2 The Contractor, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, shall submit a submittal schedule for the Architect's approval. The Architect's approval shall not be unreasonably delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, or fails to provide submittals in accordance with the approved submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

§ 3.10.3 The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

§ 3.11 Documents and Samples at the Site
The Contractor shall make available, at the Project site, the Contract Documents, including Change Orders, Construction Change Directives, and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and the approved Shop Drawings, Product Data, Samples, and similar required submittals. These shall be in electronic form or paper copy, available to the Architect and Owner, and delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.

§ 3.12 Shop Drawings, Product Data and Samples
§ 3.12.1 Shop Drawings are drawings, diagrams, schedules, and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier, or distributor to illustrate some portion of the Work.

§ 3.12.2 Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams, and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

§ 3.12.3 Samples are physical examples that illustrate materials, equipment, or workmanship, and establish standards by which the Work will be judged.

§ 3.12.4 Shop Drawings, Product Data, Samples, and similar submittals are not Contract Documents. Their purpose is to demonstrate how the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

§ 3.12.5 The Contractor shall review for compliance with the Contract Documents, approve, and submit to the Architect, Shop Drawings, Product Data, Samples, and similar submittals required by the Contract Documents, in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of Separate Contractors.

§ 3.12.6 By submitting Shop Drawings, Product Data, Samples, and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                          (1232096565)

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples, or similar submittals, until the respective submittal has been approved by the Architect.

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from the requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples, or similar submittals, unless the Contractor has specifically notified the Architect of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples, or similar submittals, by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples, or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such notice, the Architect's approval of a resubmission shall not apply to such revisions.

**§ 3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences, and procedures. The Contractor shall not be required to provide professional services in violation of applicable law.

**§ 3.12.10.1** If professional design services or certifications by a design professional related to systems, materials, or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall be entitled to rely upon the adequacy and accuracy of the performance and design criteria provided in the Contract Documents. The Contractor shall cause such services or certifications to be provided by an appropriately licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings, and other submittals prepared by such professional. Shop Drawings, and other submittals related to the Work, designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy and accuracy of the services, certifications, and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor the performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review and approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents.

**§ 3.12.10.2** If the Contract Documents require the Contractor's design professional to certify that the Work has been performed in accordance with the design criteria, the Contractor shall furnish such certifications to the Architect at the time and in the form specified by the Architect.

**§ 3.13 Use of Site**
The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, lawful orders of public authorities, and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

**§ 3.14 Cutting and Patching**
**§ 3.14.1** The Contractor shall be responsible for cutting, fitting, or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting, or patching shall be restored to the condition existing prior to the cutting, fitting, or patching, unless otherwise required by the Contract Documents.

**§ 3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or Separate Contractors by cutting, patching, or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter construction by the Owner or a Separate Contractor except with written consent of the Owner and of the Separate Contractor. Consent shall not be unreasonably withheld. The Contractor shall not unreasonably ~~withhold,~~ withhold from the Owner or a Separate Contractor, its consent to cutting or otherwise altering the Work.



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114253155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                    (1232096585)

19

**§ 3.15 Cleaning Up**
**§ 3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials and rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery, and surplus materials from and about the Project.

**§ 3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the Owner shall be entitled to reimbursement from the Contractor.

**§ 3.16 Access to Work**
The Contractor shall provide the Owner and Architect with access to the Work in preparation and progress wherever located.

**§ 3.17 Royalties, Patents and Copyrights**
The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for defense or loss when a particular design, process, or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications, or other documents prepared by the Owner or Architect. However, if an infringement of a copyright or patent is discovered by, or made known to, the Contractor, the Contractor shall be responsible for the loss unless the information is promptly furnished to the Architect.

**§ 3.18 Indemnification**
**§ 3.18.1** To the fullest extent permitted by law, the Contractor shall <u>defend,</u> indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, ~~regardless of whether or not~~ but not to the extent such claim, damage, loss, or expense is ~~caused in part by a party indemnified hereunder.~~ in whole or in part by negligent, willful, or intentional acts or omissions of Owner, or anyone directly or indirectly employed by Owner or anyone for whose acts Owner may be liable. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of defense or indemnity that would otherwise exist as to a party or person described in this Section 3.18.

**§ 3.18.2** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, the ~~indemnification obligation~~ defense and indemnification obligations under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation, or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

~~**ARTICLE 4    ARCHITECT**~~
~~**§ 4.1 General**~~
~~**§ 4.1.1** The Architect is the person or entity retained by the Owner pursuant to Section 2.3.2 and identified as such in the Agreement.~~

~~**§ 4.1.2** Duties, responsibilities, and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified, or extended without written consent of the Owner, Contractor, and Architect. Consent shall not be unreasonably withheld.~~

~~**§ 4.2 Administration of the Contract**~~
~~**§ 4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate for Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.~~



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                              (1232096565)

§ 4.2.2 The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents.

§ 4.2.3 On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and promptly report to the Owner (1) known deviations from the Contract Documents, (2) known deviations from the most recent construction schedule submitted by the Contractor, and (3) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of, and will not be responsible for acts or omissions of, the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

§ 4.2.4 Communications
The Owner and Contractor shall include the Architect in all communications that relate to or affect the Architect's services or professional responsibilities. The Owner shall promptly notify the Architect of the substance of any direct communications between the Owner and the Contractor otherwise relating to the Project. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and suppliers shall be through the Contractor. Communications by and with Separate Contractors shall be through the Owner. The Contract Documents may specify other communication protocols.

§ 4.2.5 Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

§ 4.2.6 The Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.4.2 and 13.4.3, whether or not the Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ 4.2.7 The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data, and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5, and 3.12. The Architect's review shall not constitute approval of safety precautions or of any construction means, methods, techniques, sequences, or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 4.2.8 The Architect will prepare Change Orders and Construction Change Directives, and may order minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

§ 4.2.9 The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:    (1232096565)

§ 4.2.10 If the Owner and Architect agree, the Architect will provide one or more Project representatives to assist in carrying out the Architect's responsibilities at the site. The Owner shall notify the Contractor of any change in the duties, responsibilities and limitations of authority of the Project representatives.

§ 4.2.11 The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

§ 4.2.12 Interpretations and decisions of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either, and will not be liable for results of interpretations or decisions rendered in good faith.

§ 4.2.13 The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

§ 4.2.14 The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

§ 3.18.3 Contractor shall not permit any mechanics' lien, claim of lien, or stop notice to be recorded or filed in connection with the Project unless it is the result of Owner's failure to comply with the Agreement. If any mechanics' lien or claim of lien is recorded, or stop notice filed, and if Contractor does not cause such lien or stop notice to be released or discharged (by payment, bonding or otherwise) within thirty (30) days of the recording or filing of such mechanics' lien, claim of lien, or stop notice, Owner shall have the right (but not the obligation) to pay all sums necessary to obtain such release or discharge and credit all amounts so paid against the Contract Sum. Lien bonds shall be in the amount of two hundred percent (200%) of the amount claimed in the lien, and otherwise in form and substance as required by Arkansas law. Owner, at Owner's sole discretion, may defend against such claims of mechanics' lien, claim of lien, and/or stop notice, and Contractor shall indemnify and hold harmless Owner from all costs and expenses, including attorney fees arising out of such liens.

## ARTICLE 4    INTENTIONALLY DELETED

## ARTICLE 5    SUBCONTRACTORS
### § 5.1 Definitions
§ 5.1.1 A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a Separate Contractor or the subcontractors of a Separate Contractor.

§ 5.1.2 A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

§ 5.1.3 Nothing contained in the Contract Documents shall create any contractual relation between Owner or Architect and any Subcontractor or sub-subcontractor.

### § 5.2 Award of Subcontracts and Other Contracts for Portions of the Work
§ 5.2.1 Unless otherwise stated in the Contract Documents, the Contractor, as soon as practicable after award of the Contract, shall notify the Owner and Architect of the persons or entities proposed for each principal portion of the Work, including those who are to furnish materials or equipment fabricated to a special design. Within 14 fourteen (14) days of receipt of the information, the Architect will notify the Contractor whether the Owner or the Architect (1) has reasonable objection to any such proposed person or entity or (2) requires additional time for review. Failure of the Architect to provide notice within the 14-day period shall constitute notice of no reasonable objection.


AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114263155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                              (1232096565)

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**§ 5.2.4** The Contractor shall not substitute a Subcontractor, person, or entity for one previously selected if the Owner or Architect makes reasonable objection to such substitution.

**§ 5.2.5** Proposed Subcontractors and Sub-subcontractors shall be established, reputable firms of recognized standing with a record of successful and satisfactory past performance with the type of work and/or items proposed to be provided by them.

**§ 5.3 Subcontractual Relations**
By appropriate written agreement, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work that the Contractor, by these Contract Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies, and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§ 5.3.1** Notwithstanding any provision of Section 5.3, any part of the Work performed or to be performed by a Subcontractor or its Sub-subcontractor shall be pursuant to a written subcontract between Contractor and such Subcontractor, or, in the case of work being done by a Sub-subcontractor, between the Subcontractor and its Sub-subcontractor, which shall be on a form of subcontract satisfactory to Owner and Architect in all respects. Each such subcontract shall contain provisions that:

    **.1**    Require that the work being performed pursuant to such subcontract or sub-subcontract, as the case may be, be performed in accordance with the requirements of the Contract Documents.

    **.2**    Require submission of applications for payment in a form reasonably approved by Owner, together with clearly defined invoices and billings supporting such applications together with conditional lien waivers for Work completed by it and by its Sub-subcontractors (in the form(s) included collectively in Exhibit D to the Agreement) as a condition to the disbursement of any progress payment next due and owing to it.

    **.3**    Waive all rights the Subcontractor or Sub-subcontractor may have against Owner for damages caused by fire or other perils covered by the insurance described in the Contract Documents.

    **.4**    Require the Subcontractor or the Sub-subcontractor, as the case may be, to maintain insurance coverage in the same amounts and with the same coverage required by Contractor under the Contract Documents, and to file certificates of such coverage with Contractor.


AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                (1232096565)

23

    .5    Require each Subcontractor and Sub-subcontractor to furnish to Contractor or Subcontractor, as the case may be, in a timely fashion all information necessary for the preparation and submission of the reports required herein.

    .6    Require that each Subcontractor continue to perform under its subcontract if the Contract is terminated and if Owner takes an assignment of the subcontract and requests the Subcontractor to continue such performance, but only if Contractor is released from all liability for the acts and omissions of such Subcontractors occurring after such termination.

**§ 5.3.2** Except with Owner's prior written consent, Contractor shall not self-perform any portion of the Work or enter into any contract, subcontract, purchase order, or other contractual agreement for the furnishing of any portion of the materials, services, equipment or Work with any entity related to or affiliated with Contractor or with respect to which Contractor has direct or indirect ownership or control.

**§ 5.4 Contingent Assignment of Subcontracts**
**§ 5.4.1** ~~Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that~~
    ~~.1~~    ~~assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor; and~~
    ~~.2~~    ~~assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.~~

In the event Owner terminates this Agreement as set forth herein, Contractor shall assign to Owner (and Owner's lender, if any) all its rights, title and interest in any and all subcontracts and purchase orders now existing or hereinafter entered into by Contractor for performance of any part of the Work or the provision of any of the materials to be used therein, which assignment will be effective upon acceptance by Owner in writing and then only as to those subcontracts and purchase orders that Owner designates in said writing. It is agreed and understood that Owner may accept said assignment at any time during the course of construction prior to the Final Completion of the Work. Upon such acceptance by Owner, (a) Contractor shall promptly furnish to Owner the originals of the designated subcontracts and purchase orders, and (b) Owner shall only be required to compensate each designated Subcontractor or supplier for compensation accruing to such Subcontractor or Supplier subsequent to the date of Owner's acceptance of assignment of such subcontract or purchase order. Owner shall not be liable for any amounts due and owing by Contractor to each designated Subcontractor or supplier for work performed or material supplied prior to Owner's acceptance of assignment of each such subcontract or purchase order, it being agreed that such amounts shall constitute a debt between such parties and Contractor. It is further agreed that each such assignment is part of the consideration to Owner for entering into the Contract with Contractor and may not be withdrawn prior to Final Completion of the Work. When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract. When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.

**§ 5.4.2** Upon such assignment, if the Work has been suspended for more than ~~30~~ thirty (30) days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension. In the event that Owner accepts the assignment of any subcontract, the Owner's obligations and liability under such subcontract shall not begin to accrue until the effective date of such assignment to the Owner (as evidenced in a written notice delivered by the Owner to the applicable subcontractor whereby the assignment is accepted); and the Owner shall not be liable or responsible for any obligations or liabilities accruing under the subcontract prior to such effective date of assignment.

**§ 5.4.3** Upon assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

**§ 5.5 PAYMENTS TO SUBCONTRACTORS**
**§ 5.5.1** Contractor shall pay each Subcontractor, upon receipt of payment and within the timing required by applicable law or as otherwise agreed to by Contractor and each Subcontractor, an amount equal to the percentage of completion allowed to Contractor on account of such Subcontractor's work, less the percentage retained from payments to Contractor. Contractor shall also require each Subcontractor to make similar payments to its Sub-subcontractors.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:           (1232096565)


Init

24

**§ 5.5.2** If payment is not made for any cause that is the fault of Contractor and not the fault of a particular Subcontractor, Contractor shall pay the Subcontractor, on demand made at any time after the payment should otherwise have been made, for its Work to the extent completed, less the retained percentage; provided, however, that if Contractor has provided in its subcontract with a Subcontractor that payments thereunder are conditioned upon Contractor's receipt of payments under this Contract, then Contractor will be required to make payment to such Subcontractor only to the extent that Contractor has been paid by Owner for the scope of Work in question.

**§ 5.5.3** Contractor shall pay each Subcontractor a just share of any insurance monies received by Contractor under Article 11, and it shall require each Subcontractor to make similar payments to its Sub-subcontractors.

**§ 5.5.4** Owner shall have no obligation to pay or to see to the payment of any monies to any Subcontractors. Nothing contained in Article 5 shall be deemed to create any contractual relationship between Owner and any Subcontractor or to create any rights of any Subcontractor against Owner.

**§ 5.5.5** Owner, or Owner's lender if applicable, may at any time issue joint checks to the Contractor and its Subcontractors for work performed, less applicable retainage.

**ARTICLE 6    CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
**§ 6.1 Owner's Right to Perform Construction and to Award Separate Contracts**
**§ 6.1.1** The term "Separate Contractor(s)" shall mean other contractors retained by the Owner under separate agreements. The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and with Separate Contractors retained under Conditions of the Contract substantially similar to those of this Contract, including those provisions of the Conditions of the Contract related to insurance and waiver of subrogation.

**§ 6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**§ 6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each Separate Contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with any Separate Contractors and the Owner in reviewing their construction schedules. The Contractor shall make any revisions to its construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, Separate Contractors, and the Owner until subsequently revised.

**§ 6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces or with Separate Contractors, the Owner or its Separate Contractors shall have the same obligations and rights that the Contractor has under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6, and Articles 10, 11, and 12.

**§ 6.2 Mutual Responsibility**
**§ 6.2.1** The Contractor shall afford the Owner and Separate Contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

**§ 6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a Separate Contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly notify the Architect of apparent discrepancies or defects in the construction or operations by the Owner or Separate Contractor that would render it unsuitable for proper execution and results of the Contractor's Work. Failure of the Contractor to notify the Architect of apparent discrepancies or defects prior to proceeding with the Work shall constitute an acknowledgment that the Owner's or Separate Contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work. The Contractor shall not be responsible for discrepancies or defects in the construction or operations by the Owner or Separate Contractor that are not apparent.



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1232096585)

§ 6.2.3 The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a Separate Contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a Separate Contractor's delays, improperly timed activities, damage to the Work or defective construction.

§ 6.2.4 The Contractor shall promptly remedy damage that the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner or Separate Contractor as provided in Section 10.2.5.

§ 6.2.5 The Owner and each Separate Contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

### § 6.3 Owner's Right to Clean Up
If a dispute arises among the Contractor, Separate Contractors, and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

### ARTICLE 7    CHANGES IN THE WORK
### § 7.1 General
§ 7.1.1 Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor, and Architect. A Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor. An order for a minor change in the Work may be issued by the Architect alone.

§ 7.1.3 Changes in the Work shall be performed under applicable provisions of the Contract Documents. The Contractor shall proceed promptly with changes in the Work, unless otherwise provided in the Change Order, Construction Change Directive, or order for a minor change in the Work.

### § 7.2 Change Orders
§ 7.2.1 A Change Order is a written instrument prepared by the ~~Architect~~ Owner or Contractor, and signed by the ~~Owner, Contractor, and Architect~~ Owner and Contractor stating their agreement upon all of the following:
> .1    The change in the Work;
> .2    The amount of the adjustment, if any, in the Contract Sum; and
> .3    The extent of the adjustment, if any, in the Contract Time.

### § 7.3 Construction Change Directives
§ 7.3.1 A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions, or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

§ 7.3.2 A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

§ 7.3.3 If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:
> .1    Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
> .2    Unit prices stated in the Contract Documents or subsequently agreed upon;
> .3    Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or
> .4    As provided in Section 7.3.4.


AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                          (1232098565)

**§ 7.3.4** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.4 shall be limited to the following:

    .1   Costs of labor, including applicable payroll taxes, fringe benefits required by agreement or custom, workers' compensation insurance, and other employee costs approved by the Architect;

    .2   Costs of materials, supplies, and equipment, including cost of transportation, whether incorporated or consumed;

    .3   Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

    .4   Costs of premiums for all bonds and insurance, permit fees, and sales, use, or similar taxes, directly related to the change; and

    .5   Costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.5** If the Contractor disagrees with the adjustment in the Contract Time, the Contractor may make a Claim in accordance with applicable provisions of Article 15.

**§ 7.3.6** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**§ 7.3.7** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

**§ 7.3.10** When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

**§ 7.4 Minor Changes in the Work**
The Architect may order minor changes in the Work that are consistent with the intent of the Contract Documents and do not involve an adjustment in the Contract Sum or an extension of the Contract Time. The Architect's order for minor changes shall be in writing. If the Contractor believes that the proposed minor change in the Work will affect the Contract Sum or Contract Time, the Contractor shall notify the Architect and shall not proceed to implement the change in the Work. If the Contractor performs the Work set forth in the Architect's order for a minor change without prior notice to the Architect that such change will affect the Contract Sum or Contract Time, the Contractor waives any adjustment to the Contract Sum or extension of the Contract Time.



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1232096565)

**ARTICLE 8   TIME**
**§ 8.1 Definitions**
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

**§ 8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

**§ 8.2 Progress and Completion**
**§ 8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement, the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.2.2** The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, commence the Work prior to the effective date of insurance required to be furnished by the Contractor and Owner.

**§ 8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

**§ 8.3 Delays and Extensions of Time**
**§ 8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by (1) an act or neglect of the Owner or Architect, of an employee of either, or of a Separate Contractor; (2) by changes ordered in the Work; (3) by labor disputes, fire, unusual delay in deliveries, unavoidable casualties, ~~adverse weather conditions documented in accordance with Section 15.1.6.2,~~ or other causes beyond the Contractor's ~~control;~~ control (adverse weather excluded); (4) by delay authorized by the Owner pending mediation and binding dispute resolution; or (5) by other causes that the Contractor asserts, and the ~~Architect~~ Owner reasonably determines, justify delay, then the Contract Time shall be extended for such reasonable time as the ~~Architect may~~ Owner may reasonably determine.

**§ 8.3.2** Claims relating to time shall be made in accordance with applicable provisions of Article 15.

**§ 8.3.3** This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

**ARTICLE 9   PAYMENTS AND COMPLETION**
**§ 9.1 Contract Sum**
**§ 9.1.1** The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

**§ 9.1.2** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed so that application of such unit prices to the actual quantities causes substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 9.1.3** Owner shall have the right to withhold any payment due Contractor hereunder if and for so long as Contractor fails to perform any of Contractor's obligations under this Contract or is otherwise in default under any of the Contract Documents. However, Owner shall not be entitled to withhold more than the sum of (a) the amount that Owner reasonably estimates is necessary to cure any such default or failure of performance by Contractor and (b) the amount of the actual damages incurred by Owner as a result of such default or failure of performance by Contractor.

**§ 9.1.4** Notwithstanding anything to the contrary contained in the Contract Documents, Owner may withhold any payment to Contractor hereunder if and for so long as Contractor fails to perform any of its obligations hereunder, or otherwise is in default under any of the Contract Documents; provided, however, that any such holdback shall be limited to an amount sufficient in the reasonable opinion of Owner and Architect to cure any such default or failure of performance by Contractor. Owner shall have the right to withhold twice the amount of any claims of lien asserted or


Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114263155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                    (1232096565)

28

mechanics' liens filed against Owner's property until such time as Contractor shall have caused any such claim of lien or lien to be released, bonded against or satisfied as required by Section 3.18.3.

**§ 9.2 Schedule of Values**
Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit a schedule of values to the Architect before the first Application for Payment, allocating the entire Contract Sum to the various portions of the Work. The schedule of values shall be prepared in the form, and supported by the data to substantiate its accuracy, required by the Architect. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment. Any changes to the schedule of values shall be submitted to the Architect and supported by such data to substantiate its accuracy as the Architect may require, and unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's subsequent Applications for Payment.

**§ 9.3 Applications for Payment**
**§ 9.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2, for completed portions of the Work. The application shall be notarized, if required, and supported by all data substantiating the Contractor's right to payment that the Owner or Architect ~~reasonably~~ require, such as copies of requisitions, and releases and waivers of liens from Subcontractors and ~~suppliers,~~ suppliers (see Exhibit D to the Agreement), and shall reflect retainage if provided for in the Contract Documents.

**§ 9.3.1.1** As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**§ 9.3.1.2** Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage, and transportation to the site, for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information, and belief, be free and clear of liens, claims, security interests, or encumbrances, in favor of the Contractor, Subcontractors, suppliers, or other persons or entities that provided labor, materials, and equipment relating to the Work.

**§ 9.4 Certificates for Payment**
**§ 9.4.1** The ~~Architect~~ Owner will, within seven (7) days after receipt of the Contractor's Application for Payment, either (1) issue ~~to the Owner~~ a Certificate for Payment in the full amount of the Application for Payment, with a copy to the Contractor; or (2) issue ~~to the Owner~~ a Certificate for Payment for such amount as the ~~Architect~~ Owner determines is properly due, and notify the Contractor ~~and Owner of the Architect's~~ Owner's reasons for withholding certification in part as provided in ~~Section 9.5.1;~~ Section 9.5.1 and/or Section 9.5.2; or (3) withhold certification of the entire Application for Payment, and notify the Contractor ~~and Owner~~ of the ~~Architect's~~ Owner's reason for withholding certification in whole as provided in ~~Section 9.5.1.~~ Section 9.5.1 or Section 9.5.2 and promptly provide Contractor with all documentation supporting Owner's reasons for withholding the certification.

**§ 9.4.2** The issuance of a Certificate for Payment ~~will constitute a representation by the Architect to the Owner, based on the Architect's~~ is based on the Owner's evaluation of the Work and the data in the Application for Payment, and Owner's representation that, to the best of the ~~Architect's~~ Owner's knowledge, information, and belief, the Work has

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                (1232096565)



Init.

progressed to the point indicated, the quality of the Work is in accordance with the Contract Documents, and that the Contractor is entitled to payment in the amount certified. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to ~~completion, Substantial Completion,~~ and to specific qualifications expressed by ~~the Architect. the Owner either at the time of issuance of any Certificate of Payment or at the issuance of the Certificate of Substantial Completion.__ However, the issuance of a Certificate for Payment will not be a representation that the ~~Architect Owner__ has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work; (2) reviewed construction means, methods, techniques, sequences, or procedures; (3) reviewed copies of requisitions received from Subcontractors and suppliers and other data requested ~~by the Owner~~ to substantiate the Contractor's right to payment; or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

### § 9.5 Decisions to Withhold Certification

§ 9.5.1 The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Owner cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of

 .1  defective Work not remedied;
 .2  third party claims filed or reasonable evidence indicating probable filing of such claims, unless security acceptable to the Owner is provided by the Contractor;
 .3  failure of the Contractor to make payments properly to Subcontractors or suppliers for labor, materials or equipment;
 .4  reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
 .5  damage to the Owner or a Separate Contractor;
 .6  reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
 .7  repeated failure to carry out the Work in accordance with the Contract Documents.

§ 9.5.2 ~~When either party disputes the__ In addition to the Architect's rights under Section 9.5.1, Owner may withhold payment to Contractor as may be necessary to protect Owner from loss for which the Contractor is responsible because of any of the circumstances described in subparagraphs .1 through .11 of Section 9.5.1. When Contractor disputes the Owner's or__ Architect's decision regarding a Certificate for Payment under Section 9.5.1, in whole or in part, ~~that party__ Contractor__ may submit a Claim in accordance with Article 15.

§ 9.5.3 When the reasons for withholding certification are removed, certification will be made for amounts previously ~~withheld.withheld and those amounts shall be due and payable to Contractor.__

§ 9.5.4 If the ~~Architect Owner__ withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or supplier to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, ~~the Owner shall notify the Architect and the__ Contractor shall reflect such payment on its next Application for Payment.

§ 9.5.5 If Contractor disputes any determination by the Owner with regard to any Certificate for Payment, Contractor shall nevertheless expeditiously continue to prosecute the Work, except as provided in Section 9.7.1.__

### § 9.6 Progress Payments

§ 9.6.1 After the ~~Architect has issued issuance of__ a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract ~~Documents, and shall so notify the Architect.Documents. Such payment by Owner shall not constitute approval or acceptance of any item of cost in the Application for Payment. No partial payment made by Owner shall be construed to be final acceptance or approval of that portion of the Work to which such partial payment relates or shall relieve Contractor of any of its obligations hereunder with respect thereto.__



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes: (1232098565)

**§ 9.6.2** The Contractor shall pay each Subcontractor, no later than seven (7) days after receipt of payment from the Owner, the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor from the Contractor lien waivers and Affidavits of Payment and of Release of Liens evidencing that the Contractor has properly paid Subcontractors and suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors and suppliers to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay, or to see to the payment of money to, a Subcontractor or supplier, except as may otherwise be required by law.

**§ 9.6.5** The Contractor's payments to suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors or provided by suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, create any fiduciary liability or tort liability on the part of the Contractor for breach of trust, or entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

**§ 9.6.8** Provided the Owner has fulfilled its payment obligations under the Contract Documents, the Contractor shall defend and indemnify the Owner from all loss, liability, damage or expense, including reasonable attorney's fees and litigation expenses, arising out of any lien claim or other claim for payment by any Subcontractor or supplier of any tier. Upon receipt of notice of a lien claim or other claim for payment, the Owner shall notify the Contractor. If approved by the applicable court, when required, the Contractor may substitute a surety bond lien bond (cash or surety) for the property against which the lien or other claim for payment has been asserted. asserted, in compliance with the requirements pertaining to such bonds set forth in Section 3.18.3.

**§ 9.7 Failure of Payment**
If the Architect Owner does not issue a Certificate for Payment, through no fault of the Contractor, within seven (7) days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven (7) days after the date established for such payment in the Contract Documents, the amount certified by the Architect or (or awarded by binding dispute resolution, resolution), then the Contractor may, upon seven (7) additional days' notice to the Owner and Architect, Owner, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shutdown, delay and start-up, plus interest as provided for in the Contract Documents. Notwithstanding the preceding sentence, Contractor shall not stop the Work during the pendency of a bona fide dispute between Owner and Contractor, so long as Owner has made all undisputed payments to Contractor in accordance with the payment provisions of the Contract, and/or is diligently working to resolve the dispute.

**§ 9.8 Substantial Completion**
**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.


**Init.**

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                     (1232096565)

§ 9.8.2 When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the ~~Architect~~ Owner a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

§ 9.8.3 Upon receipt of the Contractor's list, the ~~Architect~~ Owner will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the ~~Architect's~~ Owner's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the ~~Architect.~~ Owner. In such case, the Contractor shall then submit a request for another inspection by the ~~Architect~~ Owner to determine Substantial Completion.

§ 9.8.4 When the Work or designated portion thereof is substantially complete, the ~~Architect~~ Owner will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion; establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance; and fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ 9.8.5 The Certificate of Substantial Completion shall be submitted to the ~~Owner and~~ Contractor for ~~their~~ its written acceptance of responsibilities assigned to ~~them~~ it in the Certificate. Upon such acceptance, and consent of surety if any, the Owner shall make payment of retainage applying to the Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

§ 9.9 Partial Occupancy or Use
§ 9.9.1 The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the ~~Architect~~ Owner as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the ~~Architect.~~ Owner.

§ 9.9.2 Immediately prior to such partial occupancy or use, the ~~Owner, Contractor, and Architect~~ Owner and Contractor shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

§ 9.9.3 Unless otherwise agreed ~~upon,~~ upon by the parties in writing, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

§ 9.10 Final Completion and Final Payment
§ 9.10.1 Upon receipt of the Contractor's notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the ~~Architect~~ Owner will promptly make such inspection. When the ~~Architect finds~~ Owner finds, in its reasonable opinion, the Work acceptable under the Contract Documents and the Contract fully performed, the ~~Architect~~ Owner will promptly issue a final Certificate for Payment stating that to the best of the ~~Architect's~~ Owner's knowledge, information and belief, and on the basis of the ~~Architect's on-site visits and inspections,~~ Owner's on-site visits and inspections and the Contractor's representations set forth in its Applications for Payment, the Work has been completed in accordance with the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The ~~Architect's~~ issuance of the final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.


Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                    (1232098565)

§ 9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the ~~Architect~~ Owner (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect, (3) a written statement that the Contractor knows of no reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment, (5) documentation of any special warranties, such as manufacturers' warranties or specific Subcontractor warranties, and (6) if required by the Owner, other reasonable data establishing payment or satisfaction of obligations, such as receipts and releases and waivers of liens, claims, security interests, or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may either (i) furnish a bond satisfactory to the Owner and in compliance with the requirements of Section 3.18.3. to indemnify the Owner against such lien, claim, security interest, or ~~encumbrance.~~ encumbrance or (ii) provide Owner with Affidavits of Payment and of Release of Liens representing that the Subcontractor has been paid in full (Exhibit E to the Agreement). If a lien, claim, security interest, or encumbrance remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging the lien, claim, security interest, or encumbrance, including all costs and reasonable attorneys' fees.

§ 9.10.3 If, after Substantial Completion of the Work, ~~final completion~~ Final Completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the ~~Architect so~~ Owner so agrees and confirms, the Owner shall, upon application by the Contractor and certification ~~of~~ thereof by the ~~Architect, Owner,~~ and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed, corrected, and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of the surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the ~~Architect~~ Owner prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of Claims.

§ 9.10.4 The making of final payment shall constitute a waiver of Claims by the Owner except those arising from
 .1 liens, Claims, security interests, or encumbrances arising out of the Contract and unsettled;
 .2 latent defects and/or other failure of the Work to comply with the requirements of the Contract Documents;
 .3 terms of special warranties required by the Contract Documents; or
 .4 audits performed by the Owner, if permitted by the Contract Documents, after final payment.

§ 9.10.5 Acceptance of final payment by the Contractor, a Subcontractor, or a supplier, shall constitute a waiver of ~~claims~~ Claims/claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

§ 9.10.6 Owner reserves the right to cause any or all of the payments due under this Contract to be made by joint check and/or through a construction control account.

## ARTICLE 10 PROTECTION OF PERSONS AND PROPERTY
### § 10.1 Safety Precautions and Programs
The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract.

### § 10.2 Safety of Persons and Property
§ 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury, or loss to
 .1 employees on the Work and other persons who may be affected thereby;
 .2 the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody, or control of the Contractor, a Subcontractor, or a Sub-subcontractor; and
 .3 other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures, and utilities not designated for removal, relocation, or replacement in the course of construction.



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes: (1232096565)

33

§ 10.2.2 The Contractor shall comply with, and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities, bearing on safety of persons or property or their protection from damage, injury, or loss.

§ 10.2.3 The Contractor shall implement, erect, and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards; promulgating safety regulations; and notifying the owners and users of adjacent sites and utilities of the safeguards.

§ 10.2.4 When use or storage of explosives or other hazardous materials or equipment, or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ 10.2.5 The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3. The Contractor may make a Claim for the cost to remedy the damage or loss to the extent such damage or loss is attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

§ 10.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

§ 10.2.7 The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

§ 10.2.8 Injury or Damage to Person or Property
If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, notice of the injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 twenty-one (21) days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

§ 10.3 Hazardous Materials and Substances
§ 10.3.1 The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials or substances. If the Contractor knowingly encounters and recognizes a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and notify the Owner and Architect of the condition.

§ 10.3.2 Upon receipt of the Contractor's notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of the material or substance or who are to perform the task of removal or safe containment of the material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                       (1232096565)

34
1

Contract Sum shall be increased by the amount of the Contractor's reasonable additional costs of shutdown, delay, and start-up.

§ 10.3.3 To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, ~~Architect, Architect's consultants,~~ and agents and employees of any of them from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss, or expense is due to the fault or negligence of the party seeking indemnity.

§ 10.3.4 The Owner shall not be responsible under this Section 10.3 for hazardous materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be responsible for hazardous materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

§ 10.3.5 The Contractor shall reimburse the Owner for the cost and expense the Owner incurs (1) for remediation of hazardous materials or substances the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

§ 10.3.6 If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall reimburse the Contractor for all cost and expense thereby incurred.

§ 10.4 Emergencies
In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury, or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

ARTICLE 11    INSURANCE AND BONDS
§ 11.1 Contractor's Insurance and Bonds
§ 11.1.1 The Contractor shall purchase and maintain insurance of the types and limits of liability, containing the endorsements, and subject to the terms and conditions, as described in the Agreement or elsewhere in the Contract Documents. The Contractor shall purchase and maintain the required insurance from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located. The ~~Owner, Architect, and Architect's consultants~~ Owner shall be named as ~~additional insureds~~ an additional insured under the Contractor's commercial general liability policy or as otherwise described in the Contract Documents.

§ 11.1.2 The Contractor shall provide surety bonds of the types, for such penal sums, and subject to such terms and conditions as required by the Contract Documents. The Contractor shall purchase and maintain the required bonds from a company or companies lawfully authorized to issue surety bonds in the jurisdiction where the Project is located.

§ 11.1.3 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.

§ 11.1.4 Notice of Cancellation or Expiration of Contractor's Required Insurance. Within three (3) business days of the date the Contractor becomes aware of an impending or actual cancellation or expiration of any insurance required by the Contract Documents, the Contractor shall provide notice to the Owner of such impending or actual cancellation or expiration. Upon receipt of notice from the Contractor, the Owner shall, unless the lapse in coverage arises from an act or omission of the Owner, have the right to stop the Work until the lapse in coverage has been cured by the procurement of replacement coverage by the Contractor. The furnishing of notice by the Contractor shall not relieve the Contractor of any contractual obligation to provide any required coverage.


AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                  (1232098565)

35

§ 11.2 Owner's Insurance

§ 11.2.1 The Owner shall purchase and maintain insurance of the types and limits of liability, containing the endorsements, and subject to the terms and conditions, as described in the Agreement or elsewhere in the Contract Documents. The Owner shall purchase and maintain the required insurance from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located.

§ 11.2.2 Failure to Purchase Required Property Insurance. If the Owner fails to purchase and maintain the required property insurance, with all of the coverages and in the amounts described in the Agreement or elsewhere in the Contract Documents, the Owner shall inform the Contractor in writing prior to commencement of the Work. Upon receipt of notice from the Owner, the Contractor may delay commencement of the Work and may obtain insurance that will protect the interests of the Contractor, Subcontractors, and Sub-Subcontractors in the Work. When the failure to provide coverage has been cured or resolved, the Contract Sum and Contract Time shall be equitably adjusted. In the event the Owner fails to procure coverage, the Owner waives all rights against the Contractor, Subcontractors, and Sub-subcontractors to the extent the loss to the Owner would have been covered by the insurance to have been procured by the Owner. The cost of the insurance shall be charged to the Owner by a Change Order. If the Owner does not provide written notice, and the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain the required insurance, the Owner shall reimburse the Contractor for all reasonable costs and damages attributable thereto.

§ 11.2.3 Notice of Cancellation or Expiration of Owner's Required Property Insurance. Within three (3) business days of the date the Owner becomes aware of an impending or actual cancellation or expiration of any property insurance required by the Contract Documents, the Owner shall provide notice to the Contractor of such impending or actual cancellation or expiration. Unless the lapse in coverage arises from an act or omission of the Contractor: (1) the Contractor, upon receipt of notice from the Owner, shall have the right to stop the Work until the lapse in coverage has been cured by the procurement of replacement coverage by either the Owner or the Contractor; (2) the Contract Time and Contract Sum shall be equitably adjusted; and (3) the Owner waives all rights against the Contractor, Subcontractors, and Sub-subcontractors to the extent any loss to the Owner would have been covered by the insurance had it not expired or been cancelled. If the Contractor purchases replacement coverage, the cost of the insurance shall be charged to the Owner by an appropriate Change Order. The furnishing of notice by the Owner shall not relieve the Owner of any contractual obligation to provide required insurance.

§ 11.3 Waivers of Subrogation

§ 11.3.1 The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents, and employees, each of the other; (2) the Architect and Architect's consultants; consultants, if any; and (3) Separate Contractors, if any, and any of their subcontractors, sub-subcontractors, agents, and employees, for damages caused by fire, or other causes of loss, to the extent those losses are covered by property insurance required by the Agreement or other property insurance applicable to the Project, except such rights as they have to proceeds of such insurance. The Owner or Contractor, as appropriate, shall require similar written waivers in favor of the individuals and entities identified above from the Architect, Architect's consultants, Architect and Architect's consultants (if applicable), Separate Contractors, subcontractors, and sub-subcontractors. The policies of insurance purchased and maintained by each person or entity agreeing to waive claims pursuant to this section 11.3.1 shall not prohibit this waiver of subrogation. This waiver of subrogation shall be effective as to a person or entity (1) even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, (2) even though that person or entity did not pay the insurance premium directly or indirectly, or (3) whether or not the person or entity had an insurable interest in the damaged property.

§ 11.3.2 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, to the extent permissible by such policies, the Owner waives all rights in accordance with the terms of Section 11.3.1 for damages caused by fire or other causes of loss covered by this separate property insurance.

§ 11.4 Loss of Use, Business Interruption, and Delay in Completion Insurance

The Owner, at the Owner's option, may purchase and maintain insurance that will protect the Owner against loss of use of the Owner's property, or the inability to conduct normal operations, due to fire or other causes of loss. The

AIA Document A201® - 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:36 ET on 02/01/2022 under Order No.2114283185 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                      (1232098585)



Owner waives all rights of action against the Contractor ~~and Architect~~ for loss of use of the Owner's property, due to fire or other hazards however caused.

**§11.5 Adjustment and Settlement of Insured Loss**
**§ 11.5.1** A loss insured under the property insurance required by the Agreement shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.5.2. The Owner shall pay the Architect and Contractor their just shares of insurance proceeds received by the Owner, and by appropriate agreements the Architect and Contractor shall make payments to their consultants and Subcontractors in similar manner.

**§ 11.5.2** Prior to settlement of an insured loss, the Owner shall notify the Contractor of the terms of the proposed settlement as well as the proposed allocation of the insurance proceeds. The Contractor shall have ~~14~~ fourteen (14) days from receipt of notice to object to the proposed settlement or allocation of the proceeds. If the Contractor does not object, the Owner shall settle the loss and the Contractor shall be bound by the settlement and allocation. Upon receipt, the Owner shall deposit the insurance proceeds in a separate account and make the appropriate distributions. Thereafter, if no other agreement is made or the Owner does not terminate the Contract for convenience, the Owner and Contractor shall execute a Change Order for reconstruction of the damaged or destroyed Work in the amount allocated for that purpose. If the Contractor timely objects to either the terms of the proposed settlement or the allocation of the proceeds, the Owner may proceed to settle the insured loss, and any dispute between the Owner and Contractor arising out of the settlement or allocation of the proceeds shall be resolved pursuant to Article 15. Pending resolution of any dispute, the Owner may issue a Construction Change Directive for the reconstruction of the damaged or destroyed Work.

**§ 11.6.1** Contractor hereby releases, and shall cause all Subcontractors, Sub-subcontractors and suppliers to release, Owner, Owner's partners, the parent companies and affiliates of Owner, and the partners, members, trustees, directors, officers, shareholders, employees and agents of any of the above-mentioned parties (the "Released Parties") from any and all Claims/claims or causes of action whatsoever that Contractor and/or such parties might otherwise possess, resulting in or from or in any way connected with any loss covered or that should have been covered by insurance, including the deductible portion thereof, maintained and/or required to be maintained by Contractor and/or its Subcontractors, Sub-subcontractors, or suppliers pursuant to the Contract. This release is further intended to bind Contractor's and such parties' insurers that provide the above-stated insurance coverage, and Contractor agrees to inform and obtain permission from its insurers, and further agrees to require its Subcontractors and suppliers to inform and obtain permission from their insurers, to so release the Released Parties from any and all claims or causes of action as provided above, so as to effectively waive any subrogation rights of said insurers.

**§ 11.7 Additional Insurance Provisions**
**§ 11.7.1** All insurance policies maintained by the Contractor pursuant to the Contract Documents shall name the Owner as an additional insured. Contractor's insurance policies shall be primary. The interests of the additional insureds, the Contractor and Subcontractors in any insurance proceeds shall be subject to the interest of any lender, and the right of such lender to apply the proceeds pursuant to the terms of its deed of trust. In addition, if required by the landlord under the ground lease, Contractor shall name such landlord as an additional insured.

**§ 11.7.2** If the Contractor fails to procure and maintain the above-described insurance, or any portion thereof, then Owner shall have the right but not the obligation to procure and maintain the required insurance for and in the name of Contractor and Contractor shall pay the cost thereof, as a Cost of the Work and shall furnish all information necessary to acquire and maintain such insurance. Contractor shall not violate or knowingly permit any violation of any conditions or terms of the policies of insurance described herein.

**ARTICLE 12    UNCOVERING AND CORRECTION OF WORK**
**§ 12.1 Uncovering of Work**
**§ 12.1.1** If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered that the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, the Contractor shall be entitled to an equitable adjustment to the



**AIA Document A201®** – **2017.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114263155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
**User Notes:**                                                                                                    (1232096565)

Contract Sum and Contract Time as may be appropriate. If such Work is not in accordance with the Contract Documents, the costs of uncovering the Work, and the cost of correction, shall be at the Contractor's expense.

### § 12.2 Correction of Work
### § 12.2.1 Before Substantial Completion
The Contractor shall promptly correct Work rejected by the ~~Architect~~ Owner or failing to conform to the requirements of the Contract Documents, discovered before Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the ~~Architect's~~ services and expenses of any consultants made necessary thereby, shall be at the Contractor's expense.

### § 12.2.2 After Substantial Completion
### § 12.2.2.1 In addition to the Contractor's obligations under Section 3.5, if, within one (1) year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of any applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of notice from the Owner to do so, unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.5.

§ 12.2.2.2 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

§ 12.2.2.3 The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

§ 12.2.3 The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

§ 12.2.4 The Contractor shall bear the cost of correcting destroyed or damaged construction of the Owner or Separate Contractors, whether completed or partially completed, caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

§ 12.2.5 Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

### § 12.3 Acceptance of Nonconforming Work
If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

### ARTICLE 13   MISCELLANEOUS PROVISIONS
### § 13.1 Governing Law
The Contract shall be governed by the law of the place where the Project is located, excluding that jurisdiction's choice of law ~~rules.~~ rules, as set forth in Section 13.7 of the Agreement. If the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.


Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114263155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                    (1232096585)

38

§ **13.2 Successors and Assigns**
§ **13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns, and legal representatives to covenants, agreements, and obligations contained in the Contract Documents. ~~Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.~~ Contractor shall not assign the Contract without the prior written consent of Owner.

§ **13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate the assignment.

§ **13.3 Rights and Remedies**
§ **13.3.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights, and remedies otherwise imposed or available by law. This clause shall not be interpreted to permit Contractor to recover any costs or damages which are otherwise limited, prohibited or waived by the Contract Documents.

§ **13.3.2** No action or failure to act by the Owner, Architect, or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed upon in writing.

§ **13.4 Tests and Inspections**
§ **13.4.1** Tests, inspections, and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules, and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections, and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections, and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections, or approvals that do not become requirements until after bids are received or negotiations concluded. The Owner shall directly arrange and pay for tests, inspections, or approvals where building codes or applicable laws or regulations so require.

§ **13.4.2** If the Architect, Owner, or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection, or approval not included under Section 13.4.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection, or approval, by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.4.3, shall be at the Owner's expense.

§ **13.4.3** If procedures for testing, inspection, or approval under Sections 13.4.1 and 13.4.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure, including those of repeated procedures and compensation for the Architect's services and expenses, shall be at the Contractor's expense.

§ **13.4.4** Required certificates of testing, inspection, or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ **13.4.5** If the Architect is to observe tests, inspections, or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

§ **13.4.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.


Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                 (1232096565)

**§ 13.5 Interest**
Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate the parties agree upon in ~~writing or, in the absence thereof, at the legal rate prevailing from time to time at~~ Section 12.3 of the Agreement.

**§ 13.6 Forum**
Any suit or other legal action between Owner and Contractor arising out of or related to the Contract or the Work shall be commenced and conducted in the place where the Project is located.

**§ 13.7 Time Limits on Claims**
The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, and whether asserted in litigation or arbitration, against the other arising out of or related to the Contract within the time period specified by applicable Arkansas statutes of limitation for such causes of action, but in any case, not more than five (5) years after the date of Substantial Completion of the Work, pursuant to Ark. Code Ann. § 16-56-112.

**ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT**
**§ 14.1 Termination by the Contractor**
**§ 14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of ~~30~~ thirty (30) consecutive days through no act or fault of the Contractor, a Subcontractor, a Sub-subcontractor, their agents or employees, or any other persons or entities performing portions of the Work, for any of the following reasons:

    .1  Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;

    .2  An act of government, such as a declaration of national emergency, that requires all Work to be stopped;

    .3  Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

    .4  The Owner has failed to furnish to the Contractor reasonable evidence as required by Section 2.2.

**§ 14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor, a Subcontractor, a Sub-subcontractor, their agents or employees, or any other persons or entities performing portions of the Work, repeated suspensions, delays, or interruptions of the entire Work by the Owner as described in Section 13.3, constitute in the aggregate more than ~~100 percent~~ one hundred percent (100%) of the total number of days scheduled for completion, or ~~120~~ one hundred and twenty (120) days in any 365-day period, whichever is less.

**§ 14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, as well as reasonable overhead and profit on Work not executed, and costs incurred by reason of such termination.

**§ 14.1.4** If the Work is stopped for a period of ~~60~~ sixty (60) consecutive days through no act or fault of the Contractor, a Subcontractor, a Sub-subcontractor, or their agents or employees or any other persons or entities performing portions of the Work because the Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven (7) additional days' notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

**§ 14.2 Termination by the Owner for Cause**
**§ 14.2.1** The Owner may terminate the Contract if the Contractor

    .1  repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

    .2  fails to make payment to Subcontractors or suppliers in accordance with the respective agreements between the Contractor and the Subcontractors or suppliers;

    .3  repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or

    .4  otherwise is guilty of substantial breach of a provision of the Contract Documents.


Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1232096565)

**§ 14.2.2** When any of the reasons described in Section 14.2.1 exist, and upon certification by the Architect that sufficient cause exists to justify such action, the Owner may, without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven (7) days' notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

.1     Exclude the Contractor from the site and take possession of all ~~materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;~~materials and equipment that Owner has paid Contractor for prior to termination;

.2     Accept assignment of subcontracts pursuant to Section 5.4; and

.3     Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ 14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

**§ 14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the ~~Initial Decision Maker,~~ Owner, upon application, and this obligation for payment shall survive termination of the Contract.

**§ 14.2.5** If the Contractor becomes the subject of a bankruptcy or similar state law proceeding or becomes insolvent or a trustee, receiver, custodian or agent is appointed to take charge of the property of the Contractor.

**§ 14.3 Suspension by the Owner for Convenience**
**§ 14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work, in whole or in part for such period of time as the Owner may determine.

**§ 14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay, or interruption under Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent

.1     that performance is, was, or would have been, so suspended, delayed, or interrupted, by another cause for which the Contractor is responsible; or

.2     that an equitable adjustment is made or denied under another provision of the Contract.

**§ 14.4 Termination by the Owner for Convenience**
**§ 14.4.1** ~~The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.~~ Notwithstanding any provision in the Contract Documents to the contrary, it is agreed and understood that Owner may at its option terminate this Contract in whole or in part at any time and for any reason or no reason at all by written notice thereof to Contractor. Upon any such termination, Contractor agrees to waive any claims for damages, including loss of anticipated profits on account thereof, and as the sole right and remedy of Contractor, Owner shall pay Contractor in accordance with Section 14.4.5 below.

**§ 14.4.2** ~~Upon receipt of notice from the Owner of such termination for the Owner's convenience, the Contractor shall~~
~~.1     cease operations as directed by the Owner in the notice;~~
~~.2     take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and~~
~~.3     except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.~~The provisions of the Contract, which by their nature survive final acceptance of the Work, shall remain in full force and effect after such termination.

**§ 14.4.3** ~~In case of such termination for the Owner's convenience, the Owner shall pay the Contractor for Work properly executed; costs incurred by reason of the termination, including costs attributable to termination of Subcontracts; and the termination fee, if any, set forth in the Agreement.~~Upon receipt of any such notice, Contractor shall, unless the notice directs otherwise, immediately discontinue the Work on that date and to the extent specified in


AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                 (1232098565)

Init.

41

the notice, place no further orders or subcontracts for materials, equipment, services or facilities, except as may be necessary for completion of such portion of the Work as is not discontinued; promptly make every reasonable effort to procure cancellation upon terms satisfactory to Owner of all orders and subcontracts to the extent they relate to performance of the discontinued portion of the Work; and thereafter do only such Work as may be necessary to preserve and protect Work already in progress and to protect materials and equipment on the site or in transit thereto.

**§ 14.4.4** Upon such termination, the obligation of Contractor shall continue as to portions of the Work already performed and as to bona fide obligations assumed by Contractor prior to the date of termination. Such termination must be approved by the construction lender, if applicable.

**§ 14.4.5** Upon termination for convenience, Contractor shall be entitled to be paid the full cost of all Work properly done by Contractor to the date of termination not previously paid for, less sums already received by Contractor on account of the portion of the Work performed, together with a proportionate share of the Contractor's Fee described in Section 5.1 of the Agreement for Work actually performed. If at the date of such termination Contractor has properly prepared or fabricated off the site any goods for subsequent incorporation in the Work, or has ordered other materials for incorporation in the Work and is unable to obtain cancellation of such order, and if Contractor delivers such goods to the site or to such other place as Owner shall reasonably direct, then Contractor shall be paid for such goods or materials. Contractor shall also be paid for any reasonable cancellation fees incurred under any purchase orders that are canceled with Owner's consent. Under no circumstances shall Owner be responsible for damages for loss of anticipated profits (including the Contractor's Fee) on Work not performed or for any termination fee.

**§ 14.5** Return of Mobilization Deposit in the event Termination by the Owner or Contractor for any reason. In the event that this Agreement is terminated for any reason by Owner or Contractor, any amount of the Mobilization Deposit not used by Contractor to pay for the Costs of the Work set forth in this Agreement shall be returned to Owner immediately.

### ARTICLE 15   CLAIMS AND DISPUTES
### § 15.1 Claims
### § 15.1.1 Definition
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, a change in the Contract Time, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim. This Section 15.1.1 does not require the Owner to file a Claim in order to impose liquidated damages in accordance with the Contract Documents.

### § 15.1.2 Time Limits on Claims
The Owner and Contractor shall commence all Claims and causes of action against the other and arising out of or related to the Contract, whether in contract, tort, breach of warranty or otherwise, in accordance with the requirements of the binding dispute resolution method selected in the Agreement and within the period specified by applicable law, but in any ~~case~~ case, not more than ~~10~~ five (5) years after the date of Substantial Completion of the ~~Work.~~ Work (see Section 13.7 of the Agreement). The Owner and Contractor waive all Claims and causes of action not commenced in accordance with this Section 15.1.2.

### § 15.1.3 Notice of Claims
### § 15.1.3.1 Claims by either the Owner or Contractor, where the condition giving rise to the Claim is first discovered prior to expiration of the period for correction of the Work set forth in Section 12.2.2, shall be initiated by notice to the other party ~~and to the Initial Decision Maker~~ with a copy sent to the Architect, if ~~the Architect is not serving as the Initial Decision Maker.~~ any. Claims by either party under this Section 15.1.3.1 shall be initiated within ~~21~~ twenty-one (21) days after occurrence of the event giving rise to such Claim or within ~~21~~ twenty-one (21) days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

### § 15.1.3.2 Claims by either the Owner or Contractor, where the condition giving rise to the Claim is first discovered after expiration of the period for correction of the Work set forth in Section 12.2.2, shall be initiated by notice to the other party. ~~In such event, no decision by the Initial Decision Maker is required.~~



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114263155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                                                                 (1232096565)

### § 15.1.4 Continuing Contract Performance
Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

§ 15.1.4.1 Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

§ 15.1.4.2 The Contract Sum and Contract Time shall be adjusted in accordance with the Initial Decision Maker's decision, subject to the right of either party to proceed in accordance with this Article 15. The Architect will issue Certificates for Payment in accordance with the decision of the Initial Decision Maker.

### § 15.1.5 Claims for Additional Cost
If the Contractor wishes to make a Claim for an increase in the Contract Sum, notice as provided in Section 15.1.3 shall be given before proceeding to execute the portion of the Work that is the subject of the Claim. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

### § 15.1.6 Claims for Additional Time
§ 15.1.6.1 If the Contractor wishes to make a Claim for an increase in the Contract Time, notice as provided in Section 15.1.3 shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

§ 15.1.6.2 If adverse Adverse weather conditions are shall not constitute the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated, and had an adverse effect on the scheduled construction. in accordance with Section 15.7.2 of the Agreement.

### § 15.1.7 Waiver of Claims for Consequential Damages
The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

.1    damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

.2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit, except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.7 shall be deemed to preclude assessment of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

§ 15.1.8 In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

§ 15.1.9 If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

### § 15.2 Initial Decision
[INTENTIONALLY OMITTED]

§ 15.2.1 Claims, excluding those where the condition giving rise to the Claim is first discovered after expiration of the period for correction of the Work set forth in Section 12.2.2 or arising under Sections 10.3, 10.4, and 11.5, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim. If an initial decision has not been rendered within


Init.

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:38 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                     (1232098585)

~~30 days after the Claim has been referred to the Initial Decision Maker, the party asserting the Claim may demand mediation and binding dispute resolution without a decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.~~

~~**§ 15.2.2** The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.~~

~~**§ 15.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.~~

~~**§ 15.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of the request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished, or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.~~

~~**§ 15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.~~

~~**§ 15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.~~

~~**§ 15.2.6.1** Either party may, within 30 days from the date of receipt of an initial decision, demand in writing that the other party file for mediation. If such a demand is made and the party receiving the demand fails to file for mediation within 30 days after receipt thereof, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.~~

~~**§ 15.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.~~

~~**§ 15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.~~

**§ 15.3 Mediation**
**§ 15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract, except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.7, shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of ~~60~~ sixty (60) days from the date of filing, unless stayed for a longer period by agreement of



AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                    (1232096585)

the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

§ 15.3.3 Either party may, within ~~30~~ thirty (30) days from the date that mediation has been concluded without resolution of the dispute or ~~60~~ sixty (60) days after mediation has been demanded without resolution of the dispute, demand in writing that the other party file for binding dispute resolution.  If such a demand is made and the party receiving the demand fails to file for binding dispute resolution within ~~60~~ sixty (60) days after receipt thereof, then both parties waive their rights to binding dispute resolution proceedings with respect to the initial decision.

§ 15.3.4 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

§ 15.4 Arbitration (Intentionally Deleted)

~~§ 15.4.1 If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. The Arbitration shall be conducted in the place where the Project is located, unless another location is mutually agreed upon. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.~~

~~§ 15.4.1.1 A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.~~

~~§ 15.4.2 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.~~

~~§ 15.4.3 The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement, shall be specifically enforceable under applicable law in any court having jurisdiction thereof.~~

~~§ 15.4.4 Consolidation or Joinder~~
~~§ 15.4.4.1 Subject to the rules of the American Arbitration Association or other applicable arbitration rules, either party may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).~~

~~§ 15.4.4.2 Subject to the rules of the American Arbitration Association or other applicable arbitration rules, either party may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.~~

§ 15.5 Immediate Relief Exception
Notwithstanding the above, the obligation of Owner to participation in Mediation shall not apply to circumstances in which Owner must secure immediate relief in order to adequately protect its interests, in which case Owner may file a legal action in the County in which the Project is located.

Dated:  January 31, 2022

AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1232096665)


Init.

45

*[Signatures on next page]*

<u>**Owner:**</u>

<u>**Harbor Grand Holding Company, LLC, a Delaware limited liability company**</u>

<u>**By:  Harbor Grand Equity Fund, LLC, a California limited liability company, Sole Member**</u>

    <u>**By: Forge Partners II, LLC, a California limited liability company, Its Managing Member**</u>

        <u>**By:**</u> _____

                **Tim Williams**
        <u>**Its:  Chief Financial Officer of Managing Member**</u>

<u>**Timbers Holding Company, LLC, a Delaware limited liability company**</u>

<u>**By:  The Timbers Equity Fund, LLC, a California limited liability company, Sole Member**</u>

    <u>**By: Forge Partners II, LLC, a California limited liability company, Its Managing Member**</u>

        <u>**By:**</u> _____

                **Tim Williams**
        <u>**Its:  Chief Financial Officer of Managing Member**</u>

<u>**Contractor:**</u>

<u>**ADIVO Construction Corp., a Florida corporation**</u>

<u>**By:**</u> _____

    **Jeffrey Verchow**
<u>**Its:  President**</u>

~~**§  15.4.4.3 The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as those of the Owner and Contractor under this Agreement.**~~


AIA Document A201® – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, "A201," and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 16:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                        (1232098565)

## Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I, , hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with this certification at 18:22:35 ET on 02/01/2022 under Order No. 2114283155 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A201™ – 2017, General Conditions of the Contract for Construction, as published by the AIA in its software, other than changes shown in the attached final document by underscoring added text and striking over deleted text.

_____
(Signed)

_____
Attorney for owner
(Title)

_____
2/4/22
(Dated)

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 18:22:35 ET on 02/01/2022 under Order No.2114283155 which expires on 01/24/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1232096565)

1