## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**HARBOR GRAND HOLDING**                                                           **PLAINTIFFS**
**COMPANY, LLC and TIMBERS**
**HOLDING COMPANY, LLC**

**v.**                                            **Case No. 4:23-cv-00768-LPR**

**ADIVO CONSTRUCTION CORP.**
**and ZVI LEVIN**                                                                  **DEFENDANTS**

<u>**ORDER**</u>

This case arises from a construction deal gone bad.   Plaintiffs bring an assortment of

claims.   First, Plaintiffs sue Defendant Adivo Construction Corp. for an alleged breach of

contract.[1]   Second, Plaintiffs seek to pierce the corporate veil and sue Adivo Construction's owner

and CEO (Defendant Zvi Levin) for the same alleged breach.[2]   Third, Plaintiffs bring fraudulent

transfer claims against both Adivo Construction and Mr. Levin.[3]   Fourth, and finally, Plaintiffs

assert an unjust enrichment claim against Mr. Levin.[4]

Before the Court is Mr. Levin's Motion to Dismiss.[5]   The Motion asserts that (1) this Court

does not have personal jurisdiction over him,[6] and (2) Plaintiffs have failed to state a viable claim

against him.[7]   For the reasons stated below, the Court GRANTS IN PART and STAYS IN PART

Mr. Levin's Motion to Dismiss.

---

[1] Compl. (Doc. 1) ¶¶ 42–75.

[2] *Id.* ¶¶ 76–84; Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶ 4.

[3] Compl. (Doc. 1) ¶¶ 85–92.

[4] *Id.* ¶¶ 93–98.

[5] Mot. to Dismiss (Doc. 20).

[6] *Id.* ¶ 5.

[7] *Id.* ¶ 2.

I.      BACKGROUND FACTS

Plaintiff Harbor Grand Holding Company, LLC is a Delaware limited liability company.[8]

Plaintiff Timbers Holding Company, LLC is also a Delaware limited liability company.[9]

Defendant Adivo Construction is a Florida corporation with its principal place of business in

Florida.[10]   And Defendant Mr. Levin is a resident of the State of Florida.[11]

Plaintiffs own two apartment complexes in Little Rock, Arkansas—the Chenal Lakes

Apartments and the Brightwaters Apartments.[12]   On February 4, 2022, Plaintiffs and Adivo

Construction entered into a Construction Contract.[13]   The Contract required Adivo Construction

to perform certain renovation and construction work at the two apartment complexes.[14]   In return,

Plaintiffs were obligated to pay Adivo Construction a series of progress payments potentially

totaling (at maximum) $9,775,555.00.[15]

Before Adivo Construction was to begin renovations, Plaintiffs were required to pay Adivo

Construction a "Mobilization Deposit."[16]   The Mobilization Deposit was calculated as 15% of the

potential maximum price ($1,466,333.25).[17]   Then, for each progress payment, Plaintiffs would

pay 85% of the amount due and Adivo Construction would credit the remaining 15% of the amount

---

[8]  Compl. (Doc. 1) ¶ 1; Answer (Doc. 4) ¶ 1 (admitted).

[9]  Compl. (Doc. 1) ¶ 2; Answer (Doc. 4) ¶ 2 (admitted).

[10]  Compl. (Doc. 1) ¶ 3; Answer (Doc. 4) ¶ 3 (admitted).

[11]  Compl. (Doc. 1) ¶ 4; Answer (Doc. 4) ¶ 4 (admitted).

[12]  Compl. (Doc. 1) ¶ 12; Answer (Doc. 4) ¶ 12 (admitted).

[13]  Compl. (Doc. 1) ¶ 14; Answer (Doc. 4) ¶ 14 (admitted).

[14]  Compl. (Doc. 1) ¶ 14; Answer (Doc. 4) ¶ 14 (admitted).

[15]  Compl. (Doc. 1) ¶¶ 16–17; Answer (Doc. 4) ¶¶ 16–17 (both paragraphs admitted).   "The Contract was structured such that the basis of payment was the Cost of the Work Plus a Fee with a Guaranteed Maximum Price."   Compl. (Doc. 1) ¶ 16.

[16]  Compl. (Doc. 1) ¶ 18; Answer (Doc. 4) ¶ 18 (admitted).

[17]  Compl. (Doc. 1) ¶¶ 18–19; Answer (Doc. 4) ¶¶ 18–19 (both paragraphs admitted).

due by applying the Mobilization Deposit.[18]   If the Contract were to be terminated for any reason,

the Contract required Adivo Construction to immediately return to Plaintiffs any of the

Mobilization Deposit that had not been applied to the progress payments.[19]   The Contract in

question was signed on Adivo Construction's behalf by Jeffrey Verchow, Adivo Construction's

President.[20]

Before Adivo Construction commenced work on the renovations, Plaintiffs paid the

$1,466,333.25 Mobilization Deposit.[21]   Adivo Construction then began renovations at the two

apartment complexes.[22]   As the work progressed, Plaintiffs paid the scheduled progress payments,

and Adivo Construction applied the 15% credit from the Mobilization Deposit to each progress

payment.[23]

Unfortunately, the construction projects were not completed.   In early July of 2023,

Mr. Levin contacted Plaintiffs and notified them that Adivo Construction was insolvent and that

Adivo Construction did not intend to complete the renovations at the two apartment complexes.[24]

On July 10, 2023, Plaintiffs sent Adivo Construction a letter asking it to provide, within seven

---

[18]  Compl. (Doc. 1) ¶¶ 20–21; Answer (Doc. 4) ¶¶ 20–21 (both paragraphs admitted).

[19]  Compl. (Doc. 1) ¶ 22; Answer (Doc. 4) ¶ 22 (admitted).

[20]  Compl. (Doc. 1) at 36; Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶ 7.   An accompanying contract between Plaintiffs and Adivo Construction that set forth certain general conditions for the Construction Contract was also signed by Jeffrey Verchow on Adivo Construction's behalf.   Compl. (Doc. 1) at 103.

[21]  Compl. (Doc. 1) ¶ 19; Answer (Doc. 4) ¶ 19 (admitted).

[22]  Compl. (Doc. 1) ¶ 23; Answer (Doc. 4) ¶ 23 (admitted).

[23]  Compl. (Doc. 1) ¶¶ 24–25; Answer (Doc. 4) ¶¶ 24–25 (both paragraphs admitted).

[24]  Compl. (Doc. 1) ¶ 26; Answer (Doc. 4) ¶ 26 (admitted); Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶ 5.

days, assurances that Adivo Construction would fulfill its obligations under the Contract.[25]    Adivo

Construction failed to provide such assurances.[26]    As a result, the Contract was terminated.[27]

At the time of the termination, almost $1,000,000 of the Mobilization Deposit remained

unapplied to a progress payment.[28]    So, pursuant to the Contract, Adivo Construction was

obligated to return the unapplied portion of the Mobilization Deposit to Plaintiffs.[29]    Mr. Verchow

(Adivo Construction's President) spoke with Plaintiffs and told them that Adivo Construction did

not have the remainder of the Mobilization Deposit.[30]    Mr. Verchow said that Mr. Levin (Adivo

Construction's owner and CEO) may have transferred the money out of Adivo Construction's

account.[31]    The Mobilization Deposit was never returned to Plaintiffs.[32]

Plaintiffs allege that: (1) Mr. Levin transferred the remainder of the Mobilization Deposit

to his own personal account or to another account for his own personal benefit;[33]  and (2) Mr. Levin

"knew that by siphoning the money from Adivo [Construction], Adivo [Construction] would be

unable to return the unapplied Mobilization Deposit" to Plaintiffs.[34]    Thus, Plaintiffs allege,

"[Mr.] Levin's actions left Adivo [Construction] undercapitalized."[35]

---

[25] Compl. (Doc. 1) ¶ 27; Answer (Doc. 4) ¶ 27 (admitted); Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶ 6.

[26] Compl. (Doc. 1) ¶ 28; Answer (Doc. 4) ¶ 28 (denied); Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶ 6.

[27] Compl. (Doc. 1) ¶ 28; Answer (Doc. 4) ¶ 28 (denied).

[28] Compl. (Doc. 1) ¶ 31; Answer (Doc. 4) ¶ 31 (denied).

[29] Compl. (Doc. 1) ¶ 22; Answer (Doc. 4) ¶ 22 (admitted).

[30] Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶ 8; Compl. (Doc. 1) ¶ 37; Answer (Doc. 4) ¶ 37 (denied).

[31] Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶ 9; Compl. (Doc. 1) ¶ 37; Answer (Doc. 4) ¶ 37 (denied).

[32] Compl. (Doc. 1) ¶ 32; Answer (Doc. 4) ¶ 32 (denied).

[33] Compl. (Doc. 1) ¶ 38; Answer (Doc. 4) ¶ 38 (denied).

[34] Compl. (Doc. 1) ¶ 39; Answer (Doc. 4) ¶ 39 (denied).

[35] Compl. (Doc. 1) ¶ 40; Answer (Doc. 4) ¶ 40 (denied).    Plaintiffs also allege that Mr. Levin transferred other funds (i.e., not just the Mobilization Deposit) from Adivo Construction to himself or to others for his personal (i.e., not

## II.    LEGAL ANALYSIS

### A.    Personal Jurisdiction Over Zvi Levin

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists . . . ."[36]    At a minimum, the complaint must adequately allege that the Court has personal jurisdiction over the defendant in question.    That means "a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state."[37]

It is true that sometimes allegations are not enough.    If a defendant challenges the asserted basis for personal jurisdiction by way of affidavits, documents, or testimony, a plaintiff must support the relevant factual allegations in the complaint with affidavits, documents, or testimony.[38] But that is not the case here.    Mr. Levin has not provided any evidence to controvert the allegations in the Complaint—instead solely arguing that the allegations (if assumed to be true) aren't enough to allow veil piercing.[39]    Accordingly, the appropriate yardstick remains the allegations in the Complaint.

For a federal court to exercise personal jurisdiction over a defendant, two requirements must be met: (1) "the facts presented must satisfy the requirements of the forum state's long-arm

---

Adivo Construction's) benefit.    *See* Compl. (Doc. 1) ¶¶ 38, 77, 80, 91; Answer (Doc. 4) ¶¶ 38, 77, 80, 91 (all paragraphs denied).    Unlike the allegation related to the Mobilization Deposit, this allegation is not discussed in the Williams Declaration.    *See* Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1).

[36] *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011).

[37] *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration in original) (quotation marks omitted).

[38] *See K-V Pharm. Co.*, 648 F.3d at 592; *Wells Dairy, Inc.*, 607 F.3d at 518; *Dever*, 380 F.3d at 1072–73.    To be fair, it is less than clear whether, in response to a motion to dismiss for lack of personal jurisdiction, a plaintiff must always provide evidence to support a complaint's allegations or must do so only when a defendant provides evidence to controvert the complaint's allegations.    But Mr. Levin has focused his veil-piercing argument solely on his assertion of the insufficiency of the facts alleged in the Complaint.    *See* Br. in Supp. of Mot. to Dismiss (Doc. 21) at 8–11; Reply in Supp. of Mot. to Dismiss (Doc. 28) ¶¶ 3–6.    So, the Court will similarly focus its analysis solely on that question alone.

[39] *See* Br. in Supp. of Mot. to Dismiss (Doc. 21) at 8–11; Reply in Supp. of Mot. to Dismiss (Doc. 28) ¶¶ 3–6.

statute";[40] and (2) "the exercise of personal jurisdiction over the defendant must not violate due process."[41]   Arkansas's long-arm statute allows courts to exercise jurisdiction "to the maximum extent permitted by the [Due Process Clause] of the Fourteenth Amendment of the United States Constitution."[42]   Thus, where Arkansas is the forum state, the two-step test converges into a single question: Does the exercise of personal jurisdiction over the relevant defendant violate the Due Process Clause of the 14th Amendment?

Under the Due Process Clause, "[p]ersonal jurisdiction can be specific or general."[43] Plaintiffs do not assert that the Court has general jurisdiction over Mr. Levin.[44]   Rather, they argue that Mr. Levin has sufficient contacts with the State of Arkansas for the Court to exercise specific jurisdiction over him.[45]   Specific jurisdiction is linked to "causes of action arising from or related to a defendant's actions within the forum state."[46]   "Due process requires 'minimum contacts' between the non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[47]   The Eighth Circuit has laid out the following five factors to determine whether there are sufficient contacts to establish specific jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum

---

[40] *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

[41] *Id.*

[42] Ark. Code Ann. § 16-4-101(B).

[43] *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011).

[44] *See* Pls.' Resp. to Mot. to Dismiss (Doc. 25) at 4.   Indeed, Plaintiffs all but concede general jurisdiction is lacking. *See id.*

[45] *See id.* at 4–10.

[46] *Viasystems, Inc.*, 646 F.3d at 593 (quotation marks and citation omitted).

[47] *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

state in providing a forum for its residents; and (5) convenience of the parties."[48]   The first three

factors are of primary importance.[49]

      Plaintiffs have offered two independent theories to establish that Mr. Levin has sufficient

contacts with the State of Arkansas to warrant the exercise of specific jurisdiction over Mr. Levin.

First, Plaintiffs assert that Adivo Construction was the alter ego of Mr. Levin.[50]   They say that

Adivo Construction's corporate form should be pierced and its contacts with the State of Arkansas

should be imputed to Mr. Levin.[51]   Second, Plaintiffs assert that Mr. Levin individually had

sufficient contacts with the State of Arkansas because (1) he notified Plaintiffs that Adivo

Construction was insolvent and would not be able to carry out its obligations under the Contract

(which concerned construction in the State of Arkansas); and (2) he diverted money that was

supposed to be spent on construction in the State of Arkansas.[52]   The first theory (the alter-ego

theory) is really the whole ballgame for Plaintiffs.[53]

---

[48] *Id.*

[49] *Id.*

[50] Pls.' Resp. to Mot. to Dismiss (Doc. 25) at 6–8.

[51] *See Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975) ("[W]here a corporation is the alter ego of the stockholders so as to justify disregard of the corporate entity[,] jurisdiction over the corporation will support jurisdiction over the stockholders.").

[52] Pls.' Resp. to Mot. to Dismiss (Doc. 25) at 9–10.

[53] The second theory is seriously wanting.   Merely notifying Plaintiffs of insolvency is a rather insubstantial contact with the State of Arkansas.   There is no allegation that Mr. Levin is the one that decided to stop the renovations in Arkansas.   There is no allegation that he was in charge of managing the project.   And there is no allegation that he was involved with the negotiation of the Construction Contract.   All that is alleged is that Mr. Levin personally communicated to Plaintiffs that Adivo Construction was insolvent and that construction would cease.   *See* Compl. (Doc. 1) ¶ 26.   This action could have been done by anyone at Adivo Construction as a professional courtesy.

That leaves the alleged diversion of money.   The Complaint alleges that, by transferring the Mobilization Deposit from Adivo Construction to himself, Mr. Levin rendered Adivo Construction unable to return the Mobilization Deposit to Plaintiffs.   *See id.* ¶¶ 38–39.   But Plaintiffs are both Delaware LLCs.   *See id.* ¶¶ 1–2.   That Plaintiffs are authorized to do business in the State of Arkansas doesn't make a difference.   *See id.*   Even if there is some indirect impact on Plaintiffs' operations in the state of Arkansas, because Plaintiffs are Delaware LLCs, the Court is unable to find that the harm caused by Mr. Levin's alleged actions was suffered in or directed at the State of Arkansas.

Under the general five-factor test laid out above, and under the *Calder* effects test, *see Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010), there's just not enough here to exercise specific jurisdiction over Mr. Levin under this second theory.   Things might be different if the allegation was that Mr. Levin's siphoning of funds was intentionally done to

A Court can exercise specific personal jurisdiction over a non-resident based on a corporation's contacts with the forum state if (1) the corporation had sufficient contacts with the forum state to warrant the exercise of personal jurisdiction over the corporation, and (2) the non-resident "so controlled and dominated the affairs of the [corporation] that the . . . corporate existence was disregarded so as to cause the . . corporation to act as the [non-resident] defendant's alter ego."[54]   Of course, specific jurisdiction is judged claim-by-claim.[55]   So, putting this all together, the Court can exercise specific personal jurisdiction over Mr. Levin with respect to a particular claim if (1) the Court has specific personal jurisdiction over Adivo Construction with respect to that claim, and (2) Plaintiffs allege sufficient facts to raise a reasonable inference that Adivo Construction's corporate veil should be pierced.[56]

The Court has no trouble determining that it has jurisdiction over Adivo Construction with respect to every claim brought against the company.   (In this case, those are Claims I, II, and IV.[57])   The ease of this decision stems from Adivo Construction's waiver of any objection to personal jurisdiction.   Adivo Construction did not file a Motion to Dismiss, and did not assert any defenses in its Answer.[58]   The company did issue a one-word denial of the Complaint's allegation that "this Court has personal jurisdiction over Adivo [Construction] and Zvi Levin."[59]   But that is

---

harm or delay the construction projects in Arkansas.   But that is not what is alleged in the Complaint.

[54] *Epps v. Stewart Info. Servs. Corp.* 327 F.3d 642, 649 (8th Cir. 2003).

[55] *See Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021) ("Personal jurisdiction must be determined on a claim-by-claim basis.").

[56] *See Epps*, 327 F.3d at 649; *Lakota Girl Scout Council, Inc.*, 519 F.2d at 638.

[57] Claim III is not really a claim, but rather an assertion of veil piercing.   Compl. (Doc. 1) ¶¶ 76–84.   Claim V—the unjust enrichment claim—is brought solely against Mr. Levin and thus is not a candidate for veil piercing.   *Id.* ¶¶ 93–98.   Accordingly, since veil piercing is the only way to obtain personal jurisdiction over Mr. Levin (*see supra* note 53), the unjust enrichment claim must be dismissed.

[58] *See generally* Answer (Doc. 4).

[59] Compl. (Doc. 1) ¶ 10; Answer (Doc. 4) ¶ 10.

not enough to preserve a personal-jurisdiction challenge.  The Eighth Circuit has held that a personal jurisdiction defense must be raised clearly and unambiguously.[60]  And, as explained below,   Adivo Construction's one-word denial of personal jurisdiction in its Answer is the poster child for ambiguity.

Paragraph 10 of Plaintiffs' Complaint alleges that the "Court has personal jurisdiction over Adivo [Construction] *and* Zvi Levin."[61]  In its Answer, Adivo Construction simply denies the paragraph without specifying the reason for the denial.[62]  It certainly could be that Adivo Construction was trying to say that the Court lacked personal jurisdiction over both Defendants.  Or it could be that Adivo Construction was saying that the Court lacked personal jurisdiction over Adivo Construction (while not taking a position on whether the Court lacked personal jurisdiction over Mr. Levin).  But it could also be that Adivo Construction was saying only that the Court lacked personal jurisdiction over Mr. Levin (while conceding or, at least not contesting, personal jurisdiction over Adivo Construction).  Indeed, this last option makes the most sense given that (1) Mr. Levin filed a Motion to Dismiss for lack of personal jurisdiction whereas Adivo Construction did not, and (2) Adivo Construction did not expressly assert a defense of lack of personal jurisdiction in its Answer.  Long story short, Adivo Construction has not clearly and unambiguously raised a personal jurisdiction defense.  So, it has waived such a defense, and the Court has personal jurisdiction over the company for purposes of all claims brought against it in this case.[63]

---

[60] *See Alger v. Hayes*, 452 F.2d 841, 843 (8th Cir. 1972).

[61] Compl. (Doc. 1) ¶ 10 (emphasis added).

[62] *See* Answer (Doc. 4) ¶ 10.

[63] Fed. R. Civ. P. 12(h).

The significantly harder question is whether Plaintiffs have alleged sufficient facts to raise a reasonable inference that Mr. Levin "so controlled and dominated the affairs of [Adivo Construction] that the . . . corporate existence was disregarded so as to cause the . . . corporation to act as [Mr. Levin's] alter ego."[64]   To make this determination, the Court must first identify what it takes to successfully pierce the corporate veil.   And that is a question of state law.[65]   So the Court must defer to Arkansas's conflict-of-law principles.[66]

Arkansas law is not entirely clear on which state law to follow when it comes to piercing the corporate veil.   But both parties appear to agree that the Supreme Court of Arkansas would follow the Second Restatement's approach, which applies the law of the state of incorporation.[67] The Court has no reason to conclude that the parties are incorrect in their assessment in what the Arkansas Supreme Court would do.   Indeed, the parties' joint position is more likely than not, and so the Court will adopt it.   Thus, we look to the state of Adivo Construction's incorporation for the substantive veil-piercing law to apply in this case.

Adivo Construction's state of incorporation is Florida.[68]   Florida law allows a plaintiff to pierce the corporate veil if "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence[] was in fact non-existent and the shareholder[] [was] in fact [the] alter ego[] of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the

---

[64] *Epps*, 327 F.3d at 649.

[65] *Id.*

[66] *See Schwan's Sales Enter., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595 (8th Cir. 2007) (Courts "look to the conflict-of-law principles of the state where the district court sits.").

[67] Br. in Supp. of Mot. to Dismiss (Doc. 21) at 9; Pls.' Resp. to Mot. to Dismiss (Doc. 25) at 21; *see also Container Life Cycle Mgmt. LLC v. Safety Mgmt. Servs. Co.*, No. 6:20-cv-06001, 2020 WL 2843224, at *3–5 (W.D. Ark. June 1, 2020); Restatement (Second) of Conflict of Laws § 307 (1971).

[68] Compl. (Doc. 1) ¶ 3; Answer (Doc. 4) ¶ 3 (admitted).

corporate form caused injury to the claimant."[69]   Accordingly to raise a reasonable inference that

the corporate veil can be pierced, Plaintiffs must allege facts sufficient to establish that Adivo

Construction was Mr. Levin's alter ego, that Mr. Levin used Adivo Construction's corporate form

fraudulently, and that this fraudulent use caused injury to Plaintiffs.[70]

Plaintiffs easily chin the second and third bar of the test.   Plaintiffs sufficiently allege that

Mr. Levin used Adivo Construction's corporate form fraudulently or improperly.   Florida courts

have suggested that a fraudulent transfer under Florida Statute § 726.105 is improper conduct that

can be used to pierce the corporate veil.[71]   Plaintiffs allege that Mr. Levin used his position as

Adivo Construction's CEO and owner to transfer the Mobilization Deposit out of Adivo

Construction's account into another account for his own benefit.[72]   Plaintiffs further allege that

Mr. Levin did this to avoid paying out the obligations that Adivo Construction owed to Plaintiffs

under the Construction Contract.[73]   Those alleged facts raise a reasonable inference that Mr. Levin

improperly abused Adivo Construction's corporate form to defraud (and harm) Plaintiffs.

On the other hand, the first prong—the alter-ego prong—presents far more serious

problems for Plaintiffs.   To determine whether a corporation is an individual's alter ego under

Florida law, the following factors, *inter alia*, are considered:

(1) if the shareholder finances the corporation;

(2) if the shareholder caused the incorporation of the corporation;

---

[69] *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d Dist. Ct. App. Jan. 23, 2008).

[70] *See BEO Mgmt. Corp. v. Horta*, 314 So. 3d 434, 437 (Fla. 3d Dist. Ct. App. Nov. 18, 2020); *Abdo v. Abdo*, 263 So. 3d 141, 149 (Fla. 2d Dist. Ct. App. Dec. 21, 2018).

[71] *See Rashdan v. Sheikh*, 706 So. 2d 357 (Fla. 4th Dist. Ct. App. Jan 28, 1998); *Wurtzebach v. Flooring Depot FTL, Inc.*, 384 So. 3d 251, 255–56 (Fla. 4th Dist. Ct. App. Feb 21, 2024).   *See also Munder v. Circle One Condominium, Inc.*, 596 So. 2d 144, 145 (Fla. 4th Dist. Ct. App. Mar. 18, 1992) ("Fraud, self-dealing, unjust enrichment and betrayal of trust, may well result in individual liability.").

[72] Compl. (Doc. 1) ¶ 38.

[73] *Id.*

11

(3) if the corporation operates with grossly inadequate capital;

(4) if the shareholder pays the salaries and other expenses of the corporation;

(5) if the shareholder receives no business or assets except that given to it by the shareholder;

(6) if the shareholder uses the corporation's property as its own;

(7) if the corporation does not observe the basic corporate formalities, such as keeping books and records and holding shareholder and board meetings.[74]

"[T]his inquiry is a fact-intensive one, and not all . . . factors need be present."[75]  Courts should look to the totality of the circumstances when resolving this inquiry.[76]

Plaintiffs have alleged (and Adivo Construction has admitted) that Mr. Levin "owned and controlled Adivo [Construction] at all times relevant" to this case.[77]  Plaintiffs have alleged that Mr. Levin transferred the Mobilization Deposit from Adivo Construction's account to his own account (or another account for his personal benefit).[78]  And Plaintiffs have alleged—or at least implied—that Mr. Levin did the same with other funds as well.[79]  These allegations are not nothing.  But they are also—by a hair—not enough to raise a reasonable inference that Adivo Construction is the alter ego of Mr. Levin.

---

[74] *See Lobegeiger v. Celebrity Cruises, Inc.*, 869 F. Supp. 2d 1350, 1354–55 (S.D. Fla. Apr. 13, 2012) (citing *United Steelworkers of America, AFL-CIO-CLC v. Connors Steel Co.*, 855 F.2d 1499, 1505 (11th Cir. 1988)); *see also Church of Scientology of Cal. v. Blackman*, 446 So. 2d 190, 193 n.4 (Fla. 4th Dist. Ct. App. Feb. 15, 1984).

[75] *Lobegeiger*, 869 F. Supp. 2d at 1355.

[76] *See United Steelworkers of America*, 855 F.2d at 1506.

[77] Compl. (Doc. 1) ¶ 4; Answer (Doc. 4) ¶ 4. (admitted).  Mr. Levin was not just the company's owner, but also its CEO.  Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶ 4.

[78] Compl. (Doc. 1) ¶ 38.

[79] *See* Compl. (Doc. 1) ¶¶ 38, 77, 80, 91.

"[M]ere ownership of a corporation by . . . one shareholder[] is an insufficient reason to pierce the corporate veil."[80]   The same is true of being CEO.[81]   And although Adivo Construction admitted that Mr. Levin "controlled" it during the relevant period, that term is undefined in the Complaint.[82]   Point being, there's control and then there's *control*.   It is not clear which type of control is being alleged and which type is being admitted.   Accordingly, this is not enough to raise the inference necessary to pierce the corporate veil.[83]   Plaintiffs come far closer when they allege that Mr. Levin transferred the Mobilization Deposit from Adivo Construction's account to his own account (or another account for his personal benefit).[84]   And they inch almost completely up to the line when they allege that Mr. Levin did the same with other funds.[85]

Still, we know that Adivo Construction had its own bank account.[86]   There is no allegation that Adivo Construction was undercapitalized prior to the transfer of the Mobilization Deposit. There is no allegation that Mr. Levin paid for Adivo Construction's obligations out of his own pocket.   Without additional and more specific allegations suggesting that Mr. Levin failed to observe corporate formalities, even the allegedly fraudulent transfer or transfers are insufficient to raise the requisite inference that Adivo Construction was a mere instrumentality of Mr. Levin.[87] Close, but no cigar.

---

[80] *Gasparini*, 972 So. 2d at 1055.

[81] *See Buser v. Experian Info. Sols., Inc.*, No. 8:23-CV-1881-TPB-UAM, 2023 WL 8828794, at *2 (M.D. Fla. Dec. 21, 2023) ("Although Plaintiff has alleged that [defendants] served as president of [the corporation] . . . , this allegation is also insufficient to pierce the corporate veil.").

[82] Compl. (Doc. 1) ¶ 4; Answer (Doc. 4) ¶ 4 (admitted).

[83] *See Lobegeiger*, 869 F. Supp. 2d at 1354 ("[T]he [defendant's] control must amount to total domination of the [corporation] . . . ." (quotation marks and citation omitted)).

[84] Compl. (Doc. 1) ¶ 38.

[85] *See id.* ¶¶ 38, 77, 80, 91.

[86] *See* Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶¶ 8–9.

[87] *See Abdo*, 263 So. 3d at 150 ("Although the second amended complaint documents [the defendant's] improper conduct, including . . . fraudulent transfers, . . . the second amended complaint fails to allege how [the company and

This does not, however, entirely end the matter. Seemingly concerned that the Court might conclude that Plaintiffs failed to chin the personal jurisdiction bar, Plaintiffs requested that, in the alternative, the Court permit them to conduct limited jurisdictional discovery.[88] Neither Mr. Levin nor Adivo Construction opposed the request. And the Court finds the request to be well taken. The Court "has the discretion to allow limited jurisdictional discovery on a motion to dismiss for lack of personal jurisdiction if ascertaining additional facts will help resolve the jurisdictional issue."[89] The Court believes that to be the case here.

Attached as an exhibit to Plaintiffs' Response Brief is the Declaration of Tim Williams.[90] Tim Williams is a principal at Forge Partners II, LLC.[91] And Forge is the managing member of both Harbor Grand Holding Company and Timbers Holding Company.[92] The Declaration states that (1) Mr. Levin personally told Plaintiffs that Adivo Construction was insolvent; (2) Mr. Levin personally told Plaintiffs that Adivo Construction did not intend to complete the renovations at the Little Rock apartment complexes; (3) after the termination of the Contract, Mr. Verchow told Mr. Williams that Adivo Construction no longer had the Mobilization Deposit, and (4) Mr. Verchow told Mr. Williams that Mr. Levin may have transferred the Mobilization Deposit out of Adivo Construction's account.[93] When taken together with the allegations in the

---

the corporation] were the mere instrumentalities of [the defendant].").

[88] Pls.' Resp. to Mot. to Dismiss (Doc. 25) at 10–11.

[89] *WinRed, Inc. v. Ellison*, 581 F. Supp. 3d 1152, 1165 n.6 (D. Minn. Jan. 26, 2022) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978)).

[90] Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1).

[91] *Id.* ¶ 2.

[92] *Id.*

[93] *Id.* ¶¶ 5, 8–9. "[W]here the plaintiff offers 'documentary evidence' in support of allegations of personal jurisdiction, the court abuses its discretion by dismissing the action without permitting the plaintiff to take some jurisdictional discovery." *Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017, 1036 (N.D. Iowa June 24, 2013) (citing *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008)).

Complaint, these facts raise a series of important questions related to the alter-ego theory of personal jurisdiction.[94]

Such questions include but are surely not limited to: why did Mr. Verchow suspect that Mr. Levin transferred the Mobilization Deposit out of Adivo Construction's account; did Mr. Levin regularly take money from Adivo Construction's account(s); when and how did Mr. Levin transfer the money out of Adivo Construction's account; what did Mr. Levin do with the money; and did Mr. Levin regularly ignore Adivo Construction's corporate formalities?  The information needed to answer all of the above questions (and other relevant questions) is in the sole possession of Defendants.  As a result, jurisdictional discovery is likely to yield answers to these questions that would otherwise be impossible for Plaintiffs to obtain at this early stage of litigation.[95]

The Court directs the parties to engage in limited discovery on the question of personal jurisdiction based on the alter-ego theory.  The Court directs that this limited discovery be completed by June 30, 2025.  If there are any discovery disputes related to the conduct or scope of the authorized limited jurisdictional discovery, the Court anticipatorily refers those disputes to the Magistrate Judge.  The Court stays the jurisdictional portion of the Motion to Dismiss until the limited jurisdictional discovery is completed.  The parties are directed to confer and, within 14 days of the date of this Order, submit a joint proposed jurisdictional discovery plan to the Magistrate Judge.  The plan should set forth the type of discovery to be conducted and a timeline for completion of this discovery prior to June 30, 2025.  After discovery is concluded, the

---

[94] Pls.' Resp. to Mot. to Dismiss (Doc. 25) at 10–11.

[95] *See Niemann v. Carlsen*, No. 4:22-cv-01110-AGF, 2023 WL 2598065, at *1 (E.D. Mo. Mar. 22, 2023) ("Jurisdictional discovery may be justified when such discovery would likely reveal facts necessary to support jurisdiction." (quotation marks and citation omitted)).

Magistrate Judge should notify the Court of this fact.  And the parties will then be given the opportunity to supplement their Motion to Dismiss briefing on the issue of personal jurisdiction.

### B.    Failure to State a Claim Against Mr. Levin

"To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[96]  "A [12(b)(6)] motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."[97]  Moreover, for such a motion, the Court must treat the record in a very specific way.  First, the Court may only consider allegations in a complaint, materials attached to or embraced by that complaint, public records, and other evidence of which the Court has properly taken judicial notice.[98]  Second, the Court must take as true all facts pled in the complaint.[99]  Third, the Court must then decide, based on those assumed-to-be-true facts, whether a plaintiff has a plausible claim for judicial relief.[100]  The plausibility threshold is quite low, but it is not nothing.   It requires more than a possibility that the defendant acted unlawfully, but far less than a certainty that the defendant acted unlawfully.[101]

A portion of Mr. Levin's 12(b)(6) Motion is, essentially, a recharacterization of his argument that the alleged facts are insufficient to pierce the corporate veil.[102]  To the extent that

---

[96] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[97] *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

[98] *See Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

[99] *See Iqbal*, 556 U.S. at 678.   On the other hand, the Court is not required to (and should not) accept a complaint's legal conclusions or conclusory allegations.   *See, e.g.*, *Wiles v. Capitol Indem. Grp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

[100] *See Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024).

[101] *See Iqbal*, 556 U.S. at 678.

[102] Br. in Supp. of Mot. to Dismiss (Doc. 21) at 8–11.

argument overlaps with the jurisdictional arguments above, the Court stays the Motion until completion of jurisdictional discovery—which might lead Plaintiffs to amend their Complaint with additional alleged facts.   But the Court notes that another portion of Mr. Levin's 12(b)(6) Motion is independent of the jurisdictional issues.   The Court will therefore now address that other portion of the Motion, which concerns the allegedly fraudulent transfer of the Mobilization Deposit.[103]

Under Arkansas law, a claim for fraudulent transfer "is governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred."[104]   A debtor's location is determined by the location of the debtor's chief executive office.[105]   Because Adivo Construction's principal place of business is in Florida and Mr. Levin (Adivo Construction's CEO) is in Florida, the Court will apply Florida law for the fraudulent transfer claims.[106]   In Florida, "a transfer is fraudulent as to a creditor if the debtor made the transfer '[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.'"[107]

---

[103] *Id.* at 12–13.   The Court also notes that it need not address the 12(b)(6) Motion to the extent the Motion concerns Claim V (the unjust enrichment claim).   That is because the Court has—above—concluded it does not have personal jurisdiction over Mr. Levin for that claim.   *See supra* note 57.   That claim has been dismissed.

[104] Ark. Code Ann. § 4-59-210(b).

[105] Ark. Code Ann. § 4-59-210(a).

[106] Comp. (Doc. 1) ¶¶ 3–4.

[107] *Mane FL Corp. v. Beckman*, 355 So. 3d 418, 425 (Fla. 4th Dist. Ct. App. Jan. 4, 2023) (quoting Fla. Stat. Ann. § 726.105(1)(a)) (alteration in original).   Under Fla. Stat. Ann. § 726.105(2), courts can consider the following factors to determine actual intent:

    (a)     if the transfer or obligation was to an insider;
    (b)     if the debtor retained possession or control of the property transferred after the transfer;
    (c)     if the transfer or obligation was disclosed or concealed;
    (d)     if, before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
    (e)     if the transfer was of substantially all the debtor's assets;
    (f)     if the debtor absconded;
    (g)     if the debtor removed or concealed assets;
    (h)     if the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
    (i)     if the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
    (j)     if the transfer occurred shortly before or shortly after a substantial debt was incurred; and

Mr. Levin argues that the heightened pleading standard from Federal Rule of Civil Procedure 9(b) applies to fraudulent transfer claims and that Plaintiffs have failed to meet that standard.[108]   For support, Mr. Levin points to *Stoebner v. Opportunity Finance, LLC.*[109]   In that case, the Eighth Circuit "agree[d] with defendants that the heightened particularity requirements of Fed. R. Civ. P. 9(b) appl[ied] to fraudulent transfer claims under [the Minnesota Uniform Fraudulent Transfer Act]."[110]   But the *Stoebner* Court was analyzing Minnesota's version of the Uniform Fraudulent Transfer Act, not Florida's version.   And "[w]hether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law . . . ."[111]   Florida State courts have not addressed whether a heightened pleading standard applies to fraudulent transfer claims.   And federal district courts in the State of Florida are split as to whether Rule 9(b)'s heightened pleading standard applies to fraudulent transfer claims where actual intent is required.[112]   In any event, because Plaintiffs have pled sufficient facts to state a fraudulent transfer claim even under the Rule 9(b) standard, the Court need not resolve this split.

Under Rule 9(b)'s pleading standard, Plaintiffs must typically "identify the 'who, what, where, when, and how' of the alleged fraud."[113]   But "[t]he level of particularity required depends on, *inter alia*, the nature of the case and the relationship between the parties."[114]   "When the facts

---

(k)     if the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

[108] Br. in Supp. of Mot. to Dismiss (Doc. 21) at 4, 12–13.

[109] *See* 909 F.3d 219, 226 n.6 (8th Cir. 2018).

[110] *Id.*

[111] *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018).

[112] *See Arlan Asset Mgmt., LLC v. A.F.A.B. Contractors, Inc.*, No. 3:17-cv-775-MCR/EMT, 2018 WL 6720412, at \*3 n.8 (N.D. Fla. June 1, 2018) (collecting cases).

[113] *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *United States ex rel. Costner v. United States,* 317 F.3d 883, 888 (8th Cir. 2003)).

[114] *Id.*

constituting the fraud are peculiarly within the opposing party's knowledge, . . . such allegations may be pleaded on information and belief."[115]   Allegations based on information and belief must be supported by a statement of facts upon which the belief was founded.[116]

In the context of this case, Plaintiffs have pled their fraudulent transfer claims with sufficient particularity.   We are not dealing with a typical fraud situation, where the party alleging fraud was a party to the transaction in question.   Much of the information concerning the allegedly fraudulent transaction is in the exclusive possession of Defendants.   That is not Plaintiffs' fault, and Mr. Levin cannot use it as a sword to defeat their claims.

Plaintiffs have alleged that they received information from Mr. Verchow suggesting that Mr. Levin transferred the Mobilization Deposit out of Adivo Construction's account.[117]   That takes care of the who, the what, and the how.   Plaintiffs have further alleged, on information and belief, that the Mobilization Deposit was deposited in either Mr. Levin's personal account or some account for his own personal benefit.[118]   That takes care of the where.   And the alleged facts indicate that the Mobilization Deposit must have been moved sometime between the payment of the Mobilization Deposit in early-2022 and the conversation with Mr. Verchow in mid-2023.[119] That's detail enough.   In short, because more precise information regarding when the transfer was made would be in the exclusive possession of Defendants, this is sufficiently particular for the Rule 9(b) pleading standard.

---

[115] *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783–84 (8th Cir. 2009).

[116] *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 668 (8th Cir. 2001).

[117] *See* Compl. (Doc. 1) ¶ 37; Ex. 1 (Williams Decl.) to Pls.' Resp. to Mot. to Dismiss (Doc. 25-1) ¶¶ 8–9.

[118] Compl. (Doc. 1) ¶ 38.

[119] *See id.* ¶¶ 14, 23, 26, 37.

To be complete, Mr. Levin does have a second argument.   He says that Plaintiffs have failed to sufficiently allege that Adivo Construction intended to hinder, delay, or defraud Plaintiffs.[120]   But this argument, again, is wrapped up with the alter-ego issue.   So the Court will wait to address it.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and STAYS IN PART Defendant Zvi Levin's Motion to Dismiss.[121]   The unjust enrichment claim is out.   Everything else is on hold pending jurisdictional discovery.

IT IS SO ORDERED this 25th day of March 2025.

 

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[120] Br. in Supp. of Mot. to Dismiss (Doc. 21) at 12–13.

[121] Mot. to Dismiss (Doc. 20).